1
2
3
4
5
6

Pavel I. Pogodin, Ph.D., Esq. (SBN 206441)
CONSENSUS LAW
5245 Av. Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io

7

Attorneys for Plaintiff Bitcoin Manipulation Abatement LLC

8

**UNITED STATES DISTRICT COURT**

9

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

**OAKLAND DIVISION**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bitcoin Manipulation Abatement LLC,

        Plaintiff,

        v.

FTX Trading LTD, Alameda Research LLC, Alameda Research LTD (BVI), Samuel Bankman-Fried, Gary Wang, Andy Croghan, Constance Wang, Darren Wong and Caroline Ellison,

        Defendants.

Case No.  4:19-cv-07245-HSG

**FIRST AMENDED COMPLAINT FOR CONSPIRACY TO CONDUCT AND CONDUCTING ENTERPRISE'S AFFAIRS THROUGH A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF 18 U.S.C. §§ 1962(d) AND (c) (RICO), CRYPTOCURRENCY MARKET MANIPULATION IN VIOLATION OF 7 U.S.C. § 9(1) (USE OF DECEPTIVE OR MANIPULATIVE DEVICE), 7 U.S.C. §§ 9(3) AND 13(a)(2) (PRICE MANIPULATION), AIDING AND ABETTING PRICE MANIPULATION IN VIOLATION OF 7 U.S.C. § 25(a)(1), VIOLATION OF CAL. CORP. CODE § 29536, NEGLIGENCE, FRAUD, CIVIL CONSPIRACY, UNFAIR BUSINESS PRACTICES IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200 ET SEQ, UNJUST ENRICHMENT (RESTITUTION), CONSTRUCTIVE TRUST AND ACCOUNTING**

**DEMAND FOR JURY TRIAL**

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 1 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

**COMPLAINT**

Plaintiff, Bitcoin Manipulation Abatement LLC ("Plaintiff", "BMA"), by and through its undersigned attorneys, for its First Amended Complaint against Defendant FTX Trading LTD ("FTX"), Defendant Alameda Research LLC ("Alameda"), Defendant Alameda Research LTD (BVI) ("Alameda BVI"), Defendant Samuel Bankman-Fried ("Bankman-Fried"), Defendant Gary Wang ("Wang"), Defendant Andy Croghan ("Croghan"), Defendant Constance Wang ("CWang"), Defendant Darren Wong ("Wong") and Defendant Caroline Ellison ("Ellison") (collectively "Defendants") alleges as follows:

**INTRODUCTION**

1.     Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, are well known among cryptocurrency traders for being principal manipulators of the bitcoin spot and bitcoin derivatives markets.

2.     Plaintiff BMA is informed and believes and thereon alleges that during the time period from about November 20, 2017 and until present time ("Relevant Period"), Defendants Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison conspired to participate and participated in a long-running enterprise, within the meaning of Racketeer Influenced and Corrupt Organizations Act ("RICO") as defined in 18 U.S.C. § 1961(4), engaging in a continuing pattern of racketeering activity involving, among other unlawful acts, operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956(a), engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), wire fraud in violation 18 U.S.C. § 1343, interstate transportation of stolen property in violation 18 U.S.C. § 2314 and perpetrating a manipulative, fraudulent and deceptive scheme to manipulate the prices of certain cryptocurrency derivatives, including, without limitation, bitcoin future contracts, bitcoin swaps, as well as the cash prices of cryptocurrencies, including, without limitation, cash bitcoin in violation of 7 U.S.C. §§ 9(1), (3) and 13(a)(2).  The sheer magnitude of Defendants' unlawful activity is truly staggering.  Only Defendant Alameda's unlicensed over-the-counter ("OTC") money transmitting business,

operated by Defendants in Berkeley, California, since 2018, admittedly processed $30 million of illegal money transfers each day.

3.    Plaintiff BMA is informed and believes and thereon alleges that the cryptocurrency derivatives, the prices of which were manipulated by Defendants, and each of them, as further alleged herein, trade on at least 35 derivatives exchanges, including, without limitation, regulated commodity derivatives exchanges Chicago Mercantile Exchange (CME) and Chicago Board Options Exchange (CBOE).  Plaintiff BMA is informed and believes and thereon alleges that Defendants', and each of them, illicit profits from the herein alleged continuing racketeering activity exceeded $150,000,000, which were misappropriated from numerous cryptocurrency traders.

4.    Defendants, and each of them, were caught red-handed when, at about 21:00 EDT on September 15, 2019, and acting in furtherance of the manipulative and deceptive scheme as alleged hereinabove, Defendants, and each of them, made two illicit unsuccessful attempts to manipulate prices of bitcoin futures listed on Binance cryptocurrency futures exchange.  One such attempt was perpetrated by dumping futures contracts for about 255 bitcoins, valued at approximately $2,626,500, on to the newly opened Binance's SAFU futures market, at market prices, in two minute time interval, with the specific purpose to cause a calculated artificial price move that would trigger cascading execution of stop loss orders and liquidations of bitcoin futures long positions on Binance and propagate to other exchanges ("liquidation cascade").  In furtherance of the alleged manipulative and deceptive scheme, Defendants, and each of them, deliberately chose the newly opened and thinly traded derivatives exchange and the time of the lowest global bitcoin and bitcoin futures trading liquidity (21:00 EDT on Sunday) to maximize the impact of their illicit and unlawful manipulation attempt on the price of bitcoin futures.  Both times, Defendants, and each of them, were caught by Binance's market surveillance functionality and their manipulation attempts were thwarted.  Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, have continuously engaged in the same type of illicit and unlawful conduct on Binance and dozens of other exchanges during the Relevant

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 3 -      BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

Period.  Therefore, Defendants, and each of them, conspired to participate and participated in a long-running, continuing enterprise engaging in a pattern of racketeering activity as alleged hereinbelow.

5.     Plaintiff BMA is informed and believes and thereon alleges that by engaging in this conduct and the conduct further described herein, Defendants, and each of them, have engaged, are engaging, and are about to engage in acts and practices that violate the Commodity Exchange Act (the "CEA"), 7 U.S.C. §§ 1 et seq. (2012), and Commodity Futures Trading Commission ("CFTC") Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1 et seq. (2018). Specifically, by using a deceptive or manipulative device in connection with cryptocurrencies futures contracts, cryptocurrencies swaps and cash cryptocurrencies, Defendants, and each of them, violated Sections 6(c)(1) of the CEA, 7 U.S.C. § 9(1) (2012), and Regulation 180.1, 17 C.F.R. § 180.1 (2018). In addition, by manipulating the prices of the cryptocurrencies futures contracts, cryptocurrencies swaps and cash cryptocurrencies, Defendants, and each of them, violated Sections 6(c)(3) and 9(a)(2) of the CEA, 7 U.S.C. §§ 9(1) and 13(a)(2) (2012), respectively, and Regulation 180.2, 17 C.F.R. § 180.2 (2018). Further, by engaging in this conduct and the conduct further described herein, Defendants, and each of them, have violated, are violating, and are about to violate Cal. Corp. Code § 29536 as well as Cal. Bus. & Prof. Code § 17200 et seq.  Yet additionally, this conduct of Defendants, and each of them, and the conduct further described herein constitute negligence, fraud, conspiracy and unjust enrichment under California law.

6.     Accordingly, Plaintiff BMA brings this action pursuant to RICO, 18 U.S.C. § 1964 to recover treble monetary damages and attorney fees against all Defendants, and each of them. In addition, Plaintiff BMA seeks damages against all Defendants, and each of them, pursuant to Section 22 of the CEA, 7 U.S.C. § 25.  In addition, Plaintiff BMA seeks to enjoin Defendants, and each of them, unlawful, unfair and fraudulent business acts and practices pursuant to Cal. Bus. & Prof. Code § 17200 et seq.  Plaintiff BMA further seeks ancillary monetary and equitable relief, including, without limitation, restitution, disgorgement of ill-gotten profits, imposition of a

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 4 -     BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

constructive trust and accounting against all Defendants, and each of them, as well as pre-judgment and post-judgment interest and such other monetary and equitable relief as this Court may deem necessary and appropriate.

7.      In engaging in this conduct and the conduct further described herein, Defendants, and each of them, have been motivated by personal greed and acted with malice, fraud and oppression.  Accordingly, Plaintiff BMA further seeks an award of exemplary and punitive damages pursuant to Cal. Civ. Code § 3294, against all Defendants, and each of them, jointly and severally, in the amount of $150,000,000.

## NATURE OF ACTION

8.      Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-7 above as if fully set forth herein.

9.      This is an action for conspiracy to participate and participation in a long-running, continuing enterprise, engaged in a continuing pattern of racketeering activity, arising under RICO and for cryptocurrency market manipulation arising under the CEA.

## PARTIES

10.     Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-9 above as if fully set forth herein.

11.     Plaintiff BMA is a limited liability company duly formed and existing under the laws of the United States territory of Puerto Rico.

12.     Plaintiff BMA is informed and believes and thereon alleges that Defendant Alameda is a Delaware limited liability company, Delaware Secretary of State File No. 6625161, organized by Defendant Bankman-Fried on or about November 20, 2017.  Defendant Alameda is controlled by Defendant Bankman-Fried, who lists himself as both the CEO of Defendant Alameda and the CEO of Defendant FTX.  Defendant Alameda maintains its principal office at 2000 Center St., 4th Floor, Berkeley, California, 94704.

13.     Defendant Alameda has been well-known among cryptocurrency traders for being

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 5 -      BMA LLC V. FTX TRADING LTD ET AL.      CASE NO. 3:19-CV-07245



one of principal manipulators of the bitcoin spot and bitcoin derivatives markets.

14.     Plaintiff BMA is informed and believes and thereon alleges that Defendant Alameda BVI is a British Virgin Islands limited company, organized by Defendant Bankman-Fried.  Plaintiff BMA is informed and believes and thereon alleges that Defendant Alameda BVI is controlled by Defendant Bankman-Fried, who is the CEO of Defendant Alameda BVI. Plaintiff BMA is informed and believes and thereon alleges that Defendant Alameda BVI is run by Defendants, and each of them, from Defendant's Alameda principal office at 2000 Center St., 4th Floor, Berkeley, California, 94704.

15.     Plaintiff BMA is informed and believes and thereon alleges that Defendant FTX Trading LTD is an Antigua and Barbuda limited company, organized by Defendant Bankman-Fried on or about April 2, 2019.  FTX is a cryptocurrency futures exchange and is controlled by Defendant Bankman-Fried, who lists himself as the CEO of FTX.  FTX maintains its principal office at 2000 Center St., 4th Floor, Berkeley, California, 94704, where its CEO Defendant Bankman-Fried and most of the team members of Defendant FTX are located.

16.     Plaintiff BMA is informed and believes and thereon alleges that Defendant Alameda is a principal market maker and liquidity provider for Defendant FTX.

17.     Plaintiff BMA is informed and believes and thereon alleges that Defendant Bankman-Fried is an individual, who is a citizen of the State of California and who resides in this district.  Defendant Bankman-Fried is sued as *sui juris*.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 6 -     BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

18. Defendant Bankman-Fried has been well-known among cryptocurrency traders for being one of principal manipulators of the bitcoin market.

19. Plaintiff BMA is informed and believes and thereon alleges that Defendant Wang is an individual, who is a citizen of the State of California and who resides in this district. Defendant Wang is sued as *sui juris*.

20. Plaintiff BMA is informed and believes and thereon alleges that Defendant Croghan is an individual, who is a citizen of the State of California and who resides in this district. Defendant Croghan is sued as *sui juris*.

21. Plaintiff BMA is informed and believes and thereon alleges that Defendant CWang is an individual, who is a citizen of Hong Kong, China, and who resides in Hong Kong, China. Defendant CWang is sued as *sui juris*.

22. Plaintiff BMA is informed and believes and thereon alleges that Defendant Wong is an individual, who is a citizen of the State of California and who resides in this district. Defendant Wong is sued as *sui juris*.

23. Plaintiff BMA is informed and believes and thereon alleges that Defendant Ellison is an individual, who is a citizen of the State of California and who resides in this district. Defendant Ellison is sued as *sui juris*.

24. Plaintiff BMA is informed and believes and thereon alleges that, at all times herein mentioned, each of the individual Defendants sued herein was the agent and employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and employment.

## JURISDICTION AND VENUE

25. Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-24 above as if fully set forth herein.

26. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 as well as 28 U.S.C. §§ 1331 and 1332(a).

27. This Court has personal jurisdiction over Defendants, and each of them, pursuant

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 7 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

1    to California long arm statute codified in Cal. Code Civ. Proc. § 410.10.

2          28.    Defendant Alameda Research LLC conducts and has conducted a substantial,

3    systematic, and continuous business in the State of California and this district and is registered to

4    do business in the State of California.

5          29.    Defendant Alameda Research LLC has appointed Defendant Samuel Bankman-

6    Fried as an agent for service of process in the State of California and, thereby, consented to

7    personal jurisdiction of this Court.

8          30.    Defendant Alameda Research LLC maintains a principal office (headquarters) in

9    this district located at 2000 Center St., 4th Floor, Berkeley, California, 94704.

10         31.    Defendant FTX Trading LTD conducts and has conducted a substantial,

11   systematic, and continuous business in the State of California.  Specifically, Defendant FTX

12   Trading LTD has placed its CEO Defendant Bankman-Fried and most of the team members of

13   Defendant FTX at the principal office of Defendant Alameda located at 2000 Center St., 4th

14   Floor, Berkeley, California, 94704.

15         32.    Plaintiff BMA is informed and believes and thereon alleges that Defendant

16   Bankman-Fried is a citizen of the State of California and resides in this district.

17         33.    Plaintiff BMA is informed and believes and thereon alleges that Defendant Wang

18   is a citizen of the State of California and resides in this district.

19         34.    Plaintiff BMA is informed and believes and thereon alleges that Defendant

20   Croghan is a citizen of the State of California and resides in this district.

21         35.    Plaintiff BMA is informed and believes and thereon alleges that Defendant Wong

22   is a citizen of the State of California and resides in this district.

23         36.    Plaintiff BMA is informed and believes and thereon alleges that Defendant Ellison

24   is a citizen of the State of California and resides in this district.

25         37.    Plaintiff BMA is informed and believes and thereon alleges that Defendant CWang

26   conducts and has conducted a substantial, systematic, and continuous business with the State of

27   California and this district.

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 8 -       BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

1

2
38.     Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §
1391(b)(1).

3
39.     After learning on or about September 25, 2019, that the filing of this Complaint

4
was imminent, Defendant Bankman-Fried took steps to extricate himself from the jurisdiction of

5

6

7

8

9

10

11

12

13

14

15

16

17


18
this Court and obstruct service of process by promptly changing his residence city from Berkeley,

19

20

21

22

23

24

25


26
California to Hong Kong and deleting all his contact information from his public social

27
networking profile on Facebook.

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 9 -     BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRADISTRICT ASSIGNMENT**

40.      Pursuant to Civil Local Rule 3-5 of the United States District Court for the Northern District of California, the San Francisco division is proper because the substantial part of the events or omissions, which give rise to this action has occurred in either San Francisco or Alameda counties.

**BACKGROUND – BITCOIN**

41.      Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-40 above as if fully set forth herein.

42.      Bitcoin is form of cryptocurrency.  It is a trustless, decentralized digital currency without a central bank or single centralized administrator that can be sent from user to user on the peer-to-peer bitcoin network without the need for intermediaries or a trusted central authority.

43.      Bitcoin was invented in or about 2008 and described in a whitepaper entitled "Bitcoin: A Peer-to-Peer Electronic Cash System" authored by an unknown person or group of people using the name Satoshi Nakamoto and started in 2009 when its source code was released as an open-source software.  Bitcoins are created as a reward for a process known as mining. They can be exchanged for other currencies, products, and services.

44.      Bitcoin transactions are verified by a network of nodes through cryptography and recorded in a public distributed ledger called a blockchain, which is maintained by multiple bitcoin network nodes through the use of a consensus protocol.  Every bitcoin transaction starting from the very first one may be viewed and verified using the blockchain.  The blockchain consists of a chronologically ordered sequence of blocks holding records of bitcoin network transactions. A new block is generated by miners every 10 minutes.  The integrity of the blockchain is maintained by including a hash of each block in to the subsequent block.  This way, if any block is altered (forged) after its creation, all the subsequent blocks would have to be also modified or the hash discrepancy caused by the modification will be immediately detected by all the network nodes.

45.      Bitcoins are traded for United States dollars, Euros and other fiat currencies and

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)  - 10 -       BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

cryptocurrncies on centralized online marketplaces called exchanges.  Usually, transactions taking place inside exchanges, such as executions of buy and sell orders are not recorded on the public blockchain and, therefore, it is hard to independently verify them using the blockchain. Most exchanges do not have internal protections against bitcoin price manipulation as well as other fraudulent behavior, which is rampant due to low trading liquidity of the bitcoin market.

46.     Stablecoins are cryptocurrencies designed to minimize the volatility of the price of the stablecoin, relative to some "stable" asset or basket of assets. The value of a stablecoin can be pegged to a cryptocurrency, fiat money, or to exchange-traded commodities (such as precious metals or industrial metals).  Most frequently used stablecoins are those pegged to United States dollar, including, without limitation, Tether (USDT), USDC, BUSD and the like.

47.     Since at least 2015, the CFTC has maintained that bitcoin, and other virtual currencies, fit the definition of a commodity primarily through administrative actions.  In re *Coinflip, Inc*., CFTC Docket No. 15-29, 2015 WL 5535736 at *3 (Sept. 17, 2015).  *CFTC v. McDonnell*, *287 F. Supp. 3d* 213, *228* (E.D.N.Y. 2018) was the first time the CFTC's position was given judicial approval. The court noted that "[v]irtual currencies can be regulated by the CFTC as a commodity," because virtual currencies can be exchanged in a market for a uniform quality and value. The Court's reasoning makes clear that bitcoin and other virtual currencies fall within both the common law definition of commodity and the CEA's definition of a commodity.

## **DEFENDANTS' PRICE MANIPULATION TECHNIQUES**

48.     Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-47 above as if fully set forth herein.

