1  MICHAEL S. DICKE (CSB No. 158187)
   mdicke@fenwick.com
2  CATHERINE KEVANE (CSB No. 215501)
   ckevane@fenwick.com
3  CASEY O'NEILL (CSB No. 264406)
   coneill@fenwick.com
4  FIONA Y. TANG (CSB No. 298101)
   ftang@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA  94104
   Telephone:    415.875.2300
7  Facsimile:    415.281.1350

8  Attorneys for Defendant Alameda Research LLC

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13

14  BITCOIN MANIPULATION ABATEMENT        Case No.: 4:19-cv-07245-HSG
    LLC,
15                                         **ALAMEDA RESEARCH LLC'S
                 Plaintiff,                 NOTICE OF MOTION AND MOTION
16                                          TO DISMISS BITCOIN
         V.                                 MANIPULATION ABATEMENT,
17                                          LLC'S AMENDED COMPLAINT**
    FTX TRADING LTD, ALAMEDA RESEARCH
18  LLC, ALAMEDA RESEARCH LTD (BVI),       Date:    February 13, 2020
    SAMUEL BANKMAN-FRIED, GARY WANG,       Time:    2:00 p.m.
19  ANDY CROGHAN, CONSTANCE WANG,          Dept:    Courtroom 2 – 4th Floor
    DARREN WONG AND CAROLINE ELLISON,      Judge:   Hon. Haywood S. Gilliam, Jr.
20
                 Defendants.
21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

3

**PLEASE TAKE NOTICE** that at 2:00 p.m. on February 13, 2020, or as soon thereafter

4

as the matter may be heard, before the Honorable Haywood S. Gilliam, United States District

5

Judge for the Northern District of California, Defendant Alameda Research LLC will and hereby

6

does move for dismissal of this action pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b),

7

12(b)(1), and 12(b)(6).

8

This Motion is based on this Notice of Motion and Motion, the accompanying

9

Memorandum in Support of Motion to Dismiss, the accompanying Request for Judicial Notice

10

and the Declaration of Fiona Y. Tang in support thereof and exhibits attached thereto, the papers

11

on file in this matter, and the arguments of counsel.

12

13

FENWICK & WEST LLP

14

15

By:   /s/ Michael S. Dicke

Michael S. Dicke

16

17

Attorneys for Defendant Alameda Research, LLC

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    STATEMENT OF FACTS ...................................................................................... 2

    A.     Plaintiff .......................................................................................................... 2

    B.     Defendants ...................................................................................................... 2

    C.     Procedural History and Claims Asserted ....................................................... 3

III.   PLAINTIFF IS REQUIRED TO MEET STRICT PLEADING STANDARDS ............... 3

    A.     Legal Standards Under Rule 12(b)(6) and Rule 8(a)(2) ................................. 3

    B.     The AC is Subject to the Heightened Pleading Standards of Rule 9(b) ......... 4

IV.    ARGUMENT .......................................................................................................... 4

    A.     Plaintiff Fails to Allege Well-Pleaded Standing ........................................... 4

    B.     The AC's Failure to Plead Facts Specific to Each Defendant Independently
        Warrants Dismissal ........................................................................................ 6

    C.     Plaintiff Fails to Adequately Allege Any Federal or State Claim .................. 7

        1.     Plaintiff's Civil RICO Claims Fail (Counts One and Two) ................. 7

            a.     Plaintiff Fails to Plead Standing Under RICO ......................... 7

            b.     Plaintiff Fails to Plead "Racketeering," for Lack of Any
               Well-Pleaded Predicate Act ...................................................... 8

               (1)     Market Manipulation Is Not a RICO Predicate .......... 8

               (2)     Unlicensed Money Transmission ................................ 8

               (3)     Money Laundering & Interstate Transportation of
                    Stolen Property ........................................................... 9

               (4)     Wire Fraud ................................................................. 10

        2.     Plaintiff's Commodity Exchange Act Claims Fail ................................ 11

            a.     Plaintiff Does Not Have Standing to Assert a Private Right
               of Action ................................................................................. 11

            b.     Manipulative Device or Contrivance (Count Three) .............. 12

            c.     Market Manipulation (Count Four) ....................................... 13

            d.     Aiding and Abetting (Count Five) .......................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

3.      Plaintiff Fails to Adequately Allege Any Plausible State Law Claim ...... 15

a.     Plaintiff Does Not Properly Allege a California Commodities Fraud Claim (Count Six) ........................................ 16

b.     Plaintiff's Negligence Claim Must Be Dismissed (Count Seven)............................................................................... 16

c.     Plaintiff's Common Law Fraud Claim Fails (Count Eight).......... 17

d.     Plaintiff's Civil Conspiracy Claim Fails (Count Nine)................ 18

e.     Plaintiff's Unfair Business Practices Claim Fails (Count Ten) ...................................................................................... 19

f.     Plaintiff's Request for Equitable Remedies Must Be Denied (Counts Eleven, Twelve, and Thirteen) ....................................... 20

V.     CONCLUSION ........................................................................................................... 21

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**C**ASES

4

*Alfus v. Pyramid Tech. Corp.*,

5
    745 F. Supp. 1511 (N.D. Cal. 1990) ...............................................................10

6
*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) .......................................................................................18

7
*Ashcroft v. Iqbal*,

8
    556 U.S. 662 (2009) .................................................................................. *passim*

9
*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015)............................................................................20

10
*Bates v. United Parcel Service, Inc.*,

11
    511 F.3d 974 (9th Cir. 2007)..............................................................................4

12
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................3, 4

13
*Berk v. Coinbase, Inc.*,

14
    2018 WL 5292244 (N.D. Cal. Oct. 23, 2018) ..................................................12

15
*Berk v. Coinbase, Inc.*,
    2019 WL 3561926 (N.D. Cal. Aug. 6, 2019)....................................................18

16
*Bonner v. Select Portfolio Servicing, Inc.*,

17
    2010 WL 2925172 (N.D. Cal. July 26, 2010) ..................................................19

18
*Bowen v. Ziasun Techs, Inc.*,
    116 Cal. App. 4th 777 (2004) ..........................................................................20

19
*Braman v. CME Grp., Inc.*,

20
    149 F. Supp. 3d 874 (N.D. Ill. 2015) .........................................................14, 15

21
*Cansino v. Bank of America*,
    224 Cal. App. 4th 1462 (2014) ........................................................................18

22
*Canyon Cty. v. Syngenta Seeds, Inc.*,

23
    519 F.3d 969 (9th Cir. 2008)..............................................................................8

24
*Cetacean Comty. v. Bush*,
    386 F.3d 1169 (9th Cir. 2004)............................................................................5

25
*City Solutions Inc. v. Clear Channel Commc'ns, Inc.*,

26
    365 F.3d 835 (9th Cir. 2004)............................................................................18

27
*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011) .............................................................19

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Cobb v. Adams*,
  2014 WL 2212162 (N.D. Cal. May 28, 2014) ...........................................................19

*Conroy v. Regents of University of Cal.*,
  203 P.3d 1127 (Cal. 2009) ......................................................................................16

*Damato v. Hermanson*,
  153 F.3d 464 (7th Cir. 1998).................................................................................15

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012)................................................................................19

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011)....................................................................................6

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)..................................................................................................7

*Duggal v. G.E. Capital Commc'ns Services, Inc.*,
  81 Cal. App. 4th 81 (2000) ....................................................................................20

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................13

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016)................................................................................20

*Faunce v. Cate*,
  222 Cal. App. 4th 166 (2013) ................................................................................18

*Gonzalez v. Planned Parenthood of Los Angeles*,
  759 F.3d 1112 (9th Cir. 2014)..................................................................................4

*Haley v. Macy's, Inc.*,
  263 F. Supp. 3d 819 (N.D. Cal. 2017) ...................................................................18

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
  187 F.3d 941 (8th Cir. 1999)....................................................................................8