49.     On or about September 9, 2019, Chairman of the United States Security Exchange Commission ("SEC") Jay Clayton stated: "[i]n the trading area, it troubles me that people look on these venues and think it has got the same level of protection that you'd have on an equity market in the US NASDAQ and MYSZ. Nothing could be further from the truth, we have lengthy rulebooks, all sorts of protections to make sure that prices are not manipulated in the equity markets, I don't see those in the Crypto asset markets."

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 11 -     BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

50.     Bitcoin spot and futures markets remain thinly traded making them particularly susceptible to pumps-and-dumps, Barts, stop loss hunts, liquidation cascades, spoofing, as well as other forms of market manipulation.



51.     Pump-and-dump is the fraudulent practice of perpetrators encouraging unwitting investors to buy an asset, such as bitcoin, to inflate its price artificially, and then selling it when the price reaches a predetermined threshold.  Pumps-and-dumps are designed to deceive the inventors as to the state of market supply and demand for the asset by means of artificially increasing the price and trading volume of the asset that is designed to entice unwitting investors to join the hype, and to buy the asset at an artificially inflated price, which they would not have done otherwise. When the perpetrators behind the scheme sell (dump) their bitcoins and stop pumping it, the price plummets, and other investors are left holding the asset that is worth significantly less than they paid for it.   As the result, traders who bought the bitcoin on margin, may be subject to stop losses and liquidations.

52.     Bart patterns or simply "Barts" are a variety of pumps-and-dumps involving intense pumps or dumps occurring within a very short time frame causing price action to find a new high or low for a very short period, followed by equally violent return to the previous level.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)      - 12 -      BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245



Perpetrators using this manipulation tactic benefit by having their sell/buy orders filled, and causing the unwitting investors to open positions against the trend.

53.     Barts are created by perpetrators using Momentum Ignition Algorithms, which work by creating a sharp spike in buy or sell action within a market with the purpose of deceiving the market participants as to market-based forces of supply and demand for an asset and enticing unsuspecting traders, or other trading algorithms, to follow the trade and place orders that they would not have otherwise placed.  Barts are intended to trick other market participants into reacting to an apparent change and imbalance of supply and demand by buying and selling bitcoin futures at times, prices and quantities that they otherwise would likely not have traded. Additionally, unsuspecting traders will place buy orders above significant zones, to catch up trends, and short sellers will place stops losses in similar areas, these are effectively buy orders. In order for the malicious algorithm to be most effective it has to push price into these liquidity zones, triggering buys, and from there it can disengage.  Sometimes, several hours later, a floor of

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 13 -      BMA LLC V. FTX TRADING LTD ET AL.      CASE NO. 3:19-CV-07245

buy orders is removed, and a momentum ignition may be activated in the opposite direction causing a dump.

54.     Stop loss hunting is a type of market manipulation, when the perpetrators attempt to artificially move the price for an asset to a predetermined price value to force other market participants out of their positions.  This type of manipulation is performed by executing one or more buy or sell orders with the purpose to drive the price of an asset to a level where many market players have chosen to set their stop-loss orders.  Stop loss orders are orders that get automatically executed at market price should the price of bitcoin reach a predetermined price threshold.  The perpetrator buys or sells spot bitcoin or bitcoin derivative until the price threshold is reached.  When the stop loss orders are triggered due to a stop loss hunt manipulation, the trader's asset holdings are sold at prevailing market prices causing the market to be filled with a large number of market orders, which has the ability to move the asset price even further triggering more stop loss orders and can even result in liquidations.  The result is a cascading execution of a large number of market orders.  The perpetrators place their buy or sell orders such as to have them filled at the bottom or at the top of the resulting stop loss execution cascade at artificially below or artificially above market prices, respectively.  After the initial market move, the price of the asset sometimes recovers and perpetrators generate a profit due to their illicit actions.

55.     Liquidation cascade is an extreme case of the stop loss hunt, when the perpetrator pushes the price of the asset or derivative to reach position liquidations levels for multiple traders and the resulting multiple market liquidations take place in a very short time interval moving the price even further.   This triggers additional liquidations causing a cascading execution of a large number of liquidation orders.  Similarly to the stop loss hunt, the perpetrators place their buy or sell orders such as to have them filled at the bottom or at the top of the resulting liquidations cascade, at artificially below or artificially above market prices, respectively.

56.     The manipulative price actions alleged hereinabove perpetrated by Defendants on one cryptocurrency spot or derivatives exchange quickly propagate to all other exchanges due to

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 14 -      BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

the widespread use of arbitrage bots, which are algorithms coded in software that take advantage of the price discrepancy between exchanges by buying or selling an asset in one market and simultaneously selling or buying it in another market at a more favorable price.  Thus, a manipulative price action on one cryptocurrency exchange results in a substantially similar price action on all other exchanges.

57.    Because cryptocurrency futures exchanges contracts are based heavily on bitcoin spot index price on a handful of relatively illiquid spot exchanges, a large bitcoin spot price move may be accomplished by executing relatively small market orders on the illiquid spot exchanges. Once initiated, such price move spreads, through the aforesaid index, to order books of very liquid derivatives exchanges and causes massive, multimillion dollar instant liquidations of derivatives positions.

58.    Pumps-and-dumps, Barts, stop loss hunts and liquidation cascades may be utilized by perpetrators for purposes of money laundering.  For example, in case of a liquidation cascade, a first person or entity may execute a relatively small market order to trigger the liquidation cascade and a second, separate, person or entity, acting from a separate exchange account, opened on the same or different exchange, may place large buy or sell orders, respectively, to have them filled at the artificially low or high (below or above market) prices caused by the liquidation cascade triggered by the actions of the first person or entity.  The first entity generally would book a loss, while the second entity would book a profit.  The first entity may be officially located in a high tax jurisdiction, such as California, while the second entity may be incorporated in a tax-heaven jurisdiction, such as British Virgin Islands.  Furthermore, the first entity may execute the order on an illiquid spot exchange, such as Bitstamp, to amplify the effect of the initiating market order while the second entity may operate on a high liquidity derivatives exchange such as BitMex, which uses the price of the spot exchange in calculating its index.

59.    In a criminal commodity futures market manipulation case *USA v. Smith et al.* (N.D. IL 2019), the United States Department of Justice (DOJ) took a position that placing orders for commodity futures contracts in a manner that was intended to deliberately trigger or

deliberately avoid triggering a specific price-based event, such an option execution, is unlawful. Consistent with that position, the all above alleged price manipulation actions are also unlawful.

60.    In *SEC v. Shuang Chen et. al*. Civil Action: 1:19-cv-12127-WGY (D. MA 2019) "[t]he Defendants generally used at least two brokerage accounts when manipulating the price of a particular publicly traded stock. The Defendants first typically used at least one account to place multiple small purchase or sale orders to create upward or downward pressure on the stock price (hereinafter referred to as a "helper" account). Then, the Defendants typically used at least one other account (hereinafter referred to as a "winner" account) to purchase or sell larger quantities of stock at prices that had been affected by the manipulative orders placed by the helper account(s). The Defendants often held the winner and helper accounts at different brokerage firms to conceal from each brokerage firm the coordination between the two types of accounts." The illegal stock price manipulation technique alleged by SEC is identical to the techniques alleged hereinabove and used by Defendants on a daily basis during the Relevant Period to manipulate the prices of cryptocurrencies. According to SEC, all those techniques are illegal.

61.    Similarly to defendants in *SEC v. Shuang Chen et. al*., Defendants admittedly used multiple exchange accounts to perpetrate their price manipulation:

> **Q — Alexandre R from GAINS:** *Nice. And I guess you're quite humble so I'll say it for you ahah: you also held the rankings 2, 4 and 6 in the BitMEX leaderboard, if I'm not mistaken?*
>
> **A — Darren W from FTX:** we're 4, 5 and 9 now.
>
> **A — Sam Bankman-Fried from FTX:** One of the costs of constantly switching accounts.

62.    Spoofing is an unlawful practice of making buy or sell orders, called deceptive orders, with an intent to cancel them before execution. The deceptive orders are used by perpetrators to inject false and misleading information about genuine supply and demand for bitcoin or bitcoin derivatives into the markets and to deceive other participants in the market into believing something untrue, namely that the visible order book accurately reflected market-based

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 16 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

forces of supply and demand.  This false and misleading information was intended to trick other market participants into reacting to an apparent change and imbalance of supply and demand by buying and selling bitcoin futures at times, prices and quantities that they otherwise would likely not have traded.

63.     Bitcoin price manipulation such as pumps-and-dumps, Barts, stop hunts, liquidation cascades, and spoofing, as well as numerous other forms of illicit market manipulation are generally believed to be the abuses that prevent SEC from approving numerous bitcoin Exchange Traded Fund (ETF) applications that have been filed throughout the years by various cryptocurrency industry players.

## THE RAKETEERING ENTERPRISE

64.     Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-63 above as if fully set forth herein.

65.     Each of the Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison are respective persons or entities capable of holding a legal or beneficial interest in property.

66.     Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison are a union or group of entities and individuals associated in fact collectively constituting a continuing "enterprise" ("Enterprise") within the meaning of RICO as defined in 18 U.S.C. § 1961.

67.     The activity of the Enterprise and the predicate acts of racketeering alleged hereinbelow affect interstate or foreign commerce.

68.     At various times during the Relevant Period each of the individual Defendants Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison was employed in or associated with the Enterprise as alleged hereinabove.

69.     Plaintiff BMA is informed and believes and thereon alleges that individual Defendants Bankman-Fried and Wang are the masterminds behind the alleged Enterprise and the predicate acts alleged hereinbelow, while individual Defendants Bankman-Fried, Wang, Croghan,

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 17 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

Wong and Ellison are cryptocurrency traders working out of Berkeley, California, principal office of Defendants Alameda, Alameda BVI and FTX.

## THE RAKETEERING CONSPIRACY AND RACKETEERING ACTIVITY

70.     Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-69 above as if fully set forth herein.

71.     Pursuant to 18 U.S.C. § 1961, "racketeering activity" for purposes of RICO means "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1343 (relating to wire fraud) ... section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), ... section 1960 (relating to illegal money transmitters), ... sections 2314 and 2315 (relating to interstate transportation of stolen property)."

72.     During the Relevant Period, in the Northern District of California, and elsewhere, the Defendants, and each of them, solely or together with other individuals, being persons employed by and associated with Enterprise they engaged in, and the activities of which affected interstate and foreign commerce, knowingly and intentionally, conspired to conduct and participate, directly and indirectly, and actually participated in conduct of the Enterprise's affairs through a pattern of racketeering activity, as that terms is defined in 18 U.S.C. § 1961, consisting of multiple acts, which are indictable under 18 U.S.C. § 1343, 18 U.S.C. § 1956, 18 U.S.C. § 1957, 18 U.S.C. § 1960 and 18 U.S.C. § 2314.

73.     It was a part of the conspiracy that each Defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

74.     The purposes of the alleged racketeering conspiracy of the Defendants, and each of them, included the following, among others: (1) maximizing trading profits and minimizing trading losses for the Defendants, and each of them, and their co-conspirators, through unlawful trading practices; (2) concealing trading gains obtained through unlawful trading practices from tax authorities; (3) generating illicit income from unlicensed money transmissions; (4) promoting and enhancing the racketeering conspiracy and the activities of the Defendants, and each of them,

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)  - 18 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

and their co-conspirators: and (5) concealing the unlawful activities of the Defendants, and each of them, and their co-conspirators from scrutiny by cryptocurrency exchanges and law enforcement.

## **DEFENDANTS OPERATED AND CONTINUE TO OPERATE AN UNLICENSED MONEY TRANSMITTING BUSINESS IN VIOLATION OF 18 U.S.C. § 1960**

75.     Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-74 above as if fully set forth herein.

76.     Bitcoins and other cryptocurrencies are funds. *See United States v. Murgio*, No. 15-cr-769, 2016 WL 5107128, at *4 (S.D.N.Y. Sep. 19, 2016); *United States v. Budovsky*, No. 15-cr-368, 2015 WL 5602853 (S.D.N.Y. Sep. 23, 2015); *United States v. Faiella*, 39 F. Supp. 3d 544 (S.D.N.Y. 2014).  Therefore, bitcoins are subject to all laws and regulations applicable to traditional currency ("fiat currency" or "fiat") monetary transactions.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 19 -        BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

77.     Plaintiff BMA is informed and believes and thereon alleges that Defendants, and



CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 20 -   BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

each of them, operate the Defendant Alameda, Defendant Alameda BVI and Defendant FTX out of their Berkeley, California office located at 2000 Center St., 4th Floor, Berkeley, California, 94704, which is listed as the "Principal Office" on California Secretary of State Statement of Information form signed and filed by Defendant Bankman-Fried (the 2019 form filed by



### FTX Raises $8M in Funding

Aug 11, 2019 finsmes.com

FTX, a San Francisco, CA-based cryptocurrency derivatives exchange ... The exchange also issued its native utility token, FTT, which provide holders with a number of unique benefits, such as ⅓ revenue buy and burn, lower trading fees, OTC rebates ...

| | |
|---|---|
| Categories | **Cryptocurrency** |
| Headquarters Regions | **San Francisco Bay Area, West Coast, Western US** |
| Operating Status | Active |
| Funding Status | Seed |
| Last Funding Type | **Seed** |
| IPO Status | Private |
| Website | **ftx.com/** 🔗 |
| Twitter | **View on Twitter** 🔗 |
| Contact Email | support@ftx.com |

FTX is a cryptocurrency derivatives exchange built by traders, for traders. They strive to build a platform powerful enough for professional trading firms and intuitive enough for first-time users. FTX supports quarterly and perpetual futures for all major cryptocurrencies, leveraged tokens and OTC.

### FTX Exchange   🔖 Follow

**Overview**            ✏ Suggest Edit        **Locations**

FTX is a company that develops a cryptocurrency derivatives exchange platform. The company strives to build a powerful and intuitive platform fo ... **Show more**

`Technology`  `blockchain`  `cryptocurrency`  `exchange`
`fintech`

FTX Exchange is headquartered in San Francisco, United States

| | |
|---|---|
| Type | Private |
| Founded | 2018 |
| HQ | San Francisco, US      Map |
| Website | ftx.com |

🌐 in cr 🐦

⊙ All Locations (1)

Consensus Law
CryptoCurrency
Attorneys

Amend. Compl. for Violation of RICO (Demand for Jury Trial) - 21 -     BMA LLC v. FTX Trading LTD et al.   Case No. 3:19-cv-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Bankman-Fried on September 5, 2019 indicates that there was no change in any information).  The fact that Defendant FTX is headquartered in the Northern District of California is corroborated by overwhelming number of Internet business publications, directories and other online business resources mentioning Defendant FTX.  Moreover, Defendants and each of them repeatedly and openly claimed that Defendant FTX was created, incubated and operated by Defendant Alameda.  In view of the fact the Defendant Alameda's principal office is admittedly in Berkeley, California, Defendant FTX is also located in the Northern District of California.  Finally, all but one of Defendants involved with the Defendant FTX are California residents, which further reinforces this conclusion.

78.     Moreover, Internet whois records for Defendant FTX web domain www.ftx.com

## Whois Record for FtX.com

### — Domain Profile

| | |
|---|---|
| Registrant | Domain Administrator |
| Registrant Org | See PrivacyGuardian.org |
| Registrant Country | us |
| Registrar | NameSilo, LLC<br>IANA ID: 1479<br>URL: https://www.namesilo.com/<br>Whois Server: whois.namesilo.com<br>abuse@namesilo.com<br>(p) 14805240066 |
| Registrar Status | clientTransferProhibited |
| Dates | 7,216 days old<br>Created on 1999-12-16<br>Expires on 2020-12-16<br>Updated on 2019-09-06 |
| Name Servers | DARL.NS.CLOUDFLARE.COM (has 16,873,067 domains)<br>IRIS.NS.CLOUDFLARE.COM (has 16,873,067 domains) |
| Tech Contact | Domain Administrator<br>See PrivacyGuardian.org<br>1928 E. Highland Ave. Ste F104 PMB# 255,<br>Phoenix, AZ, 85016, us<br>pw-792f83132774b6cad82eb3fc0a73b8fc@privacyguardian.org<br>(p) 13478717726 |
| IP Address | 104.25.88.35 - 22 other sites hosted on this server |
| IP Location | - California - San Francisco - Cloudflare Inc. |
| ASN | AS13335 CLOUDFLARENET - Cloudflare, Inc., US (registered Jul 14, 2010) |

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 22 -     BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

reveal that Defendant FTX's website is hosted on Cloudflare, Inc. ("Cloudflare") server located in San Francisco, California.   As indicated on Cloudflare website, Cloudflare maintains its servers in 194 cities in more than 90 countries in order to enable its customers to utilize servers most proximate to the majority of end-users to minimize the network response times and, thereby, improve user experience.

79.    The fact that Defendants, and each of them, placed www.ftx.com server in San Francisco, California, United States, and not in any of more than 89 remaining countries and 193



remaining cities, where Cloudflare servers are available, clearly indicates that Defendants, and each of them, consider the Northern District of California to be the primary market for Defendant



Consensus Law
CryptoCurrency
Attorneys

Amend. Compl. for Violation of RICO (Demand for Jury Trial)   - 23 -        BMA LLC v. FTX Trading Ltd et al.    Case No. 3:19-cv-07245

FTX's unlicensed money transmitting business.

80.     Additionally, leaderboard of Defendant FTX listed trader2@circle.com as the top performing trading account by profit and loss (PNL).  Circle.com is an Internet domain of Delaware corporation Circle Internet Financial, Inc. ("Circle"), Delaware Secretary of State File No. 5381921, with headquarters in Boston, Massachusetts, United States.  Circle itself has money transmitter licenses in all 50 U.S. states, which clearly establishes that it is a U.S. company. Therefore, despite claiming otherwise, Defendant FTX is clearly open to United States clients and actually accepted numerous clients from the United States and from the Northern District of California.  Moreover, Circle is also listed as a number 10 FTX trader account by trading volume, therefore U.S. clients account for a substantial amount of profits for the unlicensed money

## Whois Record for Circle.com

### − Domain Profile

| | |
|---|---|
| Registrant | REDACTED FOR PRIVACY |
| Registrant Org | Circle Internet Financial |

transmission business of Defendants, and each of them.