*Harry v. KCG Americas LLC*,
  2018 WL 1184848 (N.D. Cal. Mar. 7, 2018)...........................................................5

*Harry v. Total Gas & Power N. Am., Inc.*,
  889 F.3d 104 (2d Cir. 2018)...................................................................................15

*Hill v. Opus Corp.*,
  841 F. Supp. 2d 1070 (C.D. Cal. 2011) .................................................................11

*Holmes v. Securities Investor Protection Corp.*,
  503 U.S. 258 (1992)..................................................................................................8

*Hutchins v. Nationstar Mortgage LLC*,
  2017 WL 2021363 (N.D. Cal. May 12, 2017) ........................................................20

FENWICK & WEST LLP
ATTORNEYS AT LAW

*In re Amaranth Nat. Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................................14

*In re Amaranth Nat. Gas Commodities Litig.*,
  730 F.3d 170 (2d Cir. 2013) .......................................................................................14

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................................................................20

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
  390 F. Supp. 3d 916 (N.D. Ill. 2019) ........................................................................13

*In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*,
  2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ......................................................14, 15

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) ....................................................................20

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
  60 F. Supp. 3d 914 (N.D. Ill. 2014), *aff'd*, 801 F.3d 758 (7th Cir. 2015)...............12

*In re iPhone Application Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................................6

*In re JMC Telecom LLC*,
  416 B.R. 738 (C.D. Cal. 2009) ..................................................................................20

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
  213 F. Supp. 3d 530 (S.D.N.Y. 2016) .......................................................................12

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
  332 F. Supp. 3d 885 (S.D.N.Y. 2018) .......................................................................15

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979) ...........................................................................................16, 17

*Jacob v. Aurora Loan Services*,
  2010 WL 2673128 (N.D. Cal. July 2, 2010) ..............................................................19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)................................................................................4, 17

*Keirsey v. eBay, Inc.*,
  2012 WL 12920765 (N.D. Cal. Aug. 6, 2012)...........................................................20

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) ...............................................................................18, 19

*Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*,
  464 F.3d 255 (2d Cir. 2006)......................................................................................12

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)........................................................................................9

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005)................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................5

*Marble Bridge Funding Grp. v. Euler Hermes Am. Credit Indemnity Co.*,
    2015 WL 971761 (N.D. Cal. Mar. 2, 2015)................................................17, 18

*McKinney v. Google, Inc.*,
    2011 WL 3862120 (N.D. Cal. Aug. 30, 2011)................................................17

*Mehr v. Féderation Internationale de Football Ass'n*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015)................................................5, 6

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*,
    6 Cal. App. 4th 603 (1992)................................................................................18

*Mohebbi v. Khazen*,
    50 F. Supp. 3d 1234 (N.D. Cal. 2014)................................................20

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)................................................................................5

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007)................................................................................4

*Ott v. Alfa-Laval Agri, Inc.*,
    31 Cal. App. 4th 1439 (1995)................................................16, 17

*People v. Martinez*,
    10 Cal. App. 5th 686 (2017)................................................................................16

*Pratap v. Wells Fargo Bank, N.A.*,
    63 F. Supp. 3d 1101 (N.D. Cal. 2014)................................................19

*Schick v. Lerner*,
    193 Cal. App. 3d 1321 (1987)................................................................................19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986)................................................................................11

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)................................................................................7, 8

*Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*,
    549 U.S. 422 (2007)................................................................................21

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996)................................................................................3

*Smith v. United States*,
    568 U.S. 106 (2013)................................................................................7

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Spinale v. United States*,
    2004 WL 50873 (S.D.N.Y. Jan. 9, 2004) ...................................................................8

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931 (N.D. Cal. June 5, 2009) ...........................................................19

*Sullivan v. Barclays PLC*,
    2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ...........................................................14

*Sumotext Corp. v. Zoove, Inc.*,
    2017 WL 2774382 (N.D. Cal. June 26, 2017) ...........................................................6

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)..............................................................................4, 6

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
    2 Cal. App. 4th 153 (1991) ....................................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...............................................................................................13

*U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC*,
    2012 WL 2395259 (N.D. Cal. June 25, 2012) .........................................................12

*Union Bank v. Superior Court*,
    31 Cal. App. 4th 573 (1995) ..................................................................................20

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...................................................................................................7

*United States v. Marbella*,
    73 F.3d 1508 (9th Cir. 1996).................................................................................10

*United States v. McNeil*,
    320 F.3d 1034 (9th Cir. 2003)...............................................................................11

*United States v. Reliant Energy Servs., Inc.*,
    420 F. Supp. 2d 1043 (N.D. Cal. 2006) ...............................................................14

*United States v. Rogers*,
    321 F.3d 1226 (9th Cir. 2003)...............................................................................10

*United States v. Taylor*,
    802 F.2d 1108 (9th Cir. 1986)...............................................................................10

*Upham v. Fox*,
    2014 WL 1379607 (N.D. Cal. Apr. 8, 2014) ........................................................20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...........................................................................4, 11

*Wilber v. Bank of Am., N.A.*,
    2015 WL 4040635 (C.D. Cal. June 29, 2015) ......................................................15

1

STATUTES

2

18 U.S.C.

3    § 1343................................................................................................................................10
     § 1956(a)...........................................................................................................................10
     § 1957.............................................................................................................................9, 10
4    § 1960(a).........................................................................................................................8, 9
     § 1961(1)..........................................................................................................................7, 8
5    § 1962(c)..........................................................................................................................3, 7
     § 1962(d).........................................................................................................................3, 7
6    § 2314.............................................................................................................................9, 10

7    Cal. Corp. Code §§ 29536, 29537(c), (d)...........................................................................3, 16

8    California Business and Professions Code § 17200........................................................3, 19, 20

9    Commodity Exchange Act ...................................................................................... *passim*

10   RICO ....................................................................................................................... *passim*

11   Securities Exchange Act § 10(b)......................................................................................13

12   **OTHER AUTHORITIES**

13   Rule 8(a)(2) ..........................................................................................................................3, 6

14   Rule 9(b) .................................................................................................................. *passim*

15   Rule 12(b)(1).........................................................................................................................5

16   Rule 12(b)(6).........................................................................................................................3

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

2

**I.     PRELIMINARY STATEMENT**

3          Despite its considerable length and third attempt at pleading, plaintiff's amended and

4     corrected complaint (the "AC" or "Amended Complaint") does not contain a single factual

5     allegation to substantiate any of its claims. Plaintiff contends that from November 20, 2017

6     onward, defendants ran an illegal enterprise that manipulated bitcoin and other digital currency

7     spot and futures prices on some thirty-five different exchanges, and that plaintiff was damaged as

8     a result. AC ¶¶ 2-3. But plaintiff does not provide the fundamental who, what, when, and where

9     to support its manipulation contention, or any other of its claims, much less plead particularized

10    facts satisfying the heightened standards required under Rule 9(b).[1]

11         Although these facts are entirely within its possession, plaintiff does not plead (1) when it

12    traded, (2) how much it traded, (3) on what exchange it traded, (4) who was the counterparty for

13    any of its trades, or (5) what specific trading losses it purportedly suffered. This failure dooms all

14    of plaintiff's claims. Similarly, plaintiff fails to allege even basic facts about when Alameda

15    supposedly traded, where Alameda traded, or how any such trades illegally manipulated

16    cryptocurrency markets. Equally fatal, the AC does not plead facts to establish any causal nexus

17    between specific alleged manipulative or wrongful acts by Alameda and any purported actual

18    injury to plaintiff. Nor can it. Plaintiff was not formed until March 2019, years *after* much of the

19    alleged wrongdoing. Absent these facts, plaintiff cannot establish standing or plead the requisite

20    elements of any of the claims in the AC.