81.     Moreover, in making various announcements regarding Defendant FTX, such as in announcing the timing of the initial exchange offering ("IEO") of Defendant FTX's native token FTT, Defendants, and each of them, used United States time zones (Eastern and Pacific) to the exclusion of, for example, Central European time zone CET, or multiple other foreign time zones located in financially significant regions.  Because the FTT tokens can only be used in connection

| File Number: | 5381921 | Incorporation Date / Formation Date: | 8/12/2013 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **CIRCLE INTERNET FINANCIAL, INC.** | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 24 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

with Defendant FTX's exchange and the purchasers of the FTT tokens must be Defendant FTX's

users to derive any benefit from the purchased FTT tokens, this clearly evidences that

Defendants, and each of them, intended the United States, and specifically California, to be a

  

**SBF** @SBF_Alameda · Jul 24

FTT will be listing on FTX.com, as well as 1-2 other exchanges, at 10pm
HK / 2pm UCT / 10am Eastern / 7am Pacific next Monday, July 29th!

ftx.com/ftt-listing

💬 6          🔁 5          ♡ 46          ⬆️

significant market for the Defendant FTX's unlicensed money transmitting business.

82.    To use Defendant FTX unlicensed money transmitting services, one creates an

account by accessing the Defendant FTX's website www.ftx.com. A user does not need to

provide even the most basic identifying information such as name, date of birth, address, or other



identifiers. All that Defendant FTX requires is a password, and an email address.

83.    Unlike legitimate payment processors or digital currency exchangers, Defendant

FTX does not require its users to validate their identity information by providing official

identification documents, given that Defendant FTX does not require an identity at all to open an

account and start trading with up to 101x leverage.  For comparison, a legitimate U.S.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 25 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

cryptocurrency exchange Kraken requires email address, full name, date of birth, phone number, and physical address to open the most basic level account.

84.     Thus, a user can create and fund an FTX account with nothing more than an email address, which often has no relationship to the identity of the actual user. Accounts are therefore easily opened anonymously, including by customers in the United States within the Northern District of California.  Using such anonymous account, the user is able to make unlimited deposits and trades with up to 100x leverage, but can only withdraw $1,000.  However, the withdrawal limit does not prevent users from laundering unlimited funds from one account to another using market manipulation as alleged in hereinabove and thereby bypassing the $1,000 limit.  For example, one account may dump a large amount of cryptocurrency on the market using margin, triggering a liquidation cascade and booking a loss, when a separate, second account may buy the cryptocurrency at an artificial below market price caused by the liquation cascade.  This way, unlimited amount of funds may be laundered from the first account to the second account virtually anonymously and bypassing the aforesaid $1,000 limit.  Defendant FTX enables uses to launder funds in the alleged manner by providing high levels of leverage up to 101x.

85.     Moreover, in order to enable $2,000 daily withdrawals, all user needs to do is to

FTX has three different tiers of KYC requirements.  Please see below for a summary of the levels:

| Tier | Requirements | Withdrawal Limits |
|---|---|---|
| 0 | Email | $1000 USD lifetime |
| 1 | Email<br>Name<br>Country of residence and region/province | $2000 USD Daily |

simply supply a name of country and region/province (without furnishing any proof what so

A — Burg from FTX: No KYC is required to compete or if you wish to withdraw less than 1k. However we encourage tier 1 which allows for 2k daily withdrawal with no documentation.

ever), which is not verified by the Defendant FTX in any way.  Thus, any user, including users located in the United States and within the Northern District of California can easily open and fund the account with Defendant FTX and to begin trading an unlimited amount of

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 26 -   BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

cryptocurrencies, with the ability to transmit withdrawals of up to $2,000 per day to any crypto address located anywhere in the world.  Moreover, because Defendant FTX does not verify identity of the users, users are able to easily open multiple accounts with Defendant FTX, effectively multiplying (or bypassing) the above limits.

86.     Plaintiff BMA is informed and believes and thereon alleges that during Relevant Period Defendant FTX had no anti-money laundering and/or "Know-Your-Customer" (KYC) processes and policies in place or the existing policies lacked any meaningful enforcement, as evidenced, for example, by apparent accepting U.S.-based Circle as a client, despite claiming that FTX is closed to U.S. persons.  In fact, until August 6, 2019, Defendant FTX operated without any user agreement or terms of service what so ever, permitting any user to establish an account without any restrictions, even contractual.  As alleged hereinabove, Defendant FTX collected and continues to collect virtually no customer data at all.  Nor did Defendant FTX or its shell company FTX Trading Ltd. ever register with FinCEN or perform the functions on Defendant FTX's behalf.

87.     Plaintiff BMA is informed and believes and thereon alleges that a user can fund an FTX account in numerous different ways.  One way involves funding an FTX account with a user's existing digital currency.  A user with existing digital currency, such as bitcoin, could fund an FTX account directly via bitcoin deposits. Defendant FTX users could also use market manipulation to launder funds from one account to another.  This served as another conduit for money laundering as it allowed Defendant FTX's customers to withdraw funds from their FTX account and transfer them to other FTX users anonymously.

88.     In 2018, Defendants and each of them launched an automated OTC bitcoin trading operation.  Defendant FTX's whitepaper dated June 25, 2019 ("Whitepaper"), and attached hereto as Exhibit A, describes the Defendants' OTC business as follows:

> In 2018 we launched an automated OTC RFQ system. In spite of the bear market and
> competitive OTC landscape, we were able to quickly scale our volume to $30 million per
> day without much marketing. Because we were able to offer some of the tightest spreads

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 27 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

in the industry with fast settlement and no fees, we grew by word of mouth and became a

source of liquidity for well known OTC desks and exchanges. We also built a world class

portal, with an intuitive UI and API, and an easy to use settlement system.  We expect our

volumes to grow substantially when we start our marketing efforts. The OTC portal has

been integrated into the FTX ecosystem, driving our OTC counterparties toward FTX.

Thus, in the course of their OTC business, Defendants admittedly converted about $30 million of

funds to and from cryptocurrency each day.

89.     18 U.S.C. § 1960(a) provides: "(a) Whoever knowingly conducts, controls,

manages, supervises, directs, or owns all or part of an unlicensed money transmitting business,

shall be fined in accordance with this title or imprisoned not more than 5 years, or both."

90.     Pursuant to 18 U.S.C. § 1960(b)(1), "the term "unlicensed money transmitting

business" means a money transmitting business which affects interstate or foreign commerce in

any manner or degree" and (A) is operated without an appropriate money transmitting license in a

State where such operation is punishable as a misdemeanor or a felony under State law, whether

or not the defendant knew that the operation was required to be licensed or that the operation was

so punishable; (B) fails to comply with the money transmitting business registration requirements

under section 5330 of title 31, United States Code, or regulations prescribed under such section;

or (C) otherwise involves the transportation or transmission of funds that are known to the

defendant to have been derived from a criminal offense or are intended to be used to promote or

support unlawful activity.

91.     18 U.S.C. § 1960 makes it a crime to operate an unlicensed money transmitting

business. The term money transmitting includes "transferring funds on behalf of the public by any

and all means including but not limited to transfers within this country or to locations abroad by

wire, check, draft, facsimile, or courier."  This statute makes it a violation to conduct a "money

transmitting business" if the business is not registered as a money transmitting business with the

U.S. Secretary of the Treasury as required by a separate statute, 31 U.S.C. § 5330 and federal

regulations pursuant to that statute.  Moreover, FinCEN Ruling, FIN-2014-R002, at p. 4 provides:

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 28 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In addition, should the Company begin to engage as a business in the exchange of virtual

currency against currency of legal tender (or even against other convertible virtual

currency), the Company would become a money transmitter under FinCEN's regulations.

Under such circumstances, the Company would have to register with FinCEN, implement

an effective, risk-based anti-money laundering program, and comply with the

recordkeeping, reporting, and transaction monitoring requirements applicable to money

transmitters.

FinCEN Ruling, FIN-2014-R002, at p. 4.  United States Federal District Court decision in

*U.S. v. Stetkiw,* No. 18-20579 (E.D. Mich. Feb. 1, 2019) relied on this Ruling as a basis for

denying defendant's motion to dismiss and holding that defendant's alleged conduct of

converting fiat money into virtual currency constituted money transmitting under 18 U.S.C.

§ 1960.  Thus, both Defendant Alameda's OTC operation and Defendant FTX are money

transmitters under FinCEN's regulations and California law.

92.     The regulations specifically apply to foreign-based money transmitting businesses

doing substantial business in the United States.  Therefore, even if Defendant FTX were a

foreign-based exchange (which it is not, because it is operated by Defendant Alameda with the

principal office in Berkeley, California), it would still be subject to the aforesaid regulations due

to its substantial business in the United States. See 31 C.F.R. §§ 1010.100(ff)(5), 1022380(a)(2).

The same applies to Defendant Alameda's huge OTC operation, which is also run from

Defendant Alameda's Berkeley, California principal office.

93.     Defendant FTX and Defendant Alameda's huge OTC operation both fall under the

statutory definition of the "unlicensed money transmitting business" under all of 18 U.S.C.

§ 1960(b)(1)(A), (B) and (C).  Defendants' unlicensed money transmitting operation clearly

affects interstate and foreign commerce, based at least on the high amounts (tens and even

hundreds of millions of United States dollars) of funds involved in the money transmissions by

Defendants.  Specifically, Defendants' Whitepaper states: "FTX futures have traded more than

$100m per day recently, and FTX OTC has traded another $30m."

94.     With respect to 18 U.S.C. § 1960(b)(1)(A), Defendant FTX and Defendant Alameda's OTC operation both operate without an appropriate money transmitting license issued by the State of California and by any other State of the United States. Cal. Fin. Code § 2003(q)(3) defines "money transmission" as "receiving money for transmission." Defendant FTX as well as Defendant Alameda's OTC operation clearly meet this definition. Both Defendants receive funds in a form of a cryptocurrency or fiat money from their customers and then transmit cryptocurrency to a wallet address. Cal. Fin. Code § 2030(a) requires persons engaged in money transmission to be licensed. Finally, Cal. Fin. Code § 2152(b) provides that a "person that knowingly engages in an activity for which a license is required under this division without being licensed or exempt from licensure under this division is guilty of a felony." Thus, Defendant FTX and Defendant Alameda's OTC meet the definition set out in 18 U.S.C. § 1960(b)(1)(A).

95.     With respect to 18 U.S.C. § 1960(b)(1)(B), Defendant FTX and Defendant Alameda's OTC failed to register with the U.S. Secretary of the Treasury as required by a separate statute, 31 U.S.C. § 5330 and federal regulations pursuant to that statute.

96.     With respect to 18 U.S.C. § 1960(b)(1)(C), Defendant FTX and Defendant Alameda's OTC facilitated and continue to facilitate the transfer of funds involved in cryptocurrency market manipulation and money laundering. By way of example and not by way of limitation, Defendants, and each of them, during the Relevant Period, transferred proceeds from illegal price manipulation from BitMex to other cryptocurrency exchanges, including, without limitation, Coinbase, Kraken and Bitstamp. Such transfers were performed by Defendants, and each of them on a daily basis during the Relevant Period. Those proceeds were used by Defendants, and each of them, to perpetrate further market manipulation. In addition, Defendants transmitted funds between different exchange accounts by way of market manipulation as alleged hereinabove. Yet furthermore Defendants, and each of them, transferred proceeds of the FTX Token Sale, alleged hereinbelow, which was a criminal offense under California law and specifically violation of Cal. Corp. Code § 25540(a). The illegal proceeds of the FTX Token Sale were transferred from cryptocurrency accounts of individual users of

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 30 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant FTX's exchange to a wallet set up by Defendants, and each of them, for purposes of receiving investments in the FTX Token Sale. All these actions clearly meet the definition of illegal activity under 18 U.S.C. § 1960(b)(1)(C).

97.     Thus, Defendant FTX and Defendant Alameda's OTC are clearly "unlicensed money transmitting business[es]" under 18 U.S.C. § 1960(b)(1) and, therefore, Defendants, and each of them, while being employed in or associated with the continuing Enterprise as alleged above, knowingly conducted, controlled, managed, supervised, directed, and owned all and part of an unlicensed money transmitting business affecting interstate and foreign commerce in violation of 18 U.S.C. § 1960(a), which constitute the predicate acts of the Defendants', and each of them, racketeering activity.

98.     Plaintiff BMA is informed and believes and thereon alleges that Defendants' OTC desk, which admittedly converts $30 million of funds per day to and from cryptocurrency, also meets the definition of "unlicensed money transmitting business." Specifically, Defendant Alameda's OTC desk received funds in a form of a cryptocurrency or fiat money from its customers and then transmited cryptocurrency to a wallet address. Thus, the OTC desk of the Defendant Alameda was also operated by Defendants, and each of them, while being employed in or associated with the continuing Enterprise as alleged above, in violation of 18 U.S.C. § 1960(a), which further constitute the predicate acts of the Defendants', and each of them, racketeering activity.

99.     It should be noted that the sheer magnitude of Defendants' unlicensed money transmitter operation is truly staggering. According to Defendants' own Whitepaper, FTX turnover was over $100 million per day in addition to $ 30 million per day turnover for Defendant Alameda unlicensed OTC money transmission business. Thus, Defendants' illegally transmitted over $130 million per day without the required state money transmitter license and the required registration with FinCEN in violation of 18 U.S.C. § 1960(a).

100.     Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, charged their customers substantial fees for the unlicensed money transmissions

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 31 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

1

2   generating substantial illegal income for Defendants.

3          101.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts

4   alleged herein, namely operation of an unlicensed money transmitting business in violation of 18

5   U.S.C. § 1960, are related by having the same or similar purposes of manipulating cryptocurrency

6   markets, generating illicit income and concealing illegal activities from authorities, results,

7   Defendants – participants, victims, methods of commission or are otherwise interrelated by

    distinguishing characteristics.

8          102.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts

9   alleged herein, namely operation of an unlicensed money transmitting business in violation of 18

10  U.S.C. § 1960, are continuous as they constitute an open-ended scheme, which poses a threat of

11  continuity through the long duration of the alleged misconduct, namely two years, and the threat

12  of continuing criminal conduct, as the alleged criminal conduct perpetrated by Defendants is still

13  ongoing.

14         103.    Plaintiff BMA is informed and believes and thereon alleges that Defendants, and

15  each of them, used at least a portion of the income derived from their unlicensed money

16  transmission operations in violation of 18 U.S.C. § 1960 to manipulate spot and derivative

17  markets of cryptocurrencies, as alleged herein, which directly and proximately resulted in the

18  substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

19         104.    Plaintiff BMA is informed and believes and thereon alleges that Defendants', and

20  each of them, alleged price manipulation schemes, including, without limitation, pumps and

21  dumps, Barts, stop loss hunts and liquidation cascades perpetrated by Defendants, and each of

22  them, to transmit money in violation of 18 U.S.C. § 1960 directly and proximately resulted in

23  substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

24         **DEFENDANTS CONSPIRED TO LAUNDER, LAUNDERED AND CONTINUE**
           **TO LAUNDER FUNDS IN VIOLATION OF 18 U.S.C. § 1956**

25

26         105.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-104 above as

27  if fully set forth herein.

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 32 -      BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

106.     18 U.S.C. § 1956 provides that "whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity (A)(i) with the intent to promote the carrying on of specified unlawful activity; or (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or (B) knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both."

107.     Plaintiff BMA is informed and believes and thereon alleges that, during the Relevant Period, Defendants, and each of them, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that in, operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), as alleged hereinabove, as well as proceeds of unlawful cryptocurrency market manipulation, as alleged hereinbelow.

108.     Defendants, and each of them, willfully and knowingly did conduct and continue to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that in, operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a) as well as proceeds of unlawful cryptocurrency market manipulation.

109.     For example, Defendants, and each of them, transferred, on multiple occasions, proceeds from operating of the unlicensed Defendant Alameda OTC money transmission business as well as proceeds from illegal bitcoin futures contracts price manipulation from BitMex cryptocurrency exchange to other cryptocurrency exchanges, including, without limitation,

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 33 -     BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

Coinbase, Bitstamp and Kraken, with intent to employ those transferred proceeds in further unlawful activity. Those proceeds were in fact subsequently used by Defendants, and each of them, to perpetrate further market manipulation in violation of applicable laws. Moreover, Defendants, and each of them, used the hereinabove alleged price manipulation schemes, including, without limitation, pumps and dumps, Barts, stop loss hunts and liquidation cascades to launder funds between different exchange accounts controlled by Defendants or third persons.

110.    Therefore, Defendants, and each of them, while being employed in or associated with the continuing Enterprise as alleged above, committed multiple acts that violated 18 U.S.C. § 1956, which further constitute the predicate acts of the Defendants', and each of them, racketeering activity.

111.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely money laundering in violation of 18 U.S.C. § 1956, are related by having the same or similar purposes of manipulating cryptocurrency markets, generating illicit income, and concealing illegal activities from authorities, results, Defendants – participants, victims, methods of commission or are otherwise interrelated by distinguishing characteristics.

112.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely money laundering in violation of 18 U.S.C. § 1956, are continuous as they constitute an open-ended scheme, which poses a threat of continuity through the long duration of the alleged misconduct, namely two years, and the threat of continuing criminal conduct, as the alleged criminal conduct perpetrated by Defendants is still ongoing.

113.    Plaintiff BMA is informed and believes and thereon alleges that Defendants', and each of them, alleged price manipulation schemes, including, without limitation, pumps and dumps, Barts, stop loss hunts and liquidation cascades perpetrated by Defendants, and each of them, to launder funds between different exchange accounts controlled by Defendants or third persons in violation of 18 U.S.C. § 1956, directly and proximately resulted in substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

114.    Plaintiff BMA is informed and believes and thereon alleges that Defendants, and

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 34 -       BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

each of them, used at least a portion of the proceeds derived from their money laundering operation in violation of 18 U.S.C. § 1956 to manipulate spot and derivative markets of cryptocurrencies, as alleged herein, which directly and proximately resulted in the substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

**DEFENDANTS ENGAGED IN MONETARY TRANSACTIONS IN
PROPERTY DERIVED FROM SPECIFIED UNLAWFUL
ACTIVITY IN VIOLATION OF 18 U.S.C. § 1957**

115.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-114 above as if fully set forth herein.