21         The Amended Complaint should also be dismissed for failure to allege specific facts as to

22    each defendant. Plaintiff makes no effort to distinguish among the nine defendants named in this

23    action, but instead engages in impermissible group pleading. Even if plaintiff could overcome

24    these deficiencies—and it cannot—each claim must be dismissed for failure to put forth the

25    requisite facts to meet each element of the respective asserted causes of action in the Amended

26    Complaint.

27
───────────────

[1] Because Counts 1 through 10 of the AC sound in fraud, and Counts 11 through 13 are likewise
28    based on the aforementioned claims, Plaintiff must satisfy the rigorous pleading standards of
Federal Rule of Civil Procedure 9(b) for all claims alleged.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    For these reasons, and the additional reasons stated below, the Amended Complaint

2  should be dismissed with prejudice.

3  **II.    STATEMENT OF FACTS[2]**

4    **A.    Plaintiff**

5    Plaintiff Bitcoin Manipulation Abatement LLC ("BMA") is a Puerto Rican limited

6  liability company ("LLC") formed on or about March 17, 2019 under the name "TransPacific IP

7  Group LLC," and renamed on November 2, 2019. AC ¶ 11; Declaration of Fiona Y. Tang in

8  Support of Alameda's Request for Judicial Notice ("Tang Decl.") ¶¶ 2, 3, Exs. A, B.

9    The AC offers a single, perfunctory statement (buried on page seventy-four (74) of the

10  AC) that "Plaintiff BMA traded the spot bitcoin and bitcoin derivatives" (AC ¶ 284), but is silent

11  as to foundational facts uniquely in plaintiff's knowledge, including what trades BMA engaged in

12  (if any), the types of cryptocurrency products BMA traded, the exchanges where BMA traded,

13  how any alleged trades by BMA relate to any defendants, or what supposed "trading losses"

14  BMA suffered. *See id.* ¶¶ 103, 104.

15    **B.    Defendants**

16    Defendant Alameda Research LLC ("Alameda") is a Delaware limited liability company

17  with an office in Berkeley, California. *Id.* ¶ 12. Alameda is the only defendant that has been

18  served in this action. *See* Dkt. No. 16.

19    Defendant Sam Bankman-Fried is a U.S. national who currently is domiciled in the

20  People's Republic of China, in Hong Kong. Mr. Bankman-Fried founded Alameda and serves as

21  its chief executive officer ("CEO"). AC ¶ 12.

22    Alameda Research Ltd. (BVI) ("Alameda BVI") is an entity incorporated in the British

23  Virgin Islands and domiciled outside the United States. FTX Trading Ltd. ("FTX") is

24  incorporated in Antigua and Barbuda with its registered office in Hong Kong. FTX operates a

25  cryptocurrency futures exchange for non-U.S. residents only. *See id.* ¶¶ 14-15. Mr. Bankman-

26  Fried founded FTX, and currently serves as its CEO. *Id.* ¶ 15.

27

28  ───────────────
[2] Factual statements in the AC are accepted as true for purposes of this motion only.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Gary Wang, Andy Croghan, Constance Wang, Darren Wong, and Caroline Ellison (the

2    "Employee Defendants," and collectively with Bankman-Fried, the "Individual Defendants") are

3    all domiciled in the People's Republic of China, in Hong Kong. *See id.* ¶ 39. The AC names the

4    Employee Defendants in their individual capacities based on alleged, unspecified roles with either

5    Alameda or FTX. *See id.* ¶¶ 17-24.

6    ### C.    Procedural History and Claims Asserted

7    Plaintiff filed its original complaint on November 2, 2019. Dkt. No. 1. Two days later, on

8    November 4, plaintiff amended its complaint (Dkt. No. 3) and, four days later, filed a "corrected"

9    amended complaint on November 8 (Dkt. No. 15). Alameda was served on November 8, 2019,

10   and remains the only defendant served to date. *See* Dkt. No. 16.

11   The AC asserts thirteen claims against all defendants: **(1)** a civil RICO violation under 18

12   U.S.C. § 1962(c); **(2)** conspiracy to commit a civil RICO violation under 18 U.S.C. § 1962(d); **(3)**

13   a manipulative device claim under the Commodity Exchange Act ("CEA"), 7 U.S.C. § 9(1); **(4)**

14   market manipulation and attempted market manipulation under the CEA, 7 U.S.C. §§ 9(3),

15   13(a)(2); **(5)** aiding and abetting market manipulation under the CEA, 7 U.S.C. § 25(a)(1); **(6)**

16   commodities fraud under California Corporations Code § 29536; **(7)** negligence; **(8)** fraud; **(9)**

17   civil conspiracy; **(10)** unfair business practices under California Business and Professions Code §

18   17200; **(11)** unjust enrichment; **(12)** constructive trust; and **(13)** an accounting.

19   ## III.   PLAINTIFF IS REQUIRED TO MEET STRICT PLEADING STANDARDS

20   ### A.    Legal Standards Under Rule 12(b)(6) and Rule 8(a)(2)

21   Dismissal is appropriate under Rule 12(b)(6) where a plaintiff fails to assert a cognizable

22   legal theory or to allege sufficient facts under a cognizable legal theory. *See, e.g., SmileCare*

23   *Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782-83 (9th Cir. 1996). The

24   complaint must include sufficient facts from which an inference of wrongdoing may be drawn—

25   facts that suggest the right to relief is more than conceivable, but also plausible on its face. *Bell*

26   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must provide more than "labels and

27   conclusions, and a formulaic recitation of the elements of a cause of action," but rather, must

28   allege facts that, if true, raise the right to relief "above the speculative level." *Id.* at 555; *Ashcroft*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  *v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint is defective if "it tenders 'naked assertion[s]'

2  devoid of 'further factual enhancement'") (citation omitted). Courts need not accept as true

3  conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Gonzalez v.*

4  *Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

5  **B.     The AC is Subject to the Heightened Pleading Standards of Rule 9(b)**

6  When a party pleads fraud, it is subject to the heightened pleading requirements of Rule

7  9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances

8  constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Rule 9(b) demands that the

9  circumstances constituting any alleged fraud be pleaded "specific[ally] enough to give defendants

10  notice of the particular misconduct ... so that they can defend against the charge and not just deny

11  that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

12  2009) (internal quotation marks and citation omitted); *see also Swartz v. KPMG LLP*, 476 F.3d

13  756, 764-65 (9th Cir. 2007) (Rule 9(b) "require[s] plaintiffs to differentiate their allegations ...

14  and inform each defendant separately of the allegations surrounding his alleged participation in

15  the fraud."). *See also Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) ("[T]he pleader

16  must state the time, place, and specific content of the false representations as well as the identities

17  of the parties to the misrepresentation.") (citation omitted).

18  Significantly, Rule 9(b)'s particularity requirement applies not only where a complaint

19  specifically alleges fraud as an essential element of a claim, but also where the overarching theory

20  of the case is "grounded in fraud" or "sound[s] in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317

21  F.3d 1097, 1103-04 (9th Cir. 2003). Here, the gravamen of the AC is purportedly deceptive

22  trading tactics and, accordingly, the rigor of Rule 9(b) applies to all of the claims asserted.

23  **IV.     ARGUMENT**

24  **A.     Plaintiff Fails to Allege Well-Pleaded Standing**

25  "Standing is a threshold matter central to [the Court's] subject matter jurisdiction." *Bates*

26  *v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). To establish standing, plaintiff

27  bears the burden of alleging: (1) an injury in fact; (2) that the injury is fairly traceable to the

28  challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

2   (1992). The injury must be "concrete, particularized, and actual or imminent." *Monsanto Co. v.*

3   *Geertson Seed Farms*, 561 U.S. 139, 149 (2010). A failure to plead standing warrants dismissal

4   under Rule 12(b)(1). *Cetacean Comty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Here,

5   plaintiff has failed to allege standing as to any cause of action.

6       *First*, the AC fails to put forth a single well-pleaded fact to allege any injury or loss.