116.    18 U.S.C. § 1957 provides that "(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)."

117.    Pursuant to 18 USC § 1957(f)(3), the terms "specified unlawful activity" and "proceeds" shall have the meaning given those terms in 18 U.S.C. § 1956.

118.    Plaintiff BMA is informed and believes and thereon alleges that, during the Relevant Period, Defendants, and each of them, willfully and knowingly attempted to engage and engaged in monetary transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that in, operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956, wire fraud in violation of 18 U.S.C. § 1343, as well as proceeds of unlawful cryptocurrency market manipulation, as alleged hereinbelow.

119.    Defendants, and each of them, willfully and knowingly did conduct and continue to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that in, operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956, wire fraud in violation of 18 U.S.C. § 1343, as well as proceeds of unlawful cryptocurrency market manipulation, as alleged hereinbelow.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 35 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

120.    For example, Defendants, and each of them, transferred, on a regular basis, proceeds from operating of the unlicensed Defendant Alameda OTC money transmission business as well as illegal bitcoin futures contracts price manipulation from BitMex cryptocurrency exchange to other cryptocurrency exchanges, including, without limitation, Coinbase, Bitstamp and Kraken, with intent to employ those transferred proceeds in further unlawful activity.  Those proceeds were in fact subsequently used by Defendants, and each of them, to perpetrate further market manipulation in violation of applicable laws.  Moreover, Defendants, and each of them, used the hereinabove alleged price manipulation schemes, including, without limitation, pumps and dumps, Barts, stop loss hunts and liquidation cascades to launder funds between different exchange accounts controlled by Defendants or third persons.

121.    Therefore, Defendants, and each of them, while being employed in or associated with the continuing Enterprise as alleged above, committed multiple acts that violated 18 U.S.C. § 1957, which further constitute the predicate acts of the Defendants', and each of them, racketeering activity.

122.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, are related by having the same or similar purposes of manipulating cryptocurrency markets, generating illicit income, and concealing illegal activities from authorities, results, Defendants – participants, victims, methods of commission or are otherwise interrelated by distinguishing characteristics.

123.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, are continuous as they constitute an open-ended scheme, which poses a threat of continuity through the long duration of the alleged misconduct, namely two years, and the threat of continuing criminal conduct, as the alleged criminal conduct perpetrated by Defendants, and each of them, is still ongoing.

124.    Plaintiff BMA is informed and believes and thereon alleges that Defendants', and

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 36 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

each of them, alleged price manipulation schemes, including, without limitation, pumps and dumps, Barts, stop loss hunts and liquidation cascades perpetrated by Defendants, and each of them, to transfer funds derived from specified unlawful activity between different exchange accounts controlled by Defendants or third persons in violation of 18 U.S.C. § 1957, directly and proximately resulted in substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

125.    Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, used at least a portion of the proceeds from their transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 to manipulate spot and derivative markets of cryptocurrencies, as alleged herein, which directly and proximately resulted in the substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

## DEFENDANTS ENGAGED IN WIRE FRAUD
## IN VIOLATION OF 18 U.S.C. § 1343

126.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-125 above as if fully set forth herein.

127.    18 U.S.C. § 1343 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both..."

128.    Plaintiff BMA is informed and believes and thereon alleges that during the Relevant Period, Defendants, and each of them, devised a scheme or artifice to defraud, namely a manipulative, fraudulent and deceptive scheme to manipulate the prices of certain cryptocurrency derivatives, including, without limitation, bitcoin future contracts, bitcoin swaps, as well as the cash prices of cryptocurrencies, including, without limitation, cash bitcoin and to obtain money of

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 37 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

other traders by way of injecting false information into markets in violation of 7 U.S.C. §§ 9(1), (3) and 13(a)(2).

129.    Plaintiff BMA is informed and believes and thereon alleges that on or about September 15, 2019, Defendant Bankman-Fried, communicated, via wire, with the CEO of Binance cryptocurrency exchange Changpeng Zhao and falsely represented to him that Defendants' attempted manipulation attempt was a result of inadvertence involving a wrong parameter.  In reality, however, Defendants' actions in connection with said manipulation attempt were malicious, willful and deliberate.

130.    Plaintiff BMA is informed and believes and thereon alleges that the purpose of the false representations of Defendant Bankman-Fried to the CEO of Binance cryptocurrency exchange Changpeng Zhao was to avoid termination of Defendants' account on Binance cryptocurrency exchange in order to continue unlawful and fraudulent price manipulation. Therefore, said wire communication was made in furtherance of the alleged manipulative, fraudulent and deceptive scheme to manipulate the prices of certain cryptocurrency derivatives. During said communication, Defendant Bankman-Fried was located in California and Changpeng Zhao was located in China.

131.    Therefore, Defendant Bankman-Fried wire communication with CEO of Binance cryptocurrency exchange Changpeng Zhao constituted wire fraud in violation of 18 U.S.C. § 1343.

132.    Plaintiff BMA is informed and believes and thereon alleges that, during the Relevant Period, Defendants, and each of them, used wire signals to transmit various electronic orders to 35 cryptocurrency exchanges for the specific purpose of misleading traders and investors as to the cryptocurrency market's natural forces of supply and demand and for manipulating prices of spot cryptocurrencies and cryptocurrency derivatives.  Those actions further constitute wire fraud in violation of 18 U.S.C. § 1343.

133.    Plaintiff BMA is informed and believes and thereon alleges that the alleged fraudulent electronic wire transmissions were performed by Defendants on a daily basis during the Relevant Period and were carried out from Defendants' Berkeley, California office and to

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 38 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

respective offices or computer servers of the 35 exchanges that Defendants used to perpetrate their manipulative and fraudulent scheme alleged hereinabove. Plaintiff BMA is informed and believes and thereon alleges that each of Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison issued the alleged fraudulent electronic wire transmissions on a daily basis during the Relevant Period.

134.   Plaintiff BMA is informed and believes and thereon alleges that the alleged wire transmissions contained, without limitation, electronic orders designed to inject false and misleading information about genuine supply and demand for bitcoin or bitcoin derivatives into the markets and to deceive other participants in the market into believing something untrue, namely that the visible order book accurately reflected market-based forces of supply and demand. These alleged wire transmissions were an illegitimate part of the supply-demand equation, prevented true price discovery, and caused artificial pricing in the cryptocurrency market. The false and misleading information injected by Defendants into the markets was intended to trick other market participants into reacting to an apparent change and imbalance of supply and demand by buying and selling bitcoin futures or spot bitcoin at times, prices and quantities that they otherwise would likely not have traded.

135.   Plaintiff BMA is informed and believes and thereon alleges that pumps and dumps, Barts and spoofing alleged hereinabove are specific examples of the conduct that was specifically designed by Defendants, and each of them, to mislead Plaintiff BMA as well as other traders on the cryptocurrencies market.

136.   Plaintiff BMA as well as other traders were in fact mislead by Defendants', and each of them, manipulative and fraudulent acts intended to mislead and defraud, including, without limitation, by pumps and dumps, Barts and spoofing perpetrated by Defendants, and each of them, and placed orders that they would not have otherwise placed.

137.   Plaintiff BMA, at the time of the alleged manipulative and fraudulent acts intended to mislead and defraud, which were perpetrated by Defendants, and each of them, and at the time Plaintiff BMA took the trades herein alleged, was ignorant of the manipulative and fraudulent

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 39 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

nature of conduct of the Defendants, and each of them, and believed that the apparent market conditions were in fact dictated by market forces of supply and demand and not the result of false information being injected into the markets by Defendants.

138.    Plaintiff BMA, at the time the alleged manipulative and fraudulent acts intended to mislead and defraud were made by Defendants, and each of them, and at the time Plaintiff BMA took the actions herein alleged, was ignorant of secret intentions of Defendants, and each of them, to mislead and defraud Plaintiff BMA and other traders and Plaintiff BMA could not, in the exercise of reasonable diligence, have discovered the secret intentions of Defendants, and each of them.

139.    Had Plaintiff BMA known the actual facts, Plaintiff BMA would not have taken such alleged actions.

140.    If Plaintiff BMA had known of the actual intention of Defendants, and each of them, Plaintiff BMA would not have taken the alleged trades.  Plaintiff's BMA reliance on fraudulent and manipulative conduct of Defendants, and each of them, was justified because Plaintiff BMA rightfully assumed that the market conditions of spot bitcoin and bitcoin derivatives markets were due to the actual market forces of supply and demand.

141.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely engaging in wire fraud in violation of 18 U.S.C. § 1343, are related by having the same or similar purposes of manipulating cryptocurrency markets, generating illicit income, and concealing illegal activities from authorities, results, Defendants – participants, victims, methods of commission or are otherwise interrelated by distinguishing characteristics.

142.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely engaging in wire fraud in violation of 18 U.S.C. § 1343, are continuous as they constitute an open-ended scheme, which poses a threat of continuity through the long duration of the alleged misconduct, namely two years, and the threat of continuing criminal conduct, as the alleged criminal conduct perpetrated by Defendants is still ongoing.

143.    Plaintiff BMA is informed and believes and thereon alleges that Defendants'

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 40 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

hereinabove alleged use of the electronic wire signals to defraud Plaintiff BMA as well as other market participants in violation of 18 U.S.C. § 1343 directly and proximately resulted in the substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

144.   Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, used at least a portion of the proceeds derived from wire fraud in violation of 18 U.S.C. § 1343 to manipulate spot and derivative markets of cryptocurrencies, as alleged herein, which directly and proximately resulted in the substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

## DEFENDANTS ENGAGED IN INTERSTATE TRANSPORTATION OF STOLEN FUNDS IN VIOLATION OF THE NATIONAL STOLEN PROPERTY ACT 18 U.S.C. § 2314

145.   Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-144 above as if fully set forth herein.

146.   18 U.S.C. § 2314 provides that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud … [s]hall be fined under this title or imprisoned not more than ten years, or both."

147.   Plaintiff BMA is informed and believes and thereon alleges that, during the Relevant Period, Defendants, and each of them, willfully and knowingly transmitted and transferred in interstate or foreign commerce cryptocurrency, including, without limitation, bitcoin and stablecoins, knowing that the transferred cryptocurrency was converted or taken by fraud from Plaintiff BMA as well as other cryptocurrency traders as the result of fraudulent market manipulation as alleged hereinabove.

148.   Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, transferred, during the Relevant Period, on a daily basis, proceeds of the alleged illegal bitcoin futures contracts price manipulation from BitMex cryptocurrency exchange to other cryptocurrency exchanges, including, without limitation, Coinbase, Bitstamp and Kraken. Coinbase and Kraken are located in California, while Bitstamp is located in European Union.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 41 -   BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

The transferred proceeds were converted or taken by fraud by Defendants from Plaintiff BMA as well as other cryptocurrency traders as the result of the fraudulent market manipulation as alleged hereinabove.

149.    Therefore, Defendants, and each of them, while being employed in or associated with the continuing Enterprise as alleged above, committed multiple acts that violated 18 U.S.C. § 2314, which further constitute the predicate acts of the Defendants', and each of them, racketeering activity.

150.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely engaging in interstate transportation of stolen funds in violation of 18 U.S.C. § 2314, are related by having the same or similar purposes of manipulating cryptocurrency markets, generating illicit income and concealing illegal activities from authorities, results, Defendants – participants, victims, methods of commission or are otherwise interrelated by distinguishing characteristics.

151.    Plaintiff BMA is informed and believes and thereon alleges that predicate acts alleged herein, namely engaging in interstate transportation of stolen funds in violation of 18 U.S.C. § 2314, are continuous as they constitute an open-ended scheme, which poses a threat of continuity through the long duration of the alleged misconduct, namely two years, and the threat of continuing criminal conduct, as the alleged criminal conduct perpetrated by Defendants is still ongoing.

152.    Plaintiff BMA is informed and believes and thereon alleges that Defendants', and each of them, alleged transfer of proceeds of the alleged illegal bitcoin futures contracts price manipulation from BitMex cryptocurrency exchange to other cryptocurrency exchanges, including, without limitation, Coinbase, Bitstamp and Kraken, in violation of 18 U.S.C. § 2314, enabling Defendants, and each of them, to engage in further market manipulation, directly and proximately resulted in substantial monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

153.    Plaintiff BMA is informed and believes and thereon alleges that Defendants, and

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 42 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

1   each of them, used at least a portion of the proceeds derived from the interstate transportation of

2   stolen funds in violation of 18 U.S.C. § 2314 to manipulate spot and derivative markets of

3   cryptocurrencies, as alleged herein, which directly and proximately resulted in the substantial

4   monetary cryptocurrency trading losses to Plaintiff BMA as alleged hereinbelow.

5

6   ## DEFENDANTS SOLD FTT TOKENS IN VIOLATION OF 15 U.S.C. §§ 77e(a), (c) AND CAL. CORP. CODE §§ 25110, 25540(a)

7        154.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-153 above as

8   if fully set forth herein.

9        155.    Defendants' long-established pattern of brazen unlawfulness culminated in the

10  spring and summer of 2019 in an illegal FTT token sale ("FTT Token Sale") to the United States

11  and foreign investors by Defendant FTX.

12       156.    Defendants' Whitepaper released on June 25, 2019, see Exhibit A, contains

13  promotional materials describing the FTX derivatives exchange project and the terms of the

14  issuance of the FTT tokens to investors.

15       157.    Plaintiff BMA is informed and believes and thereon alleges that, as part of the FTT

16  Token Sale, Defendants sold about 50,000,000 of FTT tokens at a steep discount to certain well-

17  known Silicon Valley venture capital investors, including Proof of Capital, Chris McCann, Edith

18  Yeung, Consensus Lab, FBG, and Galois Capital ("Silicon Valley VC Investors").   Both Chris

19  McCann and Edith Yeung list San Francisco, California as their place of residence on their

20  respective LinkedIn professional profiles.  Proof of Capital and Galois Capital both appear to be

21  business entities established under the laws of the State of Delaware.   Proof of Capital's

22  LinkedIn business profile lists San Francisco, California as the location of its headquarters.

23  Consensus Lab and FBG Capital appear to be business entities formed under the laws of the State

24  of California.  Thus, all Silicon Valley VC Investors are U.S. persons.

25

26

27

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

The round was led by Proof of Capital, a blockchain-focused fund launched by HTC's chief decentralized officer Phil Chen; Greylock Capital's Chris McCann; and 500 Startups partner Edith Yeung. Other investors include Consensus Lab, FBG, and Galois Capital.

158.    Plaintiff BMA is informed and believes and thereon alleges that Silicon Valley VC Investors are all United States based professional investors who operate their respective investment companies and select their investment targets with the sole purpose of generating maximum profit from their investments.

159.    Plaintiff BMA is informed and believes and thereon alleges that, the aforesaid Silicon Valley VC Investors paid about $8,000,000 to Defendant FTX for the aforesaid purchase of the 50,000,000 of FTT tokens, at per-token price of $0.16.  Defendants subsequently sold FTT tokens to public at a price of $0.80, or five times what the Silicon Valley VC Investors paid.  The total amount of capital illegally raised by Defendants during the FTT Token Sale is believed to be over $15,000,000.

160.    Any and all purchases of FTT tokens are an investment of money, in a common enterprise, with an expectation of profits, derived primarily from the current and future entrepreneurial and managerial efforts of the Defendants and their agents to build the TFX futures exchange, increase FTX's market share among cryptocurrency traders, drive demand for FTT tokens and reduce their supply through FTT buybacks and burns using a substantial portion of the Defendant FTX's revenue.  Consequently, Defendants' offer and sale of FTT tokens are offer and sale of securities.

161.    Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c), require that an issuer of securities like the FTT token register its offers and sales of securities with the SEC.  Specifically, Section 5(a) of the Securities Act, 15 U.S.C. § 77e(a), provides that, unless a registration statement is in effect as to a security or an exemption from registration applies, it is unlawful for any person, directly or indirectly, to sell securities in interstate commerce. Section 5(c) of the Securities Act, 15 U.S.C. § 77e(c), provides a similar prohibition against offers to sell or offers to buy, unless a registration statement has been filed or

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 44 -   BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

1    an exemption from registration applies. Thus, Sections 5(a) and 5(c) of the Securities Act prohibit

2    the unregistered offer or sale of securities in interstate commerce absent an exemption.

3         162.    Defendants failed to file a registration statement even though they cannot claim

4    any exemption to the registration requirements of the Securities Act.

5         163.    The exemptions for private offerings do not apply to FTT Token Sale because,

6    among other things, the Silicon Valley VC Investors, who are professional Silicon Valley high

7    technology investors, intended to resell and did in fact resell FTT tokens that they purchased at a

8    steep discount (for $0.16) to new investors.  Specifically, Defendants clearly contemplated that

9    the Silicon Valley VC Investors would resell their FTT tokens, as evidenced by inclusion of

**Unlocking**

Locked FTT tokens will automatically unlock into FTT according to the following schedules:

| Ticker | Name | Start* | End* | Approximate tokens sold |
|--------|------|--------|------|-------------------------|
| FTT_R1 | FTT Round 1 Token | 7/28/2019 | 10/28/2019 | 50,000,000 |
| FTT_R2 | FTT Round 2 Token | 7/28/2019 | 9/12/2019 | 6,500,000 |
| FTT_R3 | FTT Round 3 Token | 7/28/2019 | 8/28/2019 | 2,800,000 |
| FTT_TT | FTT Team Token | 4/30/2019 | 4/30/2022 | 5,000,000 |

certain lock-up provisions as to some FTT tokens.  Indeed, if Silicon Valley VC Investors could

not engage in these re-sales, none of the Silicon Valley VC Investors' investments would be

profitable.

     164.    The Regulation S safe harbors do not apply to FTT Token Sale because the offer

or sale of the FTT tokens was not made in an "offshore transaction" and further because "directed

selling efforts" were made by Defendants in the United States.