7   Instead, plaintiff offers boilerplate allegations that it incurred "trading losses," but offers no facts

8   to support that claim. *See, e.g.*, AC ¶¶ 103, 104, 113, 114.[3] Although these facts are presumably

9   within plaintiff's knowledge, the AC never alleges (1) the amount of any supposed loss; (2) the

10   date of any trade; (3) the exchange the trade was made on; (4) the cryptocurrency products traded;

11   (5) the number of cryptocurrency products traded; or (6) the prices at which those products were

12   purchased or sold. In short, plaintiff does not allege a single fact to establish harm or standing.

13   *Iqbal*, 556 U.S. at 678 ("[B]are assertions … are conclusory and not entitled to be assumed

14   true."); *Mehr v. Féderation Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1057 (N.D.

15   Cal. 2015) ("vague and conclusory allegations" of harm are insufficient to establish Article III

16   standing).

17       *Second*, the AC is likewise devoid of a single fact establishing a causal nexus between a

18   specific defendant's trading activity and any alleged losses.[4] Indeed, the AC does not identify a

19   single trade by any defendants, much less link defendants' actions to any supposed loss. *Lujan*,

20   504 U.S. at 560-61 ("[T]here must be a causal connection between the injury and the conduct

21   complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the

22   defendant, and not ... th[e] result [of] the independent action of some third party not before the

---

[3] In places, the AC vaguely references alleged harm or injury to "other traders" (*see, e.g.*, AC ¶¶ 307, 322- 23), but plaintiff cannot rely on alleged harm to others to satisfy standing. *See Harry v. KCG Americas LLC*, 2018 WL 1184848, at *4 (N.D. Cal. Mar. 7, 2018) (plaintiff "failed to plead facts showing that he has the type of injury in fact required by Article III—that is, one that actually exists and that affects him in a personal and individual way").

[4] In two instances, plaintiff contends it "sustained a loss of at least 10 bitcoins," or a total of approximately $160,000—twenty bitcoins at an approximate market value of $8,000 per bitcoin. AC ¶¶ 267-68. But plaintiff never pleads any of the requisite who, what, when or where to substantiate those claims, and therefore fails to allege facts establishing a causal nexus between the alleged loss and the actions of any defendant. Moreover, those allegations are directly at adds with plaintiff's claim that it suffered aggregate losses of $13,729,755.60. *Id.* ¶¶ 266, 269-70.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  court.'") (citation omitted); *Mehr*, 115 F. Supp. 3d at 1058 (complaint "jurisdictionally defective"

2  where "plaintiffs have alleged no facts showing any causal connection between the conduct of

3  any specific defendant and any alleged injury to a particular plaintiff").

4       For these reasons alone, the AC must be dismissed.

5  **B.    The AC's Failure to Plead Facts Specific to Each Defendant Independently Warrants Dismissal**

6       The AC must also be dismissed on the independent ground that plaintiff fails to allege

7  specific facts as to each defendant. A complaint must allege facts that create a reasonable

8  inference that each defendant "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

9  Courts in this district have repeatedly held that allegations made against defendants collectively

10  are insufficient to meet the requirements of Rule 9(b) and Rule 8(a)(2). *See, e.g.*, *Sumotext Corp.*

11  *v. Zoove, Inc.*, 2017 WL 2774382, at *10 (N.D. Cal. June 26, 2017) ("[a]llegations which lump

12  multiple defendants together are insufficient to put any one defendant on notice of the conduct

13  upon which the claims against it are based"); *In re iPhone Application Litig.*, 2011 WL 4403963,

14  at *8 (N.D. Cal. Sept. 20, 2011) (complaint "lump[ed]" together defendants, making "it

15  exceedingly difficult, if not impossible, for individual Defendants to respond to [the]

16  allegations"). Rather, a pleading must "differentiate ... and inform each defendant separately of

17  the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65

18  (complaint failed under Rule 9(b) because it was "shot through with general allegations that the

19  'defendants' engaged in fraudulent conduct"); *see also Destfino v. Reiswig*, 630 F.3d 952, 958

20  (9th Cir. 2011) (dismissal appropriate for failure to plead fraud with particularity where complaint

21  grouped multiple defendants together and alleged that "everyone did everything").

22       Here, plaintiff makes no effort to plead facts specific to each of the nine defendants, but

23  combines and conflates all "Defendants" generally in its conclusory allegations. *See, e.g.*, AC

24  ¶¶ 7 ("Defendants … have been motivated by personal greed and acted with malice, fraud and

25  oppression"); 332 ("Defendants … conspired and agreed among themselves to defraud traders").

26  As a result, the AC fails to plead basic facts as to the alleged conduct of Alameda, or any

27  defendant. Instead, plaintiff tries to end-run the prohibition on group pleading by alleging that the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   defendants operated as a "single Enterprise." AC ¶ 203. But the law is clear that separate

2   corporate entities cannot be held liable for the alleged wrongs of other entities, even where those

3   entities may be related. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (noting the

4   general principle of corporate law deeply "'ingrained in our economic and legal systems' that a

5   parent corporation … is not liable for the acts of its subsidiaries"); *Dole Food Co. v. Patrickson*,

6   538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and

7   its shareholders are distinct entities.").

8       Plaintiff's failure to put forth even the most basic factual allegations as to Alameda—or

9   any defendant—and its reliance on impermissible group pleading mandates dismissal.

10   **C.    Plaintiff Fails to Adequately Allege Any Federal or State Claim**

11       Given the above two grounds for dismissal—standing and group pleading—the Court

12   need not go further to address individual claims asserted. Should the Court nevertheless choose to

13   do so, further scrutiny of the AC makes clear that each of plaintiff's claims should be dismissed.

14   **1.    Plaintiff's Civil RICO Claims Fail (Counts One and Two)**

15       Plaintiff first asserts RICO claims against all defendants under 18 U.S.C. § 1962(c) and

16   (d). AC ¶¶ 230 *et seq*. To plead a primary violation of RICO under Section 1962(c), plaintiff must

17   allege the: (1) conduct; (2) of an "enterprise;" (3) through a "pattern;" (4) of "racketeering"

18   activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Living Designs, Inc. v. E.I.*

19   *DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *see also* 18 U.S.C. § 1961(1)

20   (defining "racketeering activity" to include various criminal law predicates). To plead conspiracy

21   under RICO's Section 1962(d), plaintiff must plead that: (1) two or more people agreed to

22   commit a RICO predicate act; and (2) a given defendant knowingly and willfully participated in

23   the agreement. *Smith v. United States*, 568 U.S. 106, 110 (2013). Plaintiff has not met these

24   pleading requirements.

25   **a.    Plaintiff Fails to Plead Standing Under RICO**

26       As discussed above, plaintiff has failed to plead even the most basic elements to establish

27   injury, much less injury related to any action by Alameda or any other defendant. For that reason

28   alone, the RICO claims fail. *See Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 953

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  (8th Cir. 1999) ("The class of persons who may sue under RICO is limited to those whose injuries

2  were directly caused by RICO violations."); *Holmes v. Securities Investor Protection Corp.*, 503

3  U.S. 258, 265-66 (1992) (injured party must plead that injury was "by reason of" a RICO

4  predicate act violation).

5         **b.      Plaintiff Fails to Plead "Racketeering," for Lack of Any Well-
                   Pleaded Predicate Act**
6

7         The RICO claims also fail because plaintiff has failed to allege a viable RICO predicate,

8  as is required to plead "racketeering," or a causal nexus between that predicate and any injury.

9  *Sedima*, 473 U.S. at 497; *see also Spinale v. United States*, 2004 WL 50873, at *15 (S.D.N.Y.

10  Jan. 9, 2004) (RICO plaintiff must demonstrate a direct relationship between the plaintiff's injury

11  and the defendant's conduct).

12         **(1)      Market Manipulation Is Not a RICO Predicate**

13         Plaintiff's RICO claim is based on supposed market manipulation, but the law is clear that

14  market manipulation under the CEA is not a statutorily permitted RICO predicate. *See* 18 U.S.C.