     165.    Rule 902(h) provides that any offer, sale, and resale is part of an "offshore

transaction" if: no offer is made to a person in the United States; and at the time the buy order is

originated, the buyer is (or is reasonably believed to be by the seller) physically outside the

United States.

     166.    A buyer is generally deemed to be outside the United States if the buyer (as

opposed to the buyer's agent) is physically located outside the United States. However, if the

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 45 -      BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

buyer is a corporation or investment company, the buyer is deemed to be outside the United States when an authorized agent places the buy order while physically situated outside the United States.

167.   "Directed selling efforts" is defined by Rule 902(c) as "any activity undertaken for the purpose of, or that could be reasonably expected to result in, conditioning the U.S. market for the relevant securities." This applies during the offering period as well as during the distribution compliance period. Violation of the prohibition against directed selling efforts by any of these parties precludes reliance on the safe harbor.

168.   Plaintiff BMA is informed and believes and thereon alleges that all Silicon Valley VC Investors who were offered and purchased the FTT tokens from Defendants were persons in

| Entity Number | Registration Date | Status | Entity Name | Jurisdiction | Agent for Service of Process |
|---|---|---|---|---|---|
| 201809500008 | 03/21/2018 | ACTIVE | GALOIS CAPITAL ALPHA FUND LP | DELAWARE | REGISTERED AGENTS INC (C3365816) |
| 201809500007 | 03/21/2018 | ACTIVE | GALOIS CAPITAL BETA FUND LP | DELAWARE | REGISTERED AGENTS INC (C3365816) |
| 201714410547 | 05/24/2017 | ACTIVE | GALOIS CAPITAL MANAGEMENT LLC | DELAWARE | KEREN ZHOU |
| 201809610169 | 03/21/2018 | ACTIVE | GALOIS CAPITAL TECHNOLOGIES LLC | DELAWARE | ALEXANDER B LINDGREN |

the United States for purposes of Rule 902(h).

169.   Plaintiff BMA is informed and believes and thereon alleges that for institutional



Edith Yeung · 2nd

Managing Partner at Proof of Capital + 500 Startups

San Francisco, California · 500+ connections · Contact info

Silicon Valley VC Investors, when the buy order was placed, the authorized agent who placed the buy order was physically situated in the United States.



Chris McCann · 2nd
Managing Partner @ Proof of Capital, Founder of RelayNode
& StartupDigest, former community lead at Greylock
Partners.
San Francisco, California · 500+ connections · Contact info

170.     Therefore, the FTT Token Sale was not part of an "offshore transaction" for purposes of Regulation S safe harbors.

171.     Moreover, the Whitepaper, see Exhibit A, and the remaining promotional materials associated with the FTT Token Sale were liberally distributed in the United States and to U.S. Persons without the use of any restrictive legends or disclaimers.  Moreover, the offers to sell and sales of the FTT tokens to United States based Silicon Valley VC Investors further indicate directed selling efforts on part of the Defendants in the United States.  Yet furthermore, Defendants did not place any restrictive legends or disclaimers on the FTT tokens and did not even advise the Silicon Valley VC Investors that they may not resell the FTT tokens in the United States absent the required registration with SEC or registration exemption.

172.     Therefore, the Regulation S safe harbors are also not applicable to the FTT Token Sale.

173.     Defendants failed to file a registration statement and sold tens of millions of FTT tokens to investors without the required registration.  In addition, none of the registration exemptions of the Securities Act applied to the FTT Token Sale.  Consequently, Defendants' unregistered offers and sales of FTT tokens are in violation of Section 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

174.     In the Whitepaper, Defendants specifically described the purchase of the FTT tokes by purchasers as an investment and referred to purchasers of the FTT tokens as "investors".

175.     Defendants also led potential investors to understand that it would be Defendants and their principals' and agents' efforts that would determine the success of the enterprise.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)      - 47 -      BMA LLC V. FTX TRADING LTD ET AL.      CASE NO. 3:19-CV-07245

## Why Invest? -- All-Star Team

FTX was built with a lot of features to differentiate us from our competitors, but its greatest strength lies in the team behind it. We are confident that FTX has massive potential to rise to the top because we have proven time and time again our ability to enter a crowded market, disrupt the status quo and become one of the dominant players. We have consistently demonstrated our ability to innovate, execute and grow rapidly. These qualities have served us well in helping us stay one step ahead of the competition. There is an enormous untapped potential in the derivatives market, and we are excited to repeat our success with FTX. We'd be ecstatic for investors and supporters to join us on this journey.

176.    Defendants further stated in the Whitepaper that the success of the FTT token will be due to the FTX's "All-Star Team."   The Whitepaper further stated: "FTX was built with a lot of features to differentiate us from our competitors, but its greatest strength lies in the team behind it" and "FTX can leverage Alameda's tech team--an experienced, battle-tested group used to building complex crypto-trading systems under time pressure. This means that our development cycle is much shorter than others; we can roll out multiple large features per day."

177.    Moreover, in the Whitepaper, Defendants boasted Defendants' past performance record by stating:  "Track Record of Proven Success.  Team Background.  We come from leading Wall Street quant funds and tech companies: Jane Street, Optiver, Susquehanna, Facebook and Google. The traditional secondary market is our bread and butter. We have backgrounds in equity derivatives trading; we understand both how derivatives are traditionally designed, and what derivatives there is market demand for."

178.    Defendants also led investors to expect that they could reap substantial profits from Defendants' efforts into their common enterprise, and took steps and are taking steps to make this expectation a reality.   Specifically, in the Whitepaper, Defendants created expectation on part of the investors that the FTT tokens would appreciate in value over time due to the re-purchases and token burns by Defendant FTX, which would result in a decreased supply of the FTT tokens and their consequent increase in value: "Token Burn.  One third of all fees generated on FTX will be used for an FTT repurchase, until at least half of all FTT is burned.  Any FTT bought this way will be burned."

179.    Yet furthermore, in the Whitepaper, Defendants created expectation on part of the

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 48 -       BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

investors that due to the use of a substantial portion (1/3) of the revenue of Defendant FTX to buy back and burn FTT tokens, the success of the FTT tokens would depend on the success of the FTX exchange.  In fact, much of the Whitepaper was dedicated to the prospects of the Defendant FTX growth, which, according to the Whitepaper, would result in appreciation of the FTT tokens.

180.    Whitepaper made clear that the purpose of the FTT Token Sale was to raise money for the growth of Defendant FTX's futures exchange: "we are conducting a token raise for people who want to help grow FTX."

181.    Whitepaper similarly led investors to expect that Defendant FTX's financial interests would be aligned with investors'.   Specifically, Whitepaper clearly stated that a portion (1/3) of the revenue of Defendant FTX will be used for FTT token buyback and burn, which was designed to reduce the supply of the FTX tokens and, consequently, drive their price up. Accordingly, the gains in the market share of Defendant FTX's futures exchange would result in FTT investor gains.

182.    The majority of FTT tokens are tradeable in the market. All investors will profit equally if the popularity and price of FTT tokens increase, and, other than with respect to the discount on the price paid, no investor will be entitled to a higher proportion of price increases.

183.    Defendants used the same Whitepaper to market, offer, and sell FTT tokens to all investors domiciled inside and outside the United States.

184.    Thus, for all the foregoing reasons, Defendants' offer and sale of FTT tokens are offer and sale of securities under Securities Act and FTT Token Sale was in violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

185.    Cal. Corp. Code § 25110 provides: "It is unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120), whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 (and no order under Section 25140 or subdivision (a) of Section 25143 is in effect with respect to such qualification) or unless such security or transaction is exempted or not subject to qualification under Chapter 1 (commencing with Section 25100) of

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 49 -     BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

this part."

186.    Defendants willfully failed to qualify the FTT Token Sale as was required under Cal. Corp. Code § 25110 and the FTT Token Sale was not exempt from such qualification. Therefore, Defendants willfully violated Cal. Corp. Code § 25110.

187.    Cal. Corp. Code § 25540(a) provides: "Except as provided for in subdivision (b), any person who willfully violates any provision of this division, or who willfully violates any rule or order under this division, shall upon conviction be fined not more than one million dollars ($1,000,000), or imprisoned pursuant to subdivision (h) of Section 1170 of the Penal Code, or in a county jail for not more than one year, or be punished by both that fine and imprisonment; but no person may be imprisoned for the violation of any rule or order if he or she proves that he or she had no knowledge of the rule or order."  Therefore, Defendants' proceeds received in connection with the FTT Token Sale were proceeds of a criminal activity, and specifically violation of Cal. Corp. Code § 25540(a).

188.    Plaintiff BMA is informed and believes and thereon alleges that at least a portion of the proceeds received by Defendants in connection with the illegal FTT Token Sale were used by Defendants, and each of them, for various illegal activities alleged herein, including, without limitation, to unlawfully manipulate the spot and futures market of cryptocurrencies resulting in the direct and proximate injury to Plaintiff as alleged hereinbelow.

### DEFENDANTS OPERATED AND CONTINUE TO OPERATE FTX EXCHANGE IN VIOLATION OF 15 U.S.C. § 78e

189.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-188 above as if fully set forth herein.

190.    Subsequent to the initial sale of the FTT tokens to the Silicon Valley VC Investors, Defendants sold, continue to sell and enabled Silicon Valley VC Investors to sell their FTT tokens, illegally acquired at a very substantial discount, through Defendant FTX's exchange as well as a number of other cryptocurrency exchanges to subsequent purchasers, including U.S. persons, who are able to freely register to trade on the Defendant's FTX exchange, all in violation

1   of Section 5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78e.

2       191.   Section 5 of the Exchange Act codified in 15 U.S.C. § 78e, makes it unlawful for

3   any broker, dealer, or exchange, directly or indirectly, to effect any transaction in a security, or to

4   report any such transaction, in interstate commerce, unless the exchange is registered as a national

5   securities exchange under Section 6 of the Exchange Act, or is exempted from such registration.

6   Section 3(a)(1) of the Exchange Act defines an "exchange" as "any organization, association, or

7   group of persons, whether incorporated or unincorporated, which constitutes, maintains, or

8   provides a market place or facilities for bringing together purchasers and sellers of securities or

9   for otherwise performing with respect to securities the functions commonly performed by a stock

10  exchange as that term is generally understood, and includes the market place and the market

11  facilities maintained by such exchange." 15 USC § 78c(a)(1).

12      192.   Exchange Act Rule 3b-16(a) provides a functional test to assess whether a trading

13  system meets the definition of exchange under Section 3(a)(1) of the Exchange Act. Exchange

14  Act Rule 3b-16(a) provides that an organization, association, or group of persons shall be

15  considered to constitute, maintain, or provide "a market place or facilities for bringing together

16  purchasers and sellers of securities or for otherwise performing with respect to securities the

17  functions commonly performed by an exchange" as those terms are used in Section 3(a)(1) of the

18  Exchange Act if such an organization, association, or group of persons: (1) brings together the

19  orders for securities of multiple buyers and sellers; and (2) uses established, non-discretionary

20  methods (whether by providing a trading facility or by setting rules) under which such orders

21  interact with each other, and the buyers and sellers entering such orders agree to the terms of the

22  trade.

23      193.   A system that meets the criteria of Exchange Act Rule 3b-16(a), and is not

24  excluded under Exchange Act Rule 3b-16(b), must register, pursuant to Section 5 of the

25  Exchange Act, as a national securities exchange under Section 6 of the Exchange Act or operate

26  pursuant to an appropriate exemption. One of the available exemptions is for alternative trading

27  systems ("ATSs"). Exchange Act Rule 3a1-1(a)(2) exempts from the definition of "exchange"

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 51 -   BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

under Section 3(a)(1) an organization, association, or group of persons that complies with Regulation ATS. Regulation ATS requires an ATS to, among other things, register as a broker-dealer, file a Form ATS with the Commission to notice its operations, and establish written safeguards and procedures to protect subscribers' confidential trading information. An ATS that complies with Regulation ATS and operates pursuant to the Rule 3a1-1(a)(2) exemption would not be required by Section 5 to register as a national securities exchange.

194.    Defendant FTX Exchange satisfied the criteria of Exchange Act Rule 3b-16(a) and is not excluded under Rule 3b-16(b).  During the Relevant Period, FTX Exchange operated as a market place for bringing together the orders of multiple buyers and sellers in tokens, including FTT token, that included securities as defined by Section 3(a)(10) of the Exchange Act. The purchasers of such digital tokens, such as FTT token, invested money with a reasonable expectation of profits, including through the increased value of their investments in secondary trading, based on the managerial efforts of others. See DAO Report; SEC v. Edwards, 540 U.S. 389, 393 (2004); SEC v. W.J. Howey Co., 328 U.S. 293, 301 (1946).  As discussed above, FTX Exchange brought together orders by receiving and storing orders in tokens in the FTX Exchange order book and displaying the top orders (including token symbol, size, and price) as bids and offers on the FTX Exchange website. FTX Exchange provided the means for these orders to interact and execute through the combined use of the FTX Exchange website, order book and pre-programmed trading protocols. These established non-discretionary methods allowed users to agree upon the terms of their trades in tokens on FTX Exchange during the Relevant Period.

195.    Despite operating as a Rule 3b-16(a) system, Defendant FTX did not register as a national securities exchange or operate pursuant to an exemption from such registration. Accordingly, Defendant FTX violated Section 5 of the Exchange Act, 15 U.S.C. § 78e.

196.    Plaintiff BMA is informed and believes and thereon alleges that at least a portion of the proceeds received by Defendants in connection with illegal operation of the unregistered FTX exchange were used by Defendants, and each of them, for various illegal activities alleged herein, including, without limitation, to unlawfully manipulate the spot and futures market of

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)    - 52 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

cryptocurrencies resulting in the factual and legal injury to Plaintiff as alleged hereinbelow.

## FURTHER ALLEGATIONS COMMON TO ALL COUNTS

197.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-196 above as if fully set forth herein.

198.    Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, advertise Defendant Alameda as a quant cryptocurrency trading firm which manages over $100 million in digital assets and trades $600 million to $1.5 billion per day on all major cryptrocurrency exchanges.  Defendant Alameda is responsible for at least 5% of the global cryptocurrency trading volume.  With such a large trading volume and thinly traded bitcoin markets, Defendants Alameda and Alameda BVI have had and continue to have the ability to move bitcoin market price very substantially.

199.    Defendant Alameda has been well-known among cryptocurrency traders for being one of principal price manipulators of the bitcoin spot and derivatives markets.

200.    Plaintiff BMA is informed and believes and thereon alleges that Defendant Alameda, uses its position as a market maker and liquidity provider to willfully and maliciously manipulate prices on the bitcoin spot and derivatives markets on a daily basis.

201.    Plaintiff BMA is informed and believes and thereon alleges that Defendant Alameda trades and manipulates prices of cryptocurrencies on 35 cryptocurrency exchanges on a daily basis.

202.    As was admitted by Defendant Bankman-Fried, Defendant Alameda was kept secret by Defendants, and each of them, starting from its conception on November 20, 2017 and until 2018, after the Defendants, and each of them, made a business decision to expand and enhance their automated OTC business for bitcoin and other cryptocurrencies and needed to promote and advertise Defendant Alameda and its services to prospective OTC customers. With this purpose in mind, Defendants established the website for Defendant Alameda and otherwise increased the public profile.  Plaintiff BMA is informed and believes and thereon alleges that but for the alleged OTC expansion decision, Defendants would still be operating in secret.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 53 -     BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

203.     Defendant FTX is a cryptocurrency derivatives exchange established and controlled by the remaining Defendants, and each of them.  Link to FTX website www.ftx.com is



located on the front page of Defendant Alameda website https://www.alameda-research.com establishing that, for all practical purposes, FTX and Alameda, together with the remaining Defendants constitute a single Enterprise controlled by the individual Defendants, and each of them.  Moreover, a button "Trade With Us" located on the Alameda website https://www.alameda-research.com links to the Defendant FTX's website www.ftx.com.  Yet



furthermore, Defendant Alameda uses its twitter account SBF_Alameda to promote Defendant FTX and its futures products.

204.     Yet additionally, Defendants, and each of them, specifically advertise Defendant



CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 54 -   BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

FTX as a "Crypto Derivatives Exchange by Alameda Research."  Because Defendant Alameda has its principal office in Northern District of California, according to the foregoing admissions made by Defendants themselves, Defendant FTX is also operated by Defendants, and each of them, from this district.  Moreover, as alleged hereinabove, all individual Defendants, but one, are Northern District of California residents.

205.    Therefore, individual Defendants, and each of them, treat Defendant Alameda and Defendant FTX, together with themselves and Defendant Alameda BVI, as a single Enterprise they repeatedly refer to, collectively, as "Us".

206.    Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, established Defendant FTX to further engage in the alleged unlicensed money transmitting and money laundering businesses and to further advance the alleged long-running manipulative and deceptive scheme to manipulate the prices of certain cryptocurrency derivatives and spot cryptocurrencies on a daily basis and in furtherance of the Enterprise alleged herein.  In fact, after the Defendant FTX was established, Defendants' unlicensed money transmission operation grew from $30 million per day to $130 million per day.

207.    Plaintiff BMA is informed and believes and thereon alleges that Defendants



Alameda, FTX and Bankman-Fried use YouTube account FTX Official as well

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 55 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245



**FTX - Built By Traders, For Traders** @FTX_Official · Jul 16
Periodic reminder about ftx.com/ftt-listing; prefund for a 5% FTT bonus!

💬        🔁 1        ♡ 3        ↑

as multiple twitter accounts, including, without limitation, @FTX_Official, @SBF_Alameda, to

market unregistered futures products as well as unregistered crypto tokens, including unregistered

IEO tokens FTT issued by Defendant FTX, to the United States general public without the use of



**FTX - Built By Traders, For Traders** @FTX_Official · Sep 8
December contracts on all our products are now live!
ftx.com/trade/BTC-1227

💬 1        🔁 2        ♡ 9        ↑

necessary disclaimers to the effect that those tokens are not offered to the U.S. persons.