15  § 1961(1). Recognizing that obstacle, plaintiff asserts five other supposed predicates—unlicensed

16  money transmission, money laundering conspiracy, money laundering, interstate transportation of

17  stolen property, and wire fraud. Putting aside that plaintiff fails to put forth any facts to support

18  these supposed predicate acts, none of those five predicates is alleged to have caused plaintiff's

19  trading losses. Manipulation is. That disconnect between the predicates and the purported injury

20  defeats any RICO claim. *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 980 (9th Cir. 2008)

21  (dismissal warranted where RICO predicate conduct not alleged to have caused plaintiff's injury).

22         Even if plaintiff could allege an injury directly related to one of those five supposed

23  predicates—and it cannot—the claim would still fail because plaintiff has not adequately pleaded

24  the underlying predicate act.

25         **(2)      Unlicensed Money Transmission**

26         To establish that a defendant operated as an unlicensed money transmitter under Section

27  1960(a), plaintiff must allege facts to show that the defendant (1) knowingly, (2) conducted,

28  controlled, managed, supervised, directed, or owned, (3) all or part of a money transmitting

FENWICK & WEST LLP
ATTORNEYS AT LAW

business, (4) that is unlicensed. 18 U.S.C. § 1960(a). But the AC does not contain a single allegation that Alameda knowingly engaged in an unlicensed money transmission business. Instead, plaintiff impermissibly (and unsuccessfully) attempts to disregard the corporate form (*See* Section IV.B, *supra* at 6-7.). But any activity akin to money transmission on FTX's offshore exchange is not attributable to Alameda. Nor can the incorrect assertion that over-the-counter trade clearing occurs in Berkeley, California stand in for the requisite facts required under the law. *See, e.g.*, AC ¶ 98.

Plaintiff's conclusory statements about unlicensed money transmission do not satisfy the onerous procedural and substantive requirements for pleading such a claim. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (finding conclusory allegations insufficient to defeat a motion to dismiss).

### (3)     Money Laundering & Interstate Transportation of Stolen Property

As other possible predicates, plaintiff relies on supposed money laundering conspiracy and individual acts of laundering under 18 U.S.C. §§ 1956(a) and 1957, respectively, and on interstate transportation of stolen property under 18 U.S.C. § 2314. In support of these accusations, plaintiff criticizes FTX's know your customer ("KYC") controls (AC ¶¶ 82-87), but the Amended Complaint fails to explain in any supported way how FTX's offshore (and appropriately risk-based) KYC relates in any way to *Alameda*, a separate entity distinct from FTX.

Additionally, plaintiff's logic in asserting money laundering and interstate transportation of stolen property is entirely circular. For these predicates to have any merit, plaintiff's market manipulation allegations would need to have merit. They do not. *See* Section IV.C.2, *infra* at 11-15. In fact, plaintiff relies not just on faulty market manipulation theories as a crutch for these predicates, but *on other unsupported predicates*, underscoring the circularity of its logic. *See, e.g.*, AC ¶ 119 (describing the required "specified unlawful activity" under Section 1957 as: "unlicensed money [transmission] … money laundering … wire fraud" and market manipulation).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Plaintiff's rote assertions regarding a conspiracy and regarding acts of laundering or

2   transporting stolen property are likewise inadequate.[5] A money laundering conspiracy under

3   Section 1956(a), for example, requires well-pleaded facts regarding conspiracy formation,

4   purpose, and participants. *See Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal.

5   1990) ("In civil conspiracy actions, courts insist upon a higher level of specificity than is usually

6   demanded of other pleadings."). Lumping all defendants together, as plaintiff has done here,

7   without any detail on conspiracy formation, falls short of applicable pleading burdens. *See id.* (to

8   survive dismissal, a plaintiff "must allege with sufficient factual particularity that defendants

9   reached some explicit or tacit understanding or agreement"). To plead money laundering under

10   Section 1957, or interstate transportation of stolen property under Section 2314, plaintiff is

11   required to allege facts suggesting knowledge of the unlawful nature of the proceeds. *Rogers*, 321

12   F.3d at 1229; *Taylor*, 802 F.2d at 1112. Yet, again, plaintiff fails to allege any *facts*, offering only

13   conclusory statements about defendants' awareness or nefarious motive that courts have

14   repeatedly rejected as deficient. *See, e.g., Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

15   elements of a cause of action, supported by mere conclusory statements, do not suffice.").

16                              **(4)    Wire Fraud**

17    Plaintiff's attempt to plead wire fraud under 18 U.S.C. § 1343 as a fifth RICO predicate is

18   equally defective. "[A] wire fraud violation[] consists of (1) the formation of a scheme or artifice

19   to defraud (2) use of the United States wires or causing a use of the United States wires in

20   furtherance of the scheme; and (3) specific intent to deceive or defraud." *Schreiber Distrib. Co. v.*

21   _____

[5] A charge of conspiracy to commit money laundering under 18 U.S.C. § 1956(a) requires that a
22   defendant and one or more persons agreed to: (1) engage in a financial transaction which involved
     proceeds from specified unlawful activity; (2) knew the proceeds were from illegal activity; and
23   (3) intended the transaction either to promote the illegal activity or to conceal the nature, source,
     or ownership of the illegal proceeds. *United States v. Marbella*, 73 F.3d 1508, 1514 (9th Cir.
24   1996).

     A charge of money laundering under 18 U.S.C. § 1957 requires that: (1) the defendant knowingly
25   engaged in a monetary transaction; (2) the defendant knew the transaction involved criminal
     property; (3) the property's value exceeded $10,000; and (4) the property was derived from a
26   specified unlawful activity. *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003).

     A charge of interstate transportation of stolen property under 18 U.S.C. § 2314 requires that: (1)
27   the defendant transported in interstate or foreign commerce; (2) property; (3) of the value of
     $5,000 or more; (4) knowing the property to have been stolen, converted, or taken by fraud.
28   *United States v. Taylor*, 802 F.2d 1108, 1112 (9th Cir. 1986).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   *Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (citation omitted); *see also United*

2   *States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003). "Courts have been particularly sensitive to

3   [Rule] 9(b)'s pleading requirements in RICO cases in which the 'predicate act' [is] … wire fraud

4   …." *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1089 (C.D. Cal. 2011) (citation omitted).

5      The AC contends that defendant Bankman-Fried "falsely represented … that Defendants'

6   attempted manipulation was a result of inadvertence involving a wrong parameter." AC ¶ 129.

7   Plaintiff speculates—without basis—that (1) Bankman-Fried was in the United States at the time

8   of this communication; and (2) that Bankman-Fried's representations were false, "malicious,

9   willful and deliberate." *Id.* But, yet again, there is not a single fact alleged to support these bald

10  conclusions.[6] Plaintiff needs to plead actual, particularized facts—not speculative theories—

11  supporting such a scheme. *Iqbal*, 556 U.S. at 686. Its failure to do so mandates dismissal.

12            **2.    Plaintiff's Commodity Exchange Act Claims Fail**

13     For Counts Three, Four and Five, plaintiff asserts: (i) a manipulative device claim under

14  the CEA, 7 U.S.C. § 9(1); (ii) market manipulation and attempted market manipulation under the

15  CEA, 7 U.S.C. §§ 9(3), 13(a)(2); and (iii) aiding and abetting market manipulation under the

16  CEA, 7 U.S.C. § 25(a)(1). Each of these claims sounds in fraud and thus must be pleaded with

17  particularity under Rule 9(b). *Vess*, 317 F.3d at 1103-04. Plaintiff's CEA claims fail for at least

18  two reasons: plaintiff fails to establish its right to a private cause of action under the CEA, and

19  plaintiff otherwise fails to plead the requisite elements of any claim.