Because the FTT tokens can only be used in connection with Defendant FTX's exchange and the

purchasers of the FTT tokens must be Defendant FTX's users to derive any benefit from the

purchased FTT tokens, by selling FTT tokens to U.S. persons, Defendants, and each of them,

clearly intended that the U.S. purchasers of the FTT tokens would also be users of the Defendant

FTX's unlicensed money transmitting services.  This clearly evidences that Defendants, and each

of them, intended the United States, and specifically California, to be a significant market for the

Defendant FTX's unlicensed money transmitting business.

     208.    Plaintiff BMA is informed and believes and thereon alleges that despite being an

![Post FTT Listing and FTX Update with SBF video thumbnail - 3:36 - 721 views · 1 month ago]

Post FTT Listing and FTX
Update with SBF

721 views · 1 month ago

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 56 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

Antigua and Barbuda limited company, Defendant FTX has no operations what so ever in Antigua and Barbuda. Therefore, FTX Trading LTD is a sham shell entity with nominee officers, directors and shareholders used by Defendants, and each of them, to hide the true ownership and control of defendant FTX from the public and the U.S. authorities.

209. Defendants Alameda and FTX share the same CEO Defendant Bankman-Fried and much of the same team, while Defendant Alameda operates as a principal market maker and liquidity provider for the Defendant FTX.

210. Plaintiff BMA is informed and believes and thereon alleges that Defendants Alameda, FTX to further advance the alleged long running manipulative and deceptive scheme to manipulate the prices of certain cryptocurrency derivatives and spot cryptocurrencies on a daily basis.

211. Defendant Bankman-Fried and consequently Defendant Alameda possesses access to all information of Defendant FTX, including all order books as well as information on all open position sizes as well as all stop loss order and position liquidation prices. This information is used by the market maker and liquidity provider Defendant Alameda to manipulate the prices of various assets to cause forced position liquidations on FTX.

212. Access to the critical information as alleged herein creates an unprecedented opportunity for Defendants Alameda to manipulate prices of cryptocurrencies traded on Defendant FTX, which, in turn, results in an unprecedented conflict of interest for the individual and corporate Defendants, and each of them.

213. Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, deliberately and fraudulently failed to advise the users of FTX about the conflict of interest alleged herein.

214. Plaintiff BMA is informed and believes and thereon alleges that Defendant FTX allows United States based traders to freely register for futures trading and enables such United States based traders to fund their accounts with unlimited crypto deposits and to place any trades with up to 101x leverage, but limits cryptocurrency withdrawals by such United States based

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 57 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

traders to only $1,000 or $2,000 per day if, during the registration, the trader simply specifies country and region, which is not verified by Defendant FTX.  Because no actual identify verification is performed by FTX, any trader is free to open any number of additional accounts with Defendant FTX, effectively multiplying the hereinabove-alleged limits.

215.    Plaintiff BMA is informed and believes and thereon alleges that Defendant FTX rigged its position liquidation engine to perform position liquidations based not on price of the underlying index and not even based on the price of the last futures trade, but based on current bid and ask prices for the future on the FTX.  This enables Defendant Alameda, who is also the principal market maker and liquidity provider for the Defendant FTX to perform users' position liquidations based on ask and bid prices without actually executing any trades.  In other words, liquidation may be performed by simply moving bids and asks by the market maker Defendant Alameda.

216.    During a promotional online video broadcast that took place in July of 2019, when asked about Barts and other similar deceptive and manipulative bitcoin price actions described herein, Defendant Bankman-Fried not only failed to deny causing such illicit and malicious price actions but specifically stated that these manipulative price patterns are, in fact, intellectual property of Defendant Alameda.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 58 -        BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

1
2

217.    Pursuant to the manipulative and deceptive scheme alleged hereinabove, at about



 **CZ Binance** ✔ @cz_binance · 6h

The attacker is a well-known account that trades with @binance, and started their own futures exchange a few months ago. This was the 2nd attempt they tried. Shame!

10:10 PM · Sep 15, 2019 · Twitter Web App

21:00 EDT on September 15, 2019, Defendants, and each of them, attempted to manipulate prices

of bitcoin futures listed on Binance's newly opened SAFU futures trading platform by dumping

about 255 bitcoins, valued at approximately $2,626,500 on to the Binance futures market at

market prices in two minute time interval, with the illicit purpose to cause an artificial price move

that would lower the price sufficiently to trigger a cascading execution of stop loss orders and

liquidations of bitcoin futures long positions on the Binance exchange.  However, Defendants,

and each of them, have miscalculated that Binance uses bitcoin index price and not the futures

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 59 -      BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

price in its liquidation engine to trigger the execution of the liquidation orders. Therefore, Defendants, and each of them, were caught by Binance's market surveillance system, which prevented Defendants, and each of them, from achieving their illicit goals and no traders' positions were liquidated.

218.   As was stated in the Binance CEO's Changpeng Zhao announcement related to this illicit and fraudulent manipulation attack, Defendants, and each of them, actually made two illicit attempts to manipulate the bitcoin futures prices, as alleged herein, both of which failed due to Binance's internal controls.

219.   Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, deliberately chose the Binance's newly opened SAFU futures platform, which opened on or about September 13, 2019, just two days prior to the failed attack, for their illicit price manipulation attempt because they assumed that bitcoin futures on this newly opened platform will be thinly traded, in order to maximize the impact of their illicit manipulation attempt on the price of bitcoin futures.

220.   Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, further deliberately chose the time of lowest global bitcoin and bitcoin futures trading liquidity (21:00 EDT on Sunday night) to maximize the impact of their illicit manipulation attempt on the price of bitcoin futures.

221.   Plaintiff BMA is informed and believes and thereon alleges that Defendants', and each of them, choice of both the new SAFU futures platform and the low liquidity time for executing the illicit price manipulation as well as performing two manipulation attempts clearly establishes that Defendants', and each of them, actions were calculated, willful and malicious.

222.   CEO of Binance Changpeng Zhao stated that Defendants' inventions in relation to the hereinabove alleged attack were absolutely clear.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 60 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

1
2
3
4
5



CZ Binance ✔
@cz_binance

Replying to @gflightvibes and @binance

lol, their intentions were clear.  but ...  you have a point.

10:12 PM · Sep 15, 2019 · Twitter Web App

6    223.    As of the filing date of this Complaint, Defendants, and each of them, failed to

7  issue any statement explaining their illicit conduct in connection with the attempted Binance

8  attack as alleged hereinabove.

9    224.    CEO of Binance Changpeng Zhao further stated that he had a conversation with

10  one of the Defendants and that said Defendant made an excuse ("Defendant's Excuse") that the

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



CZ Binance ✔
@cz_binance

Replying to @cz_binance and @binance

Had a chat with the client. It was an accident, due to a
bad parameter on their side. Not intentional. All good
now.

11:55 PM · Sep 15, 2019 · Twitter Web App

25 Retweets   470 Likes

⚡⚡NoNames @CryptoLilze · Sep 16
Replying to @cz_binance and @binance
Wow, to be so casual about this is shocking.

You had a chat with a known manipulator and all is cool now?
Potentially liquidating lots of small traders was just an accident?

RED FLAG ffs!!!

♡ 1                      ♡ 1

27  attempted attack was a result of inadvertence caused by a "bad parameter."  The Defendants'

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 61 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Excuse was ridiculed by more than 20 traders, all indicating that it was highly likely that the


**nitrog** @nitrogsto · Sep 16
Replying to @cz_binance and @binance
they're always doing this in bitmex, not a bad parameter,
its a scam

♡ 2

aforesaid attack was in fact intentional, deliberate and malicious.  One of the traders has stated:
"Wow, to be so casual about this is shocking. You had a chat with a known manipulator and all is
cool now? Potentially liquidating lots of small traders was just an accident?"

225.    Remarkably, Defendant's Excuse was nearly identical to the excuse used by


**W W** @WW28112409 · Sep 17
Replying to @cz_binance and @binance
Yeah right, his finger slipped😂😂😂

defendants in *SEC v. Shuang Chen et. al*. Civil Action: 1:19-cv-12127-WGY (D. MA 2019) when
they were caught: "[a]s Xiaosong Wang knew, several of the trades flagged by this United States
- based broker were, in fact, part of the fraudulent market manipulation scheme set forth herein.
But, Xiaosong Wang provided the following false and materially misleading response: "I found
that when I want to sell these positions, I used the wrong hot key, and the buy orders may be
placed, so the sell orders were rejected, I have changed the setting of hot keys for Sell orders, so I
think I will be ok. I apologize for any inconvenience caused the mistake.""

226.    Plaintiff BMA is informed and believes and thereon alleges that Defendant's
Excuse was in fact a deliberate fraudulent statement made with a specific purpose to avoid
closure of Defendants' account on Binance and to continue Defendants' illicit price manipulation
on that exchange, made in violation of 18 U.S.C. § 1343.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 62 -     BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

227.   Plaintiff BMA is informed and believes and thereon alleges that Defendants', and each of them, illicit profits from the herein alleged racketeering activity exceeded $150,000,000. Specifically, only on a single bitcoin derivatives exchange BitMex, as evidenced by BitMex's leaderboard, Defendants, and each of them, generated 11,156 bitcoin of illicit profits, divided

> **Q — Alexandre R from GAINS:** *Nice. And I guess you're quite humble so I'll say it for you ahah: you also held the rankings 2, 4 and 6 in the BitMEX leaderboard, if I'm not mistaken?*
>
> **A — Darren W from FTX:** we're 4, 5 and 9 now.
>
> **A — Sam Bankman-Fried from FTX:** One of the costs of constantly switching accounts.

between three accounts ranked 4, 5 and 9, which are believed to be the "winner" accounts of



## Leaderboard

The following shows some of the most profitable traders on BitMEX.
These lists are anonymous. Each name always represents the same user, but is not personally identifiable.

### Top 23 Traders by Notional

| Rank | Name | Profit | Is Real Name |
|------|------|--------|--------------|
| 1 | Heavy-Autumn-Wolf | 7,447.6472 XBT | ✗ |
| 2 | Quick-Grove-Mind | 5,659.6683 XBT | ✗ |
| 3 | Alameda Research | 5,239.0925 XBT | ✓ |
| 4 | Hot-Relic-Fancier | 4,216.3146 XBT | ✗ |
| 5 | Roger_Leotank | 1,764.5478 XBT | ✓ |
| 6 | alamedaresearchltd@gmail.com | 1,687.8234 XBT | ✓ |
| 7 | Circle_Trade | 1,554.3463 XBT | ✓ |
| 8 | Skitter-Peridot-Raven | 1,523.6654 XBT | ✗ |
| 9 | Paper-Feather-Stallion | 1,520.9117 XBT | ✗ |
| 10 | Jade-Platinum-Legs | 1,504.2912 XBT | ✗ |
| 11 | Sage-Tabby-Raver | 1,489.4338 XBT | ✗ |
| 12 | Cream-White-Ox | 1,472.8762 XBT | ✗ |
| 13 | Honeysuckle-South-Rib | 1,388.6763 XBT | ✗ |
| 14 | Cedar-Spice-Fisher | 1,323.6566 XBT | ✗ |
| 15 | Tree-Surf-Dragon | 1,288.8437 XBT | ✗ |
| 16 | Leather-Metal-Razor | 1,279.0483 XBT | ✗ |
| 17 | daniel3 | 1,151.7762 XBT | ✓ |
| 18 | Linen | 1,132.3276 XBT | ✓ |
| 19 | Wave-Apple-Puma | 1,076.7725 XBT | ✗ |
| 20 | Ivory-Dirt-Tongue | 970.8738 XBT | ✗ |
| 21 | Noble-Black-Antelope | 959.0828 XBT | ✗ |
| 22 | Prong-Buttercup-Whale | 891.2359 XBT | ✗ |
| 23 | Thorn-Moor-Braid | 878.7421 XBT | ✗ |

Defendants Alameda and Alameda BVI, which, at the highest 2019 bitcoin price of $13,868.44,

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 63 -   BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

1
2
3
4
5
6
7
8
9
10
11
12

amounts to over $154,716,316.64.  Moreover, Defendant Bankman-Fried publicly stated that BitMex was not the top trading platform that Defendant Alameda uses.  Accordingly, the actual illicit profits of Defendants, and each of them, are much higher.  The aforesaid substantial profits in the three "winner" accounts used by Defendant were generated using multiple "helper" accounts on BitMex as well as other exchanges, including, without limitation, Coinbase, Bitstamp and Kraken.  The Defendants first used the helper accounts to place multiple small purchase or sale orders on relatively illiquid exchanges to create upward or downward pressure on the cryptocurrency price, which is used in calculating the BitMex futures reference index price.  Then, the Defendants used the "winner" account on BitMex to purchase or sell larger quantities of cryptocurrency futures at prices that had been affected by the manipulative orders placed by the helper account(s).

13
14
15

228.    Due to the low liquidity of the cryptocurrencies spot and derivative markets, it would have been impossible for Defendants, and each of them, to generate the alleged exorbitant profits without engaging in the alleged manipulative, fraudulent and deceptive scheme to manipulate the prices of cryptocurrency derivatives and spot cryptocurrencies.

16
17
18
19
20
21
22
23
24

229.    Plaintiff BMA is informed and believes and thereon alleges that it would have been impossible to generate the profit of such staggering magnitude from a handful of illicit trades and producing such profit clearly requires continuing and extensive illicit market manipulation activity.  This fact clearly establishes a continuing pattern of racketeering activity perpetrated by the Defendants, and each of them, where manipulative activity is performed on a daily basis during the Relevant Period.  In addition, the illicit activities in furtherance of the Enterprise are continuing at the present time.  Therefore, the Enterprise conducted or participated in by the Defendants, and each of them, was continuous within the meaning of RICO.

25
26

### COUNT I
**(Conduct Of Or Participation In The Conduct Of Enterprise's Affairs Through A Pattern Of Racketeering Activity In Violation Of 18 U.S.C. § 1962(c))**

27
28

230.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-229 above as if fully set forth herein.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

231.   This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count I Defendants").

232.   During Relevant Period, Enterprise engaged in activities that affect interstate commerce. The Count I Defendants are employed by or associated with the Enterprise.

233.   The Count I Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff as well as other cryptocurrency traders.  Specifically, Count I Defendants engages in continuous pattern of racketeering activity involving, among other unlawful acts, operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956(a), engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), wire fraud in violation 18 U.S.C. § 1343 and interstate transportation of stolen property in violation 18 U.S.C. § 2314.  The alleged acts were perpetrated by Count I Defendants during Relevant Period on a daily basis and continue to take place.

234.   Pursuant to and in furtherance of their fraudulent scheme, Count I Defendants committed multiple related acts of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956(a), engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), wire fraud in violation of 18 U.S.C. § 1343 and interstate transportation of stolen property in violation 18 U.S.C. § 2314.

235.   The acts of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956(a), engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), wire fraud in violation 18 U.S.C. § 1343 and interstate transportation of stolen property in violation 18 U.S.C. § 2314 set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

236.   Plaintiff BMA is informed and believes and thereon alleges that Defendants, and

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 65 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

each of them, took part in directing the affairs of the alleged Enterprise by engaging in a continuing pattern of racketeering activity involving, among other unlawful acts, operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956(a), engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), wire fraud in violation 18 U.S.C. § 1343 and interstate transportation of stolen property in violation 18 U.S.C. § 2314.

237.    The Count I Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

238.    Plaintiff BMA is informed and believes and thereon alleges that Count I Defendants, and each of them, (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the Enterprise are conducted; (3) knowingly implemented decisions of upper management; and (4) was indispensable to the achievement of the alleged Enterprise's goals.

239.    Plaintiff BMA is informed and believes and thereon alleges that Count I Defendants, and each of them, conducted or participated in the conduct of the affairs of the alleged Enterprise engaging in a continuing pattern of racketeering activity involving, among other unlawful acts, operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956(a), engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), wire fraud in violation 18 U.S.C. § 1343 and interstate transportation of stolen property in violation 18 U.S.C. § 2314.

240.    Plaintiff BMA is informed and believes and thereon alleges that Defendants, and each of them, participated in a pattern of racketeering activity, which included at least two acts of racketeering activity including, without limitation, at least two acts of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), at least two acts of money laundering in violation of 18 U.S.C. § 1956, at least two acts of engaging in monetary transactions

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)  - 66 -     BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, at least two acts of wire fraud in violation of 18 U.S.C. § 1343 and at least two acts of interstate transportation of stolen property in violation 18 U.S.C. § 2314.   Count I Defendants, and each of them, committed the alleged predicate offenses as a part of conducting or participating in the Enterprise, and, therefore, is liable for the violation of the RICO, 18 U.S.C. § 1964(c).

241.    As a direct and proximate result of the Count I Defendants', and each of them, conduct of or participation in the long-running Enterprise, within the meaning of 18 U.S.C. § 1961(4), through a continuing pattern of racketeering activity involving, among other unlawful acts, operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), money laundering in violation of 18 U.S.C. § 1956(a), engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a), wire fraud in violation 18 U.S.C. § 1343 and interstate transportation of stolen property in violation 18 U.S.C. § 2314, Plaintiff BMA have been injured in its business and property in the amount of $13,729,755.60.

242.    The aforesaid amount of $13,729,755.60 constitutes a concrete financial loss of the Plaintiff BMA.

243.    Therefore, Count I Defendants', and each of them, are liable, jointly and severally, to Plaintiff BMA under 18 U.S.C. §1964(c) for the violation of the RICO, 18 U.S.C. §1962(c) in the amount of triple of Plaintiff BMA's losses, which is $41,189,266.80.

## <u>COUNT II</u>
### (Conspiracy To Conduct Or Participate In The Conduct Of Enterprise's Affairs Through A Pattern Of Racketeering Activity In Violation Of 18 U.S.C. § 1962(d))

244.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-243 above as if fully set forth herein.

245.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count II Defendants").

246.    As set forth above, the Count II Defendants agreed and conspired to violate 18 U.S.C. § 1962(a) (b) and (c).  Specifically, Count II Defendants conspired to: (1) use or invest

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 67 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

income that is derived from a pattern of racketeering activity alleged hereinabove in the interstate Enterprise (18 U.S.C. § 1962(a)); (2) acquire or maintain interests in the Enterprise through a pattern of racketeering activity alleged hereinabove (18 U.S.C. § 1962(b)); and (3) conduct and participate in the conduct of the affairs of the Enterprise through a pattern of racketeering activity alleged hereinabove (18 U.S.C. § 1962(c)).