20            **a.    Plaintiff Does Not Have Standing to Assert a Private Right of**
                      **Action**
21

22     The private right of action under the CEA is limited to persons: (1) "who received trading

23  advice from the violator for a fee"; (2) "who made a contract for the sale of a commodity for

24  future delivery through the violator"; or (3) "who purchased from or sold to the violator certain

25  options or contracts." *U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC*,

26

27  ───────────────
    [6]The alleged recipient of the purportedly false wire *himself* retracted any suggestion of
    impropriety and clarified in the public domain that the scenario had resulted from a mere mistake.
28  *See* AC ¶ 224. It strains credulity for plaintiff to argue that, nevertheless, the communication at
    issue represents a device or artifice of fraud.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   2012 WL 2395259, at *4 (N.D. Cal. June 25, 2012) (citation omitted). 7 U.S.C. § 25(a)(1); *see*

2   *also Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 259 (2d Cir.

3   2006).

4         Here, plaintiff alleges it "traded the spot bitcoin and bitcoin derivatives at the time the

5   alleged artificial price existed …." AC ¶ 284. But a "spot [transaction] is not a 'future' within the

6   meaning of the CEA," and the "CEA therefore does not provide a private right of action to

7   recover for damages suffered in the trading of spot [commodity] contracts." *In re Dairy Farmers*

8   *of Am., Inc., Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 966 (N.D. Ill. 2014), *aff'd*, 801 F.3d 758

9   (7th Cir. 2015); *see also Berk v. Coinbase, Inc.*, 2018 WL 5292244, at *2 (N.D. Cal. Oct. 23,

10  2018) ("Because Berk used Coinbase to purchase Bitcoin Cash, rather than to make a contract to

11  purchase Bitcoin Cash at a specific date in the future, he cannot maintain a claim under the

12  CEA."). And, while plaintiff also contends it traded bitcoin derivatives (*e.g.*, futures), AC ¶¶ 267-

13  68, 285-86, as discussed above, the allegations concerning futures trading are so vague and

14  unconnected to defendants' activity that they fail to support a claim. As such, plaintiff has failed

15  to demonstrate entitlement to a private right of action under the CEA.

16                  **b.**      **Manipulative Device or Contrivance (Count Three)**

17        A "manipulative or deceptive device or contrivance" claim under the CEA requires

18  plaintiff to plead with particularity facts establishing: (1) a manipulative act; (2) performed in

19  connection with a swap, or contract of sale of a commodity; (3) scienter; (4) reliance; (5)

20  economic loss; and (6) loss causation. *In re London Silver Fixing, Ltd. Antitrust Litig.*, 213 F.

21  Supp. 3d 530, 569-70 (S.D.N.Y. 2016). Plaintiff fails to adequately plead any of these elements.

22        Plaintiff's effort to establish a "manipulative act" amounts to a lengthy discourse on

23  hypothetical manipulation techniques—pump-and-dumps, "Bart" trading, stop loss hunting, and

24  spoofing—that is wholly untethered to any activity by any defendant. AC ¶¶ 48-69. Indeed, the

25  complaint is unable to identify a single fact to establish that Alameda (or any other defendant)

26  engaged in such conduct. Instead plaintiff offers the bald conclusion that Alameda "has been

27  well-known" to engage in manipulation. *Id.* ¶ 13. Nowhere, however, does plaintiff explain how,

28  why, when or where any of the alleged "manipulation" occurred. Equally puzzling is plaintiff's

FENWICK & WEST LLP
ATTORNEYS AT LAW

allegation that "FTX rigged its position liquidation engine" in such a way that Alameda could "perform users' position liquidations based on ask and bid prices." *See id.* ¶ 215. Whatever that allegation may mean, it is devoid of any factual support and does not come close to stating a claim.

Plaintiff's scienter allegations fare no better. To allege scienter, plaintiff must put forth facts: (1) showing that a defendant had both motive and opportunity to commit the fraud, or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness, and there must be facts supporting a "strong inference of scienter," that is, an inference "at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). Here, plaintiff alleges merely that Alameda was a high-volume trader with a goal of "maximizing trading profits and minimizing trading losses." AC ¶ 74. But such "generalized profit motivations," are insufficient to establish the required "strong inference of scienter." *See In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916, 934 (N.D. Ill. 2019) (citing *Pension Trust Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 939-40 (7th Cir. 2018)) (a generalized loss avoidance motive common to all corporate executives does not create a strong inference of scienter on the corporation's part).

Plaintiff has also failed to link any specific trading losses to specific conduct by specific defendants. *See* Section IV.A, *supra* at 4-6. Accordingly, plaintiff has failed to plead the requisite reliance and loss causation under CEA Section 9(1). *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (discussing the reliance required under Section 10(b) of the Securities Exchange Act); *In re Chicago Bd. Options Exch.*, 390 F. Supp. 3d at 932 ("To plead loss causation, plaintiffs must identify specific transactions where they lost money, either because they experienced a net loss or because they made less than they would have absent manipulation.").

### c.   Market Manipulation (Count Four)

A market manipulation claim under the CEA requires plaintiff to plead particularized facts to establish: (1) an ability to influence market price; (2) the existence of an artificial price; (3) that defendants caused the artificial price; and (4) that defendants specifically intended to cause the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   artificial price. *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013).

2   Plaintiff fails to plead facts to establish any of these elements.

3        *First*, plaintiff does not put forth any facts to establish that Alameda had the ability to

4   influence market prices, that an "artificial" price existed at any specific time, or that Alameda

5   caused any supposed "artificial" price. *In re Amaranth*, 730 F.3d at 173. Instead, plaintiff relies

6   entirely on its own characterization of Alameda as a "high-volume trader" and a "market maker

7   and liquidity provider." But plaintiff never identifies how much Alameda traded in any specific

8   time frame, specific trades, specific exchanges, or specific price movements that could

9   demonstrate an ability to influence market price or that any prices were "artificial," much less that

10  Alameda caused such alleged fluctuations. *See In re Commodity Exch., Inc., Silver Futures &*

11  *Options Trading Litig.*, 2012 WL 6700236, at *12 (S.D.N.Y. Dec. 21, 2012) (plaintiff must

12  articulate specific factual circumstances demonstrating that an artificial price existed due to some

13  deviation from the ordinary forces of supply and demand); *Braman v. CME Grp., Inc.*, 149 F.

14  Supp. 3d 874, 889 (N.D. Ill. 2015) (alleged price aberrations or fluctuations, standing alone, do

15  not plead the existence of an artificial price).

16       *Second*, independent of the failure to establish any artificial price, plaintiff fails to

17  establish facts generating a strong inference that Alameda "acted (or failed to act) with the

18  purpose or conscious object of influencing prices." *Braman*, 149 F. Supp. 3d at 889 (internal

19  quotation marks and citation omitted); *Sullivan v. Barclays PLC*, 2017 WL 685570, at *30

20  (S.D.N.Y. Feb. 21, 2017). Plaintiff's allegations amount to a contention that Alameda was a

21  market marker with a desire to maximize profits and minimize losses. But the law is clear that

22  such allegations do not suffice to plead scienter. *See In re Amaranth Nat. Gas Commodities Litig.*,

23  587 F. Supp. 2d 513, 539 (S.D.N.Y. 2008) ("entering into a legitimate transaction knowing that it

24  will distort the market is not manipulation"); *United States v. Reliant Energy Servs., Inc.*, 420 F.

25  Supp. 2d 1043, 1056 (N.D. Cal. 2006); *In re Commodity Exch., Inc.*, 2012 WL 6700236, at *10

26  (scienter not adequately pleaded despite alleged "large financial incentive to manipulate the

27  market" and bragging about effect large trades had on market price).[7]

28  _____

[7] *See also Braman*, 149 F. Supp. 3d at 890 (specific intent not adequately pleaded where plaintiffs

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    *Third*, as discussed above, the AC's vague assertions of trading losses untethered to any

2    specific misconduct fail to plead loss causation, that is, an actual injury—"plausible, not just

3    colorable"—caused by the manipulative conduct. *Harry v. Total Gas & Power N. Am., Inc.*, 889

4    F.3d 104, 112 (2d Cir. 2018); *In re London Silver Fixing, Ltd. Antitrust Litig.*, 332 F. Supp. 3d

5    885, 921 (S.D.N.Y. 2018) (dismissing CEA manipulation claim where plaintiffs failed to link any

6    alleged manipulation to plaintiffs' trades); *In re Commodity Exch., Inc.*, 2012 WL 6700236, at

7    *17 (causation not sufficiently pleaded where plaintiffs failed to allege "specific conduct that

8    might be reasonably attributed to [defendants]").