247.   Plaintiff BMA is informed and believes and thereon alleges that the Count II Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity alleged hereinabove, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity alleged hereinabove. The Count II Defendants knew that their predicate acts were part of a pattern of racketeering activity alleged hereinabove and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C.A. § 1962(a), (b) and (c), in violation of 18 U.S.C. § 1962(d).

248.   Plaintiff BMA is informed and believes and thereon alleges that Count II Defendants, and each of them, intended to further the operation of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a).

249.   Plaintiff BMA is informed and believes and thereon alleges that Count II Defendants, and each of them, intended to further the money laundering endeavor in violation of 18 U.S.C. § 1956.

250.   Plaintiff BMA is informed and believes and thereon alleges that Count II Defendants, and each of them, intended to further the transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957.

251.   Plaintiff BMA is informed and believes and thereon alleges that Count II Defendants, and each of them, intended to further the wire fraud in violation of 18 U.S.C. § 1343.

252.   Plaintiff BMA is informed and believes and thereon alleges that Count II Defendants, and each of them, intended to further the interstate transportation of stolen property

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 68 -   BMA LLC v. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

in violation of 18 U.S.C. § 2314.

253.    Plaintiff BMA is informed and believes and thereon alleges that Count II Defendants, and each of them, have been aware of the essential nature and scope of the alleged Enterprise and intended to participate in it.

254.    Plaintiff BMA is informed and believes and thereon alleges that Count II Defendants, and each of them, agreed to commit, or participate in, the violation of two predicate offenses, namely at least two acts of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), at least two acts of money laundering in violation of 18 U.S.C. § 1956, at least two acts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, at least two acts of wire fraud in violation of 18 U.S.C. § 1343 and at least two acts of interstate transportation of stolen property in violation 18 U.S.C. § 2314.

255.    As direct and proximate result of the Count II Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff BMA has been injured in their business and property in the amount of $13,729,755.60.

256.    As a proximate result of the Count II Defendants', and each of them, conspiracy to conduct or participate in the long-running Enterprise, within the meaning of 18 U.S.C. § 1961(4), engaging in the continuing pattern of racketeering activity involving, among other unlawful acts, at least two acts of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a), at least two acts of money laundering in violation of 18 U.S.C. § 1956, at least two acts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, at least two acts of wire fraud in violation of 18 U.S.C. § 1343 and at least two acts of interstate transportation of stolen property in violation 18 U.S.C. § 2314, Plaintiff BMA sustained concrete and certain monetary cryptocurrency trading losses in the amount of $13,729,755.60.

257.    The aforesaid amount of $13,729,755.60 constitutes a concrete financial loss of Plaintiff BMA.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 69 -      BMA LLC V. FTX TRADING LTD ET AL.      CASE NO. 3:19-CV-07245

258.     Therefore, Count II Defendants, and each of them, are liable, jointly and severally, to Plaintiff BMA under 18 U.S.C. §1964(c) for the violation of the RICO, 18 U.S.C. §1962(d) in the amount of triple of Plaintiff BMA's losses, which is $41,189,266.80.

### COUNT III
**(Use Of A Manipulative Or Deceptive Device Or Contrivance In Violation Of 7 U.S.C. § 9(1))**

259.     Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-258 above as if fully set forth herein.

260.     This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count III Defendants").

261.     Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1), makes it unlawful for "any person, directly or indirectly, to use or employ or attempt to use or employ, in connection with ...a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate." Regulation 180.1 makes it unlawful for "any person, directly or indirectly, in connections with any contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) use or employ or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;... (3) engage, or attempt to engage, in any act practice or course of business, which operates or would operate as a fraud or deceit upon any person...."

262.     Count III Defendants, and each of them, intended to affect or acted recklessly with regards to affecting the prices of the bitcoin futures contracts and cash bitcoin and engaged in overt acts in furtherance of their intent.

263.     By the foregoing conduct, Count III Defendants, and each of them, intentionally or recklessly used or employed or attempted to use or employ a manipulative device or artifice to defraud and engaged in or attempted to engage in any act, practice or course of business which operated or would operate as a fraud or deceit upon any person, in violation of Section 6(c)(1) of the CEA and Regulation 180.1.  Allegations of specific acts constituting fraud set forth in

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

Paragraphs 128-140 above are incorporated as if fully set forth herein.

264.    Because the actions of Count III Defendants, and each of them, occurred within the scope of their employment, office, or agency with Defendant Alameda, Defendant Alameda BVI and Defendant FTX, these Defendants are liable as a principal for their violations of Section 6(c)(1) and Regulation 180.1 pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2018).

265.    Each and every overt action in furtherance of the attempt to manipulate prices, and each act of manipulation is alleged herein as a separate and distinct violation of Section 6(c)(1) of the CEA and Regulation 180.1.

266.    As direct and proximate result of the Count III Defendants, and each of them, use of a manipulative device or artifice to defraud as alleged herein, in violation of Section 6(c)(1) of the CEA and Regulation 180.1, including, without limitation, pumps and dumps, Barts, liquidation cascades and spoofing perpetrated by Count III Defendants, Plaintiff BMA has been injured in its business and property in the amount of $13,729,755.60. These acts were an illegitimate part of the supply-demand equation, prevented true price discovery, and caused artificial pricing in the cryptocurrency market.

267.    For example, Plaintiff BMA sustained a loss of at least 10 bitcoins on or about May 17, 2019, due to a liquidation cascade, which, on information and belief of Plaintiff BMA, was caused by Count III Defendants.

268.    As a further example, Plaintiff BMA sustained a loss of at least 10 bitcoins on or about June 26, 2019, due to a liquidation cascade, which, on information and belief of Plaintiff BMA, was caused by Count III Defendants.

269.    The aforesaid amount of $13,729,755.60 constitutes a concrete financial loss of Plaintiff BMA.

270.    Therefore, Count II Defendants, and each of them, are liable, jointly and severally, to Plaintiff BMA under 7 U.S.C. § 25(a) in the amount of $13,729,755.60.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 71 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT IV**

**(Manipulation And Attempted Manipulation Of Bitcoin Futures And Cash Bitcoin In Violation Of 7 U.S.C. § 9(3) and 7 U.S.C. § 13(a)(2))**

271.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-270 above as if fully set forth herein.

272.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count IV Defendants").

273.    Section 6(c)(3) of the CEA, 7 U.S.C. § 9(3), makes it unlawful for "any person, directly or indirectly, to manipulate or attempts to manipulate the price of any swap or of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."

274.    Section 9(a)(2) of the CEA, 7 U.S.C. § 13(a)(2), makes it unlawful for "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."

275.    Regulation 180.2 makes it "unlawful for any person, directly or indirectly, to manipulate or attempt to manipulate the price of any swap, or of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."

276.    Count IV Defendants, and each of them, possessed an ability to influence market prices of spot bitcoin and bitcoin derivatives.  Specifically, as Count IV Defendants, and each of them, claimed on Defendant's Alameda website that Defendant Alameda trades $600 million to $1.5 billion per day on all major cryptrocurrency exchanges.  Defendant Alameda is responsible for at least 5% of the global cryptocurrency trading volume.  With such a large trading volume and thinly traded bitcoin markets, Defendants Alameda and Alameda BVI have had and continue to have the ability to move bitcoin market price very substantially.

277.    Plaintiff BMA is informed and believes and thereon alleges that Count IV Defendants, and each of them, acting in furtherance of the manipulative, fraudulent and deceptive scheme to manipulate the prices of certain cryptocurrency derivatives, including, without limitation, bitcoin future contracts, bitcoin swaps, as well as the cash prices of cryptocurrencies,

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 72 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

including, without limitation, cash bitcoin caused an artificial price of spot bitcoin and bitcoin derivatives.  The artificial price was further caused by diminished investor confidence resulting from the abusive market conduct of Count IV Defendants.

278.    Allegations of specific acts constituting fraud set forth in Paragraphs 128-140 above are incorporated as if fully set forth herein.  These acts were an illegitimate part of the supply-demand equation, prevented true price discovery, and caused artificial pricing in the cryptocurrency market.

279.    Plaintiff BMA is informed and believes and thereon alleges that Count IV Defendants, and each of them, caused an artificial price of spot bitcoin and bitcoin derivatives in order to trigger a specific price-based market event, such as a liquidation cascade or execution of stop loss orders of other traders.

280.    Plaintiff BMA is informed and believes and thereon alleges that Count IV Defendants, and each of them, specifically intended to cause the alleged artificial price of spot bitcoin and bitcoin derivatives in order to trigger a specific price-based market event, such as a liquidation cascade or execution of stop loss orders of other traders.

281.    By the foregoing conduct, Count IV Defendants, and each of them, manipulated or attempted to manipulate the price of a commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity, in violation of Sections 6(c)(3) and 9(a)(2) of the CEA and Regulation 180.2.

282.    Because the actions of Count IV Defendants, and each of them, occurred within the scope of their employment, office, or agency with Defendant Alameda and Defendant FTX, Defendant Alameda and Defendants FTX are liable as a principal for their violations of Sections 6(c)(3) and 9(a)(2) of the CEA and Regulation 180.2 pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2018).

283.    Each and every overt action in furtherance of the attempt to manipulate prices, and each act of manipulation is alleged herein as a separate and distinct violation of Section 6(c)(3) and 9(a)(2) of the CEA and Regulation 180.2.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 73 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

284.    Plaintiff BMA traded the spot bitcoin and bitcoin derivatives at the time the alleged artificial price existed due to the wrongful conduct of Count IV Defendants and each of them.

285.    For example, Plaintiff BMA sustained a loss of at least 10 bitcoins on or about May 17, 2019, due to a liquidation cascade, which, on information and belief of Plaintiff BMA, was caused by Count IV Defendants'.

286.    As a further example, Plaintiff BMA sustained a loss of at least 10 bitcoins on or about June 26, 2019, due to a liquidation cascade, which, on information and belief of Plaintiff BMA, was caused by Count IV Defendants'.

287.    As a proximate result of the Count IV Defendants', and each of them, manipulation or attempted to manipulation of the price of certain cryptocurrency derivatives, including, without limitation, bitcoin future contracts, bitcoin swaps, as well as the cash prices of cryptocurrencies, including, without limitation, cash bitcoin, which caused an artificial price of spot bitcoin and bitcoin derivatives, Plaintiff sustained concrete monetary cryptocurrency trading losses in the amount of $13,729,755.60.

288.    The aforesaid amount of $13,729,755.60 constitutes a concrete financial loss of Plaintiff BMA.

289.    Therefore, Count IV Defendants, and each of them, are liable, jointly and severally, to Plaintiff BMA under 7 U.S.C. § 25(a) in the amount of $13,729,755.60.

**COUNT V**
**(Aiding and Abetting Manipulation Of Bitcoin Futures And Cash Bitcoin**
**In Violation Of 7 U.S.C. § 25(a)(1))**

290.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-289 above as if fully set forth herein.

291.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count V Defendants").

292.    Plaintiff BMA is informed and believes and thereon alleges that Count V Defendants, and each of them, knowingly aided, abetted, counseled, induced and/or procured the

Consensus Law
CryptoCurrency
Attorneys

Amend. Compl. for Violation of RICO (Demand for Jury Trial)   - 74 -    BMA LLC v. FTX Trading Ltd et al.    Case No. 3:19-cv-07245

violations of the CEA by other Defendants and unknown third persons. Each did so with knowledge of other Defendants' and unknown third persons' manipulation of cryptocurrency prices through manipulative trades, and substantially and willfully intended to assist these manipulations to cause artificial prices, during the Relevant Period, in violation of Section 22(a)(1) of the CEA, 7 U.S.C. § 25(a)(1).  For example, Defendant FTX aided and abetted other Defendants and unknown third persons in violation of the CEA by enabling the price manipulators to open unlimited number of anonymous trading accounts on FTX exchange and thereby hindering detection of said manipulation.  Each of the remaining Defendants Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison was also responsible for implementing this policy on the FTX exchange.

293.    As a proximate result of the Count V Defendants' actions as alleged herein, Plaintiff sustained concrete monetary cryptocurrency trading losses in the amount of $13,729,755.60.

294.    Therefore, Count V Defendants, and each of them, are liable, jointly and severally, to Plaintiff BMA under 7 U.S.C. § 25(a) in the amount of $13,729,755.60.

## COUNT VI
### (Violation Of Cal. Corp. Code § 29536)

295.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-294 above as if fully set forth herein.

296.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count VI Defendants").

297.    Cal. Corp. Code § 29536 provides that "It is unlawful for any person, directly or indirectly, in connection with the purchase or sale of, the offer to sell, the offer to purchase, the offer to enter into, or the entry into, a commodity, commodity contract, or commodity option to do any of the following: (a)  To willfully employ any device, scheme, or artifice to defraud. (b) To willfully make any false report, enter any false record, make any untrue statement of a material fact, or omit to state a material fact necessary in order to make the statements made, in

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 75 -    BMA LLC v. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

the light of the circumstances under which they were made, not misleading. (c)  To willfully engage in any transaction, act, practice, or course of business which operates or would operate as a fraud or deceit upon any persons. (d)  To willfully misappropriate or convert the funds, security, or property of any other person."

298.    Allegations of specific acts constituting fraud set forth in Paragraphs 128-140 above are incorporated as if fully set forth herein.

299.    Plaintiff BMA is informed and believes and thereon alleges that Count VI Defendants, and each of them, using the unlawful and fraudulent trading practices alleged hereinabove, did in fact willfully employ a device, scheme, or artifice to defraud in connection with the purchase or sale of, the offer to sell, the offer to purchase, the offer to enter into, or the entry into, bitcoin and one or more bitcoin derivatives, such as bitcoin swaps and futures contracts.

300.    Plaintiff BMA is informed and believes and thereon alleges that Count VI Defendants, and each of them, using the unlawful and fraudulent trading practices specifically alleged hereinabove, did in fact willfully engaged in transaction, act, practice, or course of business which operated as a fraud or deceit upon any persons, and specifically other bitcoin and bitcoin derivatives traders.

301.    Plaintiff BMA is informed and believes and thereon alleges that Count VI Defendants, and each of them, using the unlawful and fraudulent trading practices alleged hereinabove, did in fact willfully misappropriated and convert the funds and property of other persons, and specifically other bitcoin and bitcoin derivatives traders.

302.    Accordingly, Count VI Defendants, and each of them, willfully violated Cal. Corp. Code § 29536.

303.    As a proximate result of the Count VI Defendants', and each of them, willful violation of Cal. Corp. Code § 29536, Plaintiff BMA sustained concrete monetary cryptocurrency trading losses in the amount of $13,729,755.60.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 76 -      BMA LLC V. FTX TRADING LTD ET AL.      CASE NO. 3:19-CV-07245

## COUNT VII
### (Negligence)

304.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-303 above as if fully set forth herein.

305.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count VII Defendants").

306.    California law imposes a duty to prevent purely economic loss to third parties in financial transactions.  The foundational case on this subject outlines six factors for establishing a duty to protect against economic loss: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

307.    Plaintiff BMA is informed and believes and thereon alleges that Count VII Defendants, and each of them, specifically intended to affect the prices of the bitcoin futures contracts and cash bitcoin in order to trigger specific market events as alleged above.  For example, Count VII Defendants, and each of them, intended to cause the price of bitcoin futures contracts or cash bitcoin to reach levels that would trigger liquidation cascades and execution of other traders' stop loss orders, as specifically alleged above.  Thus, Count VII Defendants, and each of them, specifically intended to affect traders like Plaintiff, by causing their financial ruin by triggering liquidation of their positions or by causing triggering of execution of their stop loss orders.  Moreover, Count VII Defendants, and each of them, specifically intended to financially benefit from the financial ruin of other traders by buying spot bitcoin and bitcoin derivatives at artificially below market prices or by selling spot bitcoin and bitcoin derivatives at artificially above market prices.

308.    Because of Count VII Defendants', and each of them, specific intent to trigger the alleged market events, financial harm and even ruin to traders like Plaintiff was completely and entirely foreseeable to Defendants, and each of them.  In fact, it was Defendants', and each of

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 77 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-cv-07245

them, specific intent to become unjustly enriched by reason of financially harming or ruining traders like Plaintiff.

309.    By reason of Count VII Defendants', and each of them, breach of the legal duty to prevent economic harm to traders like Plaintiff, imposed by California law, Plaintiff BMA sustained ascertainable, concrete and certain monetary trading losses in the amount of $13,729,755.60.

310.    Count VII Defendants', and each of them, conduct, namely unlawful market manipulation alleged above, was specifically intended to cause injury to traders like Plaintiff BMA.

311.    Count VII Defendants', and each of them, conduct was clearly fraudulent, unlawful and was motivated purely by personal greed.  Thus, a high degree of moral blame is attached to the Count VII Defendants', and each of them, intentional spot bitcoin as well as bitcoin derivatives market manipulation activities.

312.    The State of California has a strong policy of preventing future harm to traders like Plaintiff BMA from unlawful and fraudulent conduct by Count VII Defendants, and each of them.

313.    Accordingly, under California law, Count VII Defendants, and each of them, owed a legal duty to prevent economic harm to Plaintiff BMA.

314.    Count VII Defendants, and each of them, breached the alleged legal duty to prevent economic harm to Plaintiff by negligently manipulating the prices of spot bitcoin and bitcoin derivatives and thereby causing an economic injury to Plaintiff BMA.

315.    As a factual (but for) and proximate (legal) result of the Count VII Defendants', and each of them, negligent market manipulation activities, Plaintiff BMA sustained certain and concrete monetary cryptocurrency trading losses in the amount of $13,729,755.60.

316.    The aforesaid amount of $13,729,755.60 constitutes a certain and concrete financial loss of the Plaintiff BMA factually (directly) and legally (proximately) caused by Count VII Defendants', and each of them, unlawful conduct.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)  - 78 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

## COUNT VIII
### (Fraud)

317.  Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-316 above as if fully set forth herein.