9                        **d.    Aiding and Abetting (Count Five)**

10          Aiding and abetting market manipulation under the CEA requires: (1) primary liability

11   for, here, underlying market manipulation; coupled with a given defendant's (2) (a) knowledge of

12   the primary wrongdoing, (b) intent to further the primary wrongdoing, and (c) commission of

13   some act in furtherance thereof. *Wilber v. Bank of Am., N.A.*, 2015 WL 4040635, at *4 (C.D. Cal.

14   June 29, 2015) (citing *Damato v. Hermanson*, 153 F.3d 464, 473 (7th Cir. 1998), and *Nicholas v.

15   Saul Stone & Co.*, 224 F.3d 179, 189 (3d Cir. 2000)). Absent well-pleaded primary liability under

16   the CEA, plaintiff's aiding and abetting claim is not viable.The AC also lacks adequate fact-based

17   assertions of knowledge, intent and furtherance of purported primary wrongdoing, which further

18   precludes a claim of aiding and abetting. *Damato*, 153 F.3d at 473 (affirming dismissal of CEA

19   aiding and abetting claims absent alleged facts supporting defendants' knowledge of principal's

20   objective or specific intent to facilitate CEA violation).

21                  **3.    Plaintiff Fails to Adequately Allege Any Plausible State Law Claim**

22          Plaintiff's state law claims for commodities fraud (Count Six), negligence (Count Seven),

23   fraud (Count Eight), civil conspiracy (Count Nine), and unfair business practices (Count Ten),

24   and its request for equitable relief in the form of unjust enrichment (Count Eleven), constructive

25   trust (Count Twelve), and an accounting (Count Thirteen) likewise fail to state a claim.

26

27   _____

28   alleged defendant exchanges "incentivized and encouraged" high frequency traders to transact
     business on their exchanges knowing such activity would affect prices).

FENWICK & WEST LLP
ATTORNEYS AT LAW

### a.      Plaintiff Does Not Properly Allege a California Commodities Fraud Claim (Count Six)

Plaintiff's commodities fraud claim under California Corporations Code § 29536 fails for the fundamental reason that plaintiff has not alleged an offer or sale of commodities within the state of California. *See* Cal. Corp. Code §§ 29536, 29537(c), (d) ("[a]n offer to sell or to buy is made in this state ... when the offer ... [o]riginates from this state," and "an offer to buy or to sell is accepted in this state when acceptance ... [i]s communicated to the offeror in this state").

Even if plaintiff could allege such a transaction—and it cannot—the Section 29536 claim would still fail because plaintiff does not identify any statement by Alameda, much less facts establishing that any such statement was untrue or material and made with scienter. *See* Cal. Corp. Code § 29536; *see also People v. Martinez*, 10 Cal. App. 5th 686, 706, 710 (2017) (requiring specific false statements and facts demonstrating knowledge of such falsity).

### b.      Plaintiff's Negligence Claim Must Be Dismissed (Count Seven)

To plead a common law negligence claim, plaintiff must establish "duty, breach, causation, and damages." *Conroy v. Regents of University of Cal.*, 203 P.3d 1127, 1132 (Cal. 2009). In California, negligence claims are not viable if plaintiff seeks to recover only economic loss, unless plaintiff has adequately alleged a "special relationship" with the defendant. *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019). The existence of a "special relationship" turns on: (i) "the extent to which the transaction was intended to affect the plaintiff"; (ii) "the foreseeability of harm to the plaintiff"; (iii) "the degree of certainty that the plaintiff suffered injury"; (iv) "the closeness of the connection between the defendant's conduct and the injury suffered"; (v) "the moral blame attached to the defendant's conduct"; and (vi) "the policy of preventing future harm." *Id*. at 401 (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979)).

Here, plaintiff's negligence claim asserts purely economic loss (AC ¶¶ 313-315), but the AC fails to plead any relationship—let alone a "special relationship"—between plaintiff and any defendant. Under the first *J'Aire* factor, plaintiff has not alleged facts to establish that Alameda was aware of plaintiff's existence at the time of any alleged trading, or that Alameda's alleged acts were "intended to affect" plaintiff. *See Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439,

FENWICK & WEST LLP
ATTORNEYS AT LAW

1455-56 (1995) (no special relationship where "neither the pleadings nor the evidence" suggested defendant's conduct was "intended to affect the plaintiffs in any way particular" to them, as opposed to affecting "all potential purchasers of the equipment"). Under the second *J'Aire* factor, foreseeability of harm, plaintiff's conclusory allegations of foreseeable "ruin to traders" (*e.g.*, AC ¶ 308) are inadequate. And under the other *J'Aire* factors, which are largely equitable, plaintiff's conclusory allegations fare no better.

The law is also clear that there is no legal duty owed by Alameda or any other Defendant to plaintiff—an anonymous market participant unknown to Alameda—to protect against economic harm. *Ott*, 31 Cal. App. 4th at 1455-56. Any other result would unacceptably broaden the reach of California negligence law. *S. Cal. Gas*, 7 Cal. 5th at 401 (noting "the need to safeguard the efficacy of tort law by setting meaningful limits on liability").

### c.      Plaintiff's Common Law Fraud Claim Fails (Count Eight)

Plaintiff asserts fraud under California law, which, like the federal claims before it, must be pleaded with particularity. *Kearns*, 567 F.3d at 1126. In California, fraud requires a "false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Id. See also Marble Bridge Funding Grp. v. Euler Hermes Am. Credit Indemnity Co.*, 2015 WL 971761, at *5 (N.D. Cal. Mar. 2, 2015) (justifiable reliance and damages must be pled specifically). Here, plaintiff's fraud claim fails for multiple reasons.

Plaintiff does not plead any actionable misrepresentation or communication. Instead, plaintiff points to a third party's comments on Twitter. *See, e.g.*, AC ¶¶ 129-131, 222-224. But plaintiff fails plead facts to establish that any such statements were false or misleading. *See* AC ¶ 224; *see also* Section IV.C.1.b.(4), *supra* at 10-11.

Moreover, given that plaintiff does not even allege that the purported communications or any other statements were made to or intended for plaintiff, or that plaintiff was contemporaneously aware of and relied on those statements, plaintiff cannot plausibly plead intent to defraud, justifiable reliance or damages.[8] *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2

---

[8] Two conclusory statements that "[i]f Plaintiff BMA had known of the actual intention of [Defendants, it] would not have taken the alleged trades" (AC ¶¶ 140, 327) do not meet heightened pleading requirements. *McKinney v. Google, Inc.*, 2011 WL 3862120, at *5 (N.D. Cal.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Cal. App. 4th 153, 157 (1991) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."); *Cansino v. Bank of America*, 224 Cal. App. 4th 1462, 1469 (2014); *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp*., 6 Cal. App. 4th 603, 612-13 (1992); *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 823-24 (N.D. Cal. 2017) (Gilliam, J.) ("Plaintiffs must specify what statements they relied on to give Defendants the opportunity to respond to the alleged misconduct."); *Berk v. Coinbase, Inc.*, 2019 WL 3561926, at *3 (N.D. Cal. Aug. 6, 2019) (dismissing fraud claim where plaintiff failed to allege reliance).

The AC's utter failure to connect the alleged fraud with any purported damages suffered by plaintiff likewise dooms a claim of fraud. *City Solutions Inc. v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835, 840 (9th Cir. 2004) (plaintiff must allege a "complete causal relationship between the fraud or deceit and the plaintiff's damages"); *Marble Bridge*, 2015 WL 971761 at *5 ("Even at the pleading stage, the complaint must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated.") (internal quotation marks and citation omitted).

### d.    Plaintiff's Civil Conspiracy Claim Fails (Count Nine)

Because plaintiff has failed to allege any underlying actionable tort, his civil conspiracy claim necessarily fails. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510 (1994); *Faunce v. Cate*, 222 Cal. App. 4th 166, 172-73 (2013) (civil conspiracy is not a freestanding claim under California law).

The claim also fails for the independent reason that plaintiff has failed to allege any of the requisite elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995). At most plaintiff alleges that the

Aug. 30, 2011) (dismissing fraud claim where plaintiff "has not particularly identified any representation upon which she relied or alleged facts showing her actual and reasonable reliance on any such representations").

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   defendants were associated employees or corporate affiliates. That is not enough. *Id.* at 1582

2   ("[m]ere association" between persons, such as co-employees or corporate affiliates insufficient

3   to establish a conspiracy). As to the other elements, plaintiff offers mere recitations of the

4   elements of "formation and operation" and "conduct in furtherance," which are nothing more than

5   rank speculation.[9] Such "talismanic allegation[s] of conspiracy … unsupported by any properly

6   pleaded ultimate facts" are inadequate. *Schick v. Lerner*, 193 Cal. App. 3d 1321, 1328 (1987).[10]

7                **e.**     **Plaintiff's Unfair Business Practices Claim Fails (Count Ten)**

8           Plaintiff's unfair business practices claim under California Business and Professions Code

9   Section 17200 (the "Unfair Competition Law," or "UCL"), requires plaintiff to allege acts that are

10  "unlawful, unfair, or fraudulent." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at

11  *16 (N.D. Cal. June 5, 2009). Because, as demonstrated above, the AC does not plausibly, much

12  less with particularity, allege unlawful, unfair, or fraudulent conduct, the UCL claim necessarily

13  fails. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (UCL claim

14  requires a plausible violation of a federal, state, or local law); *Claridge v. RockYou, Inc.*, 785 F.

15  Supp. 2d 855, 862 (N.D. Cal. 2011) (claims of fraudulent conduct under the UCL must "satisfy

16  the heightened pleading requirements of [Fed. R. Civ. P.] 9(b)") (citation omitted). Moreover, as

17  explained above, plaintiff fails to allege any nexus between its alleged injury and Alameda's

18  alleged conduct to invoke standing with the particularity required under Rule 9(b). *See Pratap v.

19  Wells Fargo Bank, N.A.,* 63 F. Supp. 3d 1101, 1111 (N.D. Cal. 2014) (dismissing UCL claim for

20  lack of standing where plaintiffs failed to allege facts showing that defendants' practices directly

21  caused economic injury).[11]

---

22  [9] *See, e.g.*, AC ¶ 332 ("Defendants … conspired and agreed … to defraud traders."), ¶ 333
23  (Defendants "did the acts and things … pursuant to, and in furtherance of, the conspiracy."), ¶
    337 ("As a proximate result of [Defendants' conduct] … Plaintiff BMA has been damaged.").

24  [10] *See also Cobb v. Adams*, 2014 WL 2212162, at *9 (N.D. Cal. May 28, 2014) (dismissing civil
    conspiracy claim where plaintiff's underlying claims—including under RICO—failed, and where
25  allegations of conspiracy were "no more than legal conclusions couched as fact"); *Bonner v.
    Select Portfolio Servicing, Inc.*, 2010 WL 2925172, at *7 (N.D. Cal. July 26, 2010) (dismissing
26  civil conspiracy claim where "Plaintiff has not plead facts to show the formation and operation of
    a conspiracy"); *Jacob v. Aurora Loan Services*, 2010 WL 2673128, at *5 (N.D. Cal. July 2, 2010)
27  (dismissing civil conspiracy claim where underlying fraud claim was dismissed).

28  [11] To the extent that plaintiff bases its UCL claim on statutes related to the offer, purchase, and
    sale of securities, *see* AC ¶¶ 343 (citing 15 U.S.C. §§ 77(e), 77(e)(c), 78(e), and Cal. Corp. Code

FENWICK & WEST LLP
ATTORNEYS AT LAW

**f.      Plaintiff's Request for Equitable Remedies Must Be Denied (Counts Eleven, Twelve, and Thirteen)**

"Under California law, unjust enrichment is a theory of recovery, not an independent legal claim." *Keirsey v. eBay, Inc.*, 2012 WL 12920765, at *2 (N.D. Cal. Aug. 6, 2012) (dismissing unjust enrichment claim because it "does not constitute a stand-alone cause of action"); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) (same). Even if construed as a request for restitution, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense," *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016). Here, plaintiff does not, and cannot, demonstrate as much because, as discussed above, all of its underlying claims must fail. *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims").

Plaintiff also seeks a constructive trust, but that remedy is also not warranted. A constructive trust is "not a substantive device but merely a remedy." *Upham v. Fox*, 2014 WL 1379607, at *5 (N.D. Cal. Apr. 8, 2014). Because plaintiff does not state a viable federal or state law claim, there is no basis for a constructive trust. *Upham*, 2014 WL 1379607, at *5 (dismissing request for a constructive trust where all other claims were dismissed); *In re JMC Telecom LLC*, 416 B.R. 738, 745 (C.D. Cal. 2009) (same).

Likewise, plaintiff's request for an accounting is unsupported given the absence of well-pleaded substantive claims. *Hutchins v. Nationstar Mortgage LLC*, 2017 WL 2021363, at *5 (N.D. Cal. May 12, 2017) ("The right to an accounting is derivative of other claims."); *Duggal v. G.E. Capital Commc'ns Services, Inc.*, 81 Cal. App. 4th 81, 95 (2000) ("The right to an accounting is derivative and depends on the validity of a plaintiff's underlying claims."); *Union*

§§ 25110, 25540(a)), 184 (alleging that "Defendants' offer and sale of FTT tokens are [an] offer and sale of securities"), California law is clear that consumer protection statutes like the UCL "do[] not apply to securities transactions." *Bowen v. Ziasun Techs, Inc.*, 116 Cal. App. 4th 777, 788 (2004) (affirming summary judgment in favor of defendant on UCL claim relating to the sale of securities); *see also Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1259 (N.D. Cal. 2014) (dismissing UCL claim based on state securities laws because "section 17200 does not permit claims based in securities transactions").

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  *Bank v. Superior Court,* 31 Cal. App. 4th 573, 593-94 (1995) (the right to an accounting only

2  arises where there is a fraud or some breach of fiduciary duty).

3  **V.     CONCLUSION**[12]

4          For the foregoing reasons, the Court should dismiss the AC in its entirety with prejudice.

5

6  Dated:   December 12, 2019                    FENWICK & WEST LLP

7

8                                                By:   _/s/ Michael S. Dicke_
                                                       Michael S. Dicke
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  _____
    [12] Alameda anticipates that any other Entity Defendants or Individual Defendants served in this
    action, all of whom are domiciled outside the United States, will seek dismissal (a) on the above
25  grounds, (b) for lack of personal jurisdiction, and (c) on the basis of *forum non conveniens.*
    Although not briefed here, Alameda intends to, and reserves the right to, join in the anticipated
26  co-defendant motions based on *forum non conveniens. See Sinochem Int'l Co. v. Malay Int'l
    Shipping Corp.*, 549 U.S. 422, 429 (2007) (A federal court has discretion to dismiss a case at any
27  time "when an alternative forum has jurisdiction to hear [the] case, and … trial in the chosen
    forum would establish … oppressiveness and vexation to a defendant … out of all proportion to
28  plaintiff's convenience, or … the chosen forum [is] inappropriate because of considerations
    affecting the court's own administrative and legal problems.").

FENWICK & WEST LLP
ATTORNEYS AT LAW