318.  This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count VIII Defendants").

319.  Pursuant to California law, "fraud may arise from conduct that is designed to mislead, and not only from verbal or written statements." *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 839 [199 Cal.Rptr.3d 901].

320.  Allegations of specific acts constituting fraud set forth in Paragraphs 128-140 above are incorporated as if fully set forth herein.

321.  Count VIII Defendants', and each of them, market manipulation including, without limitation, pumps and dumps, Barts and spoofing, were the conduct that was specifically designed to mislead traders like Plaintiff BMA.  For example, as alleged hereinabove, pumps and dumps, Barts and spoofing were perpetrated by Count VIII Defendants, and each of them, with the specific purpose of deceiving other market participants as to market-based forces of supply and demand for an asset and enticing unsuspecting traders, or other trading algorithms, to follow the trade and place orders that they would not have otherwise placed.  Moreover, pumps and dumps, Barts and spoofing were intended by Count VIII Defendants, and each of them, to trick other market participants into reacting to an apparent change and imbalance of supply and demand by buying and selling bitcoin futures at times, prices and quantities that they otherwise would likely not have traded.

322.  Thus, pumps and dumps, Barts and spoofing were examples of the conduct that was specifically designed by Count VIII Defendants, and each of them, to mislead Plaintiff BMA as well as other traders.

323.  Plaintiff BMA as well as other traders were in fact mislead by Count VIII Defendants', and each of them, manipulative and fraudulent acts intended to mislead and defraud, including, without limitation, by pumps and dumps, Barts and spoofing perpetrated by Count VIII

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 79 -     BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-CV-07245

1

Defendants, and each of them, and placed orders that they would not have otherwise placed.

2

324.    Plaintiff BMA, at the time of the alleged manipulative and fraudulent acts intended

3

to mislead and defraud, which were perpetrated by Count VIII Defendants, and each of them, and

4

at the time Plaintiff BMA took the trades herein alleged, was ignorant of the manipulative and

5

fraudulent nature of conduct of the Count VIII Defendants, and each of them, and believed that

6

the market conditions were in fact dictated by market forces of supply and demand.

7

325.    Plaintiff BMA, at the time the alleged manipulative and fraudulent acts intended

8

to mislead and defraud were made by Count VIII Defendants, and each of them, and at the time

9

Plaintiff BMA took the actions herein alleged, was ignorant of secret intentions of Count VIII

10

Defendants, and each of them, to mislead and defraud Plaintiff BMA and other traders and

11

Plaintiff BMA could not, in the exercise of reasonable diligence, have discovered the secret

12

intentions of Count VIII Defendants, and each of them.

13

326.    Had Plaintiff BMA known the actual facts, Plaintiff BMA would not have taken

14

such alleged actions.

15

327.    If Plaintiff BMA had known of the actual intention of Count VIII Defendants, and

16

each of them, Plaintiff BMA would not have taken the alleged trades.  Plaintiff's BMA reliance

17

on fraudulent and manipulative conduct of Count VIII Defendants, and each of them, was

18

justified because Plaintiff BMA rightfully assumed that the market conditions of spot bitcoin and

19

bitcoin derivatives markets were due to the actual market forces of supply and demand.

20

328.    As a proximate result of fraud and deceit perpetrated by Count VIII Defendants,

21

and each of them, and based on the facts herein alleged, Plaintiff BMA has been damaged in the

22

sum of $13,729,755.60.

23

329.    In doing the wrongful acts herein alleged, Count VIII Defendants, and each of

24

them, acted with oppression, fraud, and malice, and Plaintiff BMA is entitled to punitive damages

25

in the sum of $150,000,000 pursuant to Cal. Civ. Code § 3294.

26

27

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 80 -       BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-cv-07245

**COUNT IX**
**(Civil Conspiracy)**

330.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-329 above as if fully set forth herein.

331.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count IX Defendants").

332.    At some time point during the Relevant Period, Count IX Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to defraud traders by perpetrating a manipulative, fraudulent and deceptive scheme to manipulate the prices of certain cryptocurrency derivatives, including, without limitation, bitcoin future contracts, bitcoin swaps, as well as the cash prices of cryptocurrencies, including, without limitation, cash bitcoin.

333.    Count IX Defendants, and each of them, did the acts and things hereinabove alleged pursuant to, and in furtherance of, the conspiracy and hereinabove alleged agreement.

334.    Count IX Defendants, and each of them, furthered the alleged conspiracy by cooperation with, or by lending aid and encouragement to, or ratification and adoption of the acts of other Count IX Defendants, and each of them.

335.    Count IX Defendants, and each of them, were fully aware that the other Defendants, and each of them, planned to perpetrate fraud and deceit upon Plaintiff BMA and other traders.

336.    Count IX Defendants, and each of them, agreed with the other Count IX Defendants, and each of them, and intended that the alleged fraud and deceit be committed upon Plaintiff BMA and other traders.

337.    As a proximate result of the fraud and deceit perpetrated by Count IX Defendants, and each of them, and according to the facts herein alleged, Plaintiff BMA has been damaged in the sum of $13,729,755.60.

338.    In doing the wrongful acts herein alleged, Count IX Defendants, and each of them, acted with oppression, fraud, and malice, and Plaintiff BMA is entitled to punitive damages in the sum of $150,000,000 pursuant to Cal. Civ. Code § 3294.

1

2

## COUNT X
### (Unfair Business Practices In Violation Of Cal. Bus. & Prof. Code § 17200 et seq.)

3      339.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-338 above as

4   if fully set forth herein.

5      340.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried,

6   Wang, Croghan, CWang, Wong and Ellison (the "Count X Defendants").

7      341.    By reason of Count X Defendants', and each of them, fraudulent, deceptive,

8   unfair, and other wrongful conduct as herein alleged, said Count X Defendants, and each of them,

9   have violated Cal. Bus. & Prof. Code § 17200 et seq. by consummating an unlawful, unfair, and

10  fraudulent business practice, designed to deprive Plaintiff BMA of its bitcoin holdings.

11     342.    "The 'unlawful' practices prohibited by Cal. Bus. & Prof. Code § 17200 et seq. are

12  any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

13  regulatory, or court-made. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, (C.D. Cal 2001) 178

14  F.Supp.2d 1099, 1120; *People v. McKale*, (1979) 25 Cal.3d 626.

15     343.    Count X Defendants', and each of them, unlawful practices for purposes of Cal.

16  Bus. & Prof. Code § 17200 et seq. include, without limitation, the hereinabove-alleged unlawful

17  acts perpetrated by Defendants, and each of them, which violate the following criminal statutes:

18     a.      18 U.S.C. § 1343 (wire fraud);

19     b.      18 U.S.C. § 1956(a) (money laundering);

20     c.      18 U.S.C. § 1957(a) (engaging in monetary transactions in property derived from

21  specified unlawful activity);

22     d.      18 U.S.C. § 1960(a) (conducting, controlling, managing, supervising, directing, or

23  owning all or part of an unlicensed money transmitting business);

24     e.      18 U.S.C. § 2314 (interstate transportation of stolen property);

25     f.      18 U.S.C. § 1962(c) (conducting or participating, directly or indirectly, in the

26  conduct of enterprise's affairs through a pattern of racketeering activity);

27     g.      18 U.S.C. § 1962(d) (conspiracy to conduct or participate, directly or indirectly, in

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 82 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

the conduct of enterprise's affairs through a pattern of racketeering activity);

h.      Cal. Fin. Code § 2152(b) (engaging in unlicensed money transmission business in California); and

i.       Cal. Corp. Code § 25540(a) (willful selling of unqualified securities in California).

344.    Count X Defendants', and each of them, 'unlawful' practices for purposes of Cal. Bus. & Prof. Code § 17200 et seq. further include, without limitation, the hereinabove-alleged unlawful acts perpetrated by Count X Defendants, and each of them, that violate the following civil statutes:

a.      7 U.S.C. § 9(1) (using a manipulative or deceptive device or contrivance in connection with bitcoin futures and cash bitcoin);

b.      7 U.S.C. § 9(3) (manipulation and attempted manipulation of bitcoin futures and cash bitcoin);

c.      7 U.S.C. § 13(a)(2) (manipulation and attempted manipulation of bitcoin futures and cash bitcoin);

d.      15 U.S.C. §§ 77e(a) and 77e(c) (unregistered offer or sale of securities in interstate commerce);

e.      15 U.S.C. § 78e (operating unregistered securities exchange);

f.      Cal. Corp. Code § 25110 (selling unqualified securities in California); and

g.      Cal. Corp. Code § 29536 (using a device, scheme, or artifice to defraud in connection with the purchase or sale of, the offer to sell, the offer to purchase, the offer to enter into, or the entry into, a commodity, commodity contract).

345.    Allegations of specific acts constituting fraud set forth in Paragraphs 128-140 above are incorporated as if fully set forth herein.  These acts constitute "fraudulent, deceptive, unfair" acts for purposes of Cal. Bus. & Prof. Code § 17200 et seq.

346.    Thus, by reason of the foregoing, Count X Defendants have violated Bus. & Prof. Code § 17200 et seq. by consummating an unlawful, unfair, deceptive and fraudulent business practice, designed to deprive Plaintiff BMA of its bitcoin holdings.

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 83 -     BMA LLC v. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

347.    By reason of the foregoing and as a proximate result of Count X Defendants', and each of them, violation of Cal. Bus. & Prof. Code § 17200 et seq. as herein alleged, Plaintiff BMA has been damaged in the sum of $13,729,755.60.

348.    Therefore, Plaintiff BMA is entitled to restitution from Count X Defendants, and each of them, in the sum of $13,729,755.60.

## COUNT XI
### (Unjust Enrichment (Restitution))

349.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-348 above as if fully set forth herein.

350.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count XI Defendants").

351.    As a result of the unlawful actions of c set forth hereinabove, Count XI Defendants, and each of them, have received a financial benefit at the expense of Plaintiff BMA.

352.    Count XI Defendants, and each of them, had knowledge of the alleged benefit.

353.    Count XI Defendants, and each of them, voluntarily accepted and retained the benefit obtained.

354.    The circumstances render Count XI Defendants' retention of the benefit inequitable unless Count XI Defendants, and each of them, pay to Plaintiff BMA the value of the benefit.

355.    Count XI Defendants, and each of them, have been unjustly enriched at the expense of Plaintiff BMA.

356.    Plaintiff BMA is entitled to damages as a result of Count XI Defendants', and each of them, unjust enrichment, including the disgorgement of all benefits unlawfully obtained by Count XI Defendants, and each of them, from Plaintiff BMA.

357.    As a result of the actions of Count XI Defendants, and each of them, set forth hereinabove, Defendants, and each of them, because unjustly enriched, and as a result thereof, Plaintiff BMA entitled to damages in the amount of $13,729,755.60, which constitutes a certain

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 84 -        BMA LLC V. FTX TRADING LTD ET AL.     CASE NO. 3:19-cv-07245

and concrete financial loss of the Plaintiff BMA factually (directly) and legally (proximately) caused by Count XI Defendants', and each of them, unlawful conduct.

## COUNT XII
### (Constructive Trust)

358.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-357 above as if fully set forth herein.

359.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count XII Defendants").

360.    By reason of the fraudulent and otherwise wrongful manner in which the Count XII Defendants, or any of them, obtained their alleged right, claim or interest in and to the property of Plaintiff BMA, Count XII Defendants and each of them, have no legal or equitable right, claim or interest therein, but, instead, Count XII Defendants, and each of them are involuntary trustees holding said property and profits therefrom in constructive trust for Plaintiff BMA with the duty to convey the same to Plaintiff BMA forthwith.

## COUNT XIII
### (Accounting)

361.    Plaintiff BMA incorporates the allegations set forth in Paragraphs 1-360 above as if fully set forth herein.

362.    This Count is against Defendants FTX, Alameda, Alameda BVI, Bankman-Fried, Wang, Croghan, CWang, Wong and Ellison (the "Count XIII Defendants").

363.    As a result of the actions of Count XIII Defendants, and each of them, set forth hereinabove, Count XIII Defendants, and each of them, have received money, which is due to Plaintiff BMA from Count XIII Defendants, and each of them, as previously alleged.

364.    The amount of money due from Count XIII Defendants to Plaintiff BMA is unknown to Plaintiff BMA and cannot be ascertained without an accounting of the receipts and disbursements of Count XIII Defendants, and each of them, in connection with the alleged unlawful market manipulation by Count XIII Defendants.

365.    Plaintiff BMA is informed and believes and thereon alleges that the amount due to

Plaintiff BMA exceeds $13,729,755.60.

366.    Plaintiff BMA has demanded an accounting of the aforementioned receipts and disbursements of Count XIII Defendants, and each of them, in connection with the alleged unlawful market manipulation and payment of the amount found due, but Count XIII Defendants, and each of them, have failed and refused, and continue to fail and refuse, to render such an accounting and to pay such sum.

**PRAYER**

By reason of the foregoing, Plaintiff BMA respectfully requests that this Court:

(a) enter a judgment that Defendants, and each of them, conducted or participated in the conduct of enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);

(b) enter a judgment that Defendants, and each of them, conspired to conduct or participate in the conduct of enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d);

(c) enter a judgment that Defendants, and each of them, have used deceptive or manipulative device in connection with cryptocurrencies futures contracts, cryptocurrencies swaps and cash cryptocurrencies in violation of 7 U.S.C. §§ 9(1);

(d) enter a judgment that Defendants, and each of them, have manipulated prices of cryptocurrencies futures contracts, cryptocurrencies swaps and cash cryptocurrencies in violation of 7 U.S.C. §§ 9(3) and 13(a)(2);

(e) enter a judgment that Defendants, and each of them, have aided and abetted manipulation of prices of cryptocurrencies futures contracts, cryptocurrencies swaps and cash cryptocurrencies by the other Defendants and third persons;

(f) enter a judgment that Defendants, and each of them, have acted negligently;

(g) enter a judgment that Defendants, and each of them, have perpetrated fraud upon Plaintiff BMA;

(h) enter a judgment that Defendants, and each of them, have conspired to perpetrate fraud

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)  - 86 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

upon Plaintiff BMA;

(i) enter a judgment that Defendants, and each of them, have engaged in unfair business practices in violation of Cal. Bus. & Prof. Code § 17200 et seq.;

(j) enter a judgment pursuant to Cal. Bus. & Prof. Code § 17203, that Defendants, and each of them, jointly and severally, be required to make restitution of any money or other property that may have been acquired by their violations of Cal. Bus. & Prof. Code § 17200 et seq. to Plaintiff BMA in an amount of no less than $13,729,755.60, or as proven at trial;

(k) enter a judgment pursuant to Cal. Bus. & Prof. Code § 17203, that Defendants, and each of them, be permanently enjoined from engaging in unfair competition as defined in Cal. Bus. & Prof. Code § 17200, including, but not limited to, the acts and practices alleged in this Complaint;

(l) preliminarily and permanently enjoin Defendants, and each of them, their officers, subsidiaries, affiliates distributors, agents, servants, employees, attorneys, and all persons in active concert with them, from any further violation of Federal and California laws;

(m) enter a judgment that Defendants, and each of them, because unjustly enriched at the expense of Plaintiff BMA;

(n) impose a constructive trust over Defendants, and each of them, for the benefit of Plaintiff BMA;

(o) order an accounting of the alleged receipts and disbursements of Defendants, and each of them, in connection with the alleged unlawful market manipulation and payment of the amount found due to Plaintiff BMA;

(p) enter judgment that Defendants, and each of them, acted with malice, fraud and oppression;

(q) award compensatory damages to Plaintiff BMA and against all Defendants, and each of them, jointly and severally, in the amount of $13,729,755.60;

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL) - 87 -    BMA LLC V. FTX TRADING LTD ET AL.    CASE NO. 3:19-CV-07245

1

2

(r)  award treble damages to Plaintiff BMA and against all Defendants, and each of them,

jointly and severally, in the amount of $41,189,266.80 pursuant to 18 U.S.C. §

3

4

1964(c);

(s)  award reasonable attorney fees, costs and prejudgment interest to Plaintiff BMA and

5

6

against all Defendants, and each of them, jointly and severally;

(t)  award Plaintiff BMA exemplary and punitive damages, pursuant to Cal. Civ. Code §

7

8

3294, against all Defendants, and each of them, jointly and severally, in the amount of

$150,000,000; and

9

10

(u)  award Plaintiff BMA such other relief as this Court deems just and proper.

11

12

Dated:  November 4, 2019                              Respectfully submitted,

By:  /s/ Pavel I. Pogodin
              Pavel I. Pogodin

13

14

15

16

17

18

19

20

CONSENSUS LAW
Pavel I. Pogodin, Ph.D., Esq.
5245 Av. Isla Verde
Suite 302
Carolina, PR 00979
United States of America
Telephone: (650) 469-3750
Facsimile: (650) 472-8961
Email: pp@consensuslaw.io
Attorneys for Plaintiff
Bitcoin Manipulation Abatement LLC

21

22

23

24

25

26

27

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)- 88 -   BMA LLC V. FTX TRADING LTD ET AL.   CASE NO. 3:19-CV-07245

1

## **DEMAND FOR JURY TRIAL**

2

3   Pursuant to Fed. R. Civ. P. 38, Plaintiff BMA demands trial by jury of all issues triable to a jury.

4

Dated:  November 4, 2019                              Respectfully submitted,

5

By: _/s/ Pavel I. Pogodin_____

6                                                              Pavel I. Pogodin

7                                                    CONSENSUS LAW

8                                                    Pavel I. Pogodin, Ph.D., Esq.
                                                     5245 Av. Isla Verde

9                                                    Suite 302
                                                     Carolina, PR 00979

10                                                   United States of America
                                                     Telephone: (650) 469-3750

11                                                   Facsimile: (650) 472-8961
                                                     Email: pp@consensuslaw.io

12                                                   Attorneys for Plaintiff

13                                                   Bitcoin Manipulation Abatement LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENSUS LAW
CRYPTOCURRENCY
ATTORNEYS

AMEND. COMPL. FOR VIOLATION OF RICO (DEMAND FOR JURY TRIAL)   - 89 -      BMA LLC V. FTX TRADING LTD ET AL.     CASE NO.  3:19-CV-07